1  AARON KAUFMANN, SBN 148580
2  GISELLE OLMEDO, SBN 294750
   LEONARD CARDER, LLP
3  1999 Harrison Street, Suite 2700
   Oakland, CA  94612
4  Telephone: (510) 272-0169
   Facsimile:  (510) 272-0174
5  akaufmann@leonardcarder.com
   golmedo@leonardcarder.com
6
   CAROLE VIGNE, SBN 251829
7  GEORGE A. WARNER, SBN 320241
   LEGAL AID AT WORK
8  180 Montgomery Street, Suite 600
   San Francisco, CA 94104
9  Telephone: (415) 864-8848
   Facsimile: (415) 593-0096
10 cvigne@legalaidatwork.org
   gwarner@legalaidatwork.org
11
12 *Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ PEREZ BAUTISTA, LUZ PEREZ BAUTISTA and SALVADORA CORREA, on behalf of themselves and all others similarly situated, | Case No. _____ |
| | COMPLAINT, PUTATIVE CLASS ACTION AND COLLECTIVE ACTION FOR DAMAGES FOR: |
| Plaintiffs, | (1) Failure to Pay Wages Owed at Separation, Calif. Labor Code §§ 201, 203; |
| | (2) Failure to Furnish Accurate Wage Statements, Calif. Labor Code § 226; |
| v. | (3) Failure to Pay Minimum Wages Under California Law, Calif. Labor Code §§ 1194, 1194.2; |
| | (4) Failure to Pay San Francisco Minimum Wage, S.F. Admin Code § 12R; |
| JUUL LABS, INC., COALITION FOR REASONABLE VAPING REGULATION, LONG YING INTERNATIONAL, INC., DAVID M. HO, and DOES 1-10 inclusive, | (5) Failure to Pay Overtime Wages, Calif. Labor Code §§ 510, 1194; |
| | (6) Failure to Reimburse Business Expenses, Calif. Labor Code § 2802; |
| | (7) Failure to Provide Meal Periods, Calif. Labor Code §§ 226.7, 512; |
| Defendants. | (8) Violations of Unfair Competition Law, Calif. Bus. & Profs. Code § 17200 *et seq.;* |
| | (9) Failure to Pay Overtime Wages, FLSA, 29 U.S.C. § 207. |

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES

## I.     INTRODUCTION

1.      Plaintiffs Maria de la Luz Perez Bautista, Luz Perez Bautista, and Salvadora Correa ("Plaintiffs"), on behalf of themselves and other campaign workers, bring a collective action for federal overtime pay, under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), and a class action under Fed. R. Civ. Proc. Rule 23(b)(3) for state and local wage and hour claims arising out of their work as so-called "independent contractors" for the Yes on C Campaign ("Campaign") in San Francisco in 2019.

2.      In the run-up to the November 5, 2019 election, the Campaign hired approximately 450 campaign workers to phone bank, canvass, and perform administrative assistant tasks ("Campaign Workers") to support Defendant Juul Labs, Inc.'s efforts to pass Proposition C, which would have overturned a San Francisco ordinance suspending the sale of electronic cigarettes in the city, allowing for the sale of electronic cigarettes in San Francisco by Defendant Juul Labs, Inc. and others.

3.      This Campaign was funded by Defendant Juul Labs, Inc. ("Juul") and operated by the three other defendants named herein: The Coalition for Reasonable Vaping Regulation, a non-profit run by a Juul executive and incorporated for the purpose of advocating for policies that would allow for the continued sale of electronic cigarettes; Long Ying International, Inc., a campaign operator based in San Francisco; and David Ho, the CEO for Long Ying International (collectively "Defendants").

4.      Defendants classified Plaintiffs and the Campaign Workers as independent contractors, even though the workers served Defendants as employees for purposes of the federal, state, and local wage-and-hour protections giving rise to the claims averred herein.  Campaign Workers were not issued legally compliant pay statements and not timely paid all accrued wages upon separation of their employment.  Those working at the phone banks and canvassing in the same workday ("Hybrid Campaign Workers") were not paid for their travel time between work locations; were not paid overtime premium pay; were not provided legally required off-duty meal breaks; and were not reimbursed for work-related travel expenses.

5.     On September 30, 2019 or October 1, 2019, Defendants abruptly laid off Plaintiffs and the Campaign Workers after Juul announced that it would no longer actively support the Campaign.  The Campaign informed the Campaign that the campaign was over, that there was no more work for them, and that they could pick up their final checks three or four days later.

## II.     JURISDICTION

6.     This Court has jurisdiction over this action under the FLSA, 29 U.S.C. §§ 207, 216(b), pursuant to 28 U.S.C. § 1331.

7.     This Court has jurisdiction over Plaintiffs' state and local law claims pursuant to 28 U.S.C. § 1367.

## III.     VENUE AND INTRADISTRICT ASSIGNMENT

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the City and County of San Francisco, and within the division and courthouse in which this action has been commenced.

## IV.     PARTIES

A.     PLAINTIFFS

9.     Plaintiff Maria de la Luz Perez Bautista ("Maria Perez Bautista") resides in California. She worked for the Yes on C Campaign as a phone bank caller and door-to-door canvasser from approximately August 17, 2019 to September 30, 2019.

10.     Plaintiff Luz Illimani Ahnun Ixchel Perez Bautista ("Luz Perez Bautista") resides in California. She worked for the Yes on C Campaign as a phone bank caller, door-to-door canvasser, and administrative assistant from approximately August 17, 2019 to October 1, 2019.

11.     Plaintiff Salvadora Correa resides in California. She worked for the Yes on C Campaign as a phone bank caller and door-to-door canvasser from approximately August 2019 to October 1, 2019.

//

//

//

2

**B.    DEFENDANTS**

12.    Defendant Juul Labs, Inc. ("Juul") is a foreign stock corporation formed in Delaware with its principal place of business in San Francisco, California.  Juul is an electronic cigarette producer. Juul was, at all times relevant to this Complaint, an employer covered by the FLSA, the California Labor Code, Industrial Welfare Commission ("IWC") Wage Order No. 4, the General Minimum Wage Order, and the San Francisco Administrative Code.

13.    Defendant Coalition for Reasonable Vaping Regulation (the "Coalition") is a domestic nonprofit corporation with its principal place of business in San Francisco, California. The Coalition was incorporated on July 3, 2019.  The Chief Executive Officer of the Coalition, Jon Berrier, is also a Senior Director of Public Affairs at Juul.  In 2019, Juul lent the Coalition $15,500,000 and contributed another $151,574 in non-monetary contributions to the Coalition. The Coalition received contributions of $710 from sources other than Juul.  The Coalition has outstanding debts of over $15,500,500 as of October 31, 2019.  Juul is the creditor for the vast majority of these debts.[1]  On information and belief, the Coalition and Juul are each other's alter egos and form a single enterprise.  The Coalition was, at all times relevant to this Complaint, an employer covered by the FLSA, the California Labor Code, IWC Wage Order No. 4, the General Minimum Wage Order, and the San Francisco Administrative Code.

14.    Defendant Long Ying International, Inc. ("Long Ying") is a domestic stock corporation with its principal place of business in San Francisco, California.  Per the firm's website, "Long Ying provides a full complement of public affairs and advocacy services.  From lobbying at the municipal and state levels, to grassroots organizing, we use our relationships to deliver results for our clients."  The Coalition for Reasonable Vaping Regulation paid Long Ying $4,029,791 in 2019.  Long Ying was, at all times relevant to this Complaint, an employer covered

---

[1] Information about the Coalition's spending and payments comes from reports filed with the City and County of San Francisco's Ethics Commission.  The Coalition's most recent filing is available at https://public.netfile.com/Pub2/RequestPDF.aspx?id=183492120, and all filings are accessible at https://public.netfile.com/Pub2/AllFilingsByFiler.aspx?id=180923032.  Aggregated spending data is available at https://public.tableau.com/shared/PXXRRT6ZM?:display_count =y&:origin=viz_share_link&:embed=y.

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES

by the FLSA, the California Labor Code, IWC Wage Order No. 4, the General Minimum Wage Order, and the San Francisco Administrative Code.

15.     Defendant David Ho is the Chief Executive Officer of Long Ying and the managing member of Long Ying Consulting, LLC.  He is also a registered lobbyist in the City and County of San Francisco.  Between April 2019 and May 2019, David Ho was paid $20,000 from Juul for lobbying activity.[2]  David Ho controlled and was intimately involved in the day-to-day operations of Long Ying and both determined and instituted the unlawful wage and hour practices alleged herein.  David Ho is and, at all times relevant to this Complaint, was an employer covered by the FLSA, the California Labor Code, IWC Wage Order No. 4, the General Minimum Wage Order, and the San Francisco Administrative Code, and he has violated or caused to be violated the provisions of IWC Wage Order No. 4 and General Minimum Wage Ordinance regulating minimum wages and/or hours and days of work as well as Labor Code §§ 203, 226, 226.7, 1194, and 2802.  *See* Labor Code § 558.1.  As such, he is personally liable for the Wage Order and Labor Code violations cited above.

16.     As a result of the conduct alleged herein, Defendants are each joint employers of Plaintiffs and the Campaign Workers, and Defendants are jointly and severally liable for violations of applicable San Francisco, California, and federal law.

17.     Plaintiffs are ignorant of the true names and capacities of Doe Defendants and therefore sue them by fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities of the Doe Defendants when ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the Doe Defendants is responsible in some manner for the occurrences alleged herein.  Plaintiffs are further informed and believe, and allege thereon, that at all relevant times, Doe Defendants have held executive positions with Defendants, and/or have acted on behalf of Defendants by exercising decision-making responsibility for and by establishing unlawful wage and hour practices or policies for Defendants.  Plaintiffs are informed and believe, and on that basis allege, that at all times relevant to this Complaint, Doe Defendants, and each of

---

[2] Information about David Ho's lobbying activity can be found at https://netfile.com/lobbyistpub/#/sfo/detail/lobbyist/SFO-154591/2019/05 and https://netfile.com/lobbyistpub/#/sfo/detail/lobbyist/SFO-154591/2019/04.

them, acted as an employer of Plaintiffs and the members of the Class, defined below, within the definition of the FLSA and California's Labor Code, IWC Wage Order No. 4, Minimum Wage Order, and San Francisco's Minimum Wage Ordinance (codified in Chapter 12 of the San Francisco Administrative Code).

18.     Collectively, the Defendants are referred throughout as the "Yes on C Campaign," the "Campaign," or "Defendants."

## V.     STATEMENT OF FACTS

19.     In May 2019, Juul's Vice President of Supply and Demand Planning filed a proposed ballot measure that would overturn a San Francisco ordinance suspending the sale of electronic cigarettes in the city, allowing for the continued sale of electronic cigarettes in San Francisco by Juul and others.

20.     On or about June 24, 2019, Juul and/or the Coalition hired David Ho and Long Ying to assist with "campaign consulting and management services."  However, the Coalition was not incorporated until July 3, 2019, the same day that the Coalition and Juul announced it had gathered around 20,000 signatures to put the measure on the November 5, 2019 San Francisco ballot.

21.     On July 10, 2019, the San Francisco Department of Elections certified Proposition C for the November 5, 2019 ballot, and assigned the proposition the letter C on August 12, 2019. The measure is hereinafter referred to as Proposition C.

22.     On or around August 15, 2019, Plaintiffs Luz Perez Bautista and Maria Perez Bautista interviewed for jobs with the Yes on C Campaign at the campaign offices at 25 Taylor Street in San Francisco.

23.     Plaintiff Luz Perez Bautista was interviewed by an administrator with the Coalition and/or Long Ying.  Plaintiff Luz Perez Bautista was told that the Campaign was hiring Spanish speakers to work as canvassers and phone bankers for the Campaign.  Plaintiff Luz Perez Bautista was told that she was hired to perform canvassing and phone banking work, and that she would start approximately two days later, on or around August 17.

24.     Plaintiff Maria Perez Bautista was interviewed by another administrator with the Coalition and/or Long Ying.  Plaintiff Maria Perez Bautista was also told that the Campaign was

hiring Spanish speakers to work as canvassers and phone bankers for the Campaign.  Plaintiff Maria Perez Bautista was hired to perform canvassing and phone banking work.

25.     As part of the hiring process, Plaintiffs Luz Perez Bautista and Maria Perez Bautista were required to sign an agreement titled "Independent Contractor Agreement" and fill out a W-9 form.  The "Independent Contractor Agreement" was signed by David Ho on behalf of Long Ying.

26.     Plaintiff Salvadora Correa also interviewed for a job with the Yes on C Campaign at the campaign offices at 25 Taylor Street in San Francisco in August 2019, soon after Plaintiffs Luz Perez Bautista and Maria Perez Bautista were hired.  At the end of the interview, the administrator hired Plaintiff Salvadora Correa and explained that she would be classified as an independent contractor and would receive a 1099 tax document, as a result.

27.     The phone banking and canvassing operations were run on a day-to-day basis by a group of Campaign managers and administrators that were paid in part or in whole by the Coalition.

28.     On information and belief, David Ho oversaw the phone banking and canvassing operation at the office.  On information and belief, David Ho regularly communicated with Campaign managers and administrators and held meetings with these managers at the 25 Taylor Street office.

29.     Plaintiffs and other Campaign Workers were assigned to do phone banking, canvassing, or both for the Campaign.

30.     From Monday through Thursday, the Campaign operated two shifts.  Typically, the first phone-banking shift ran four hours. The second shift also ran four hours.  Campaign Workers either continued phone banking or performed canvassing during the second shift.  On Saturdays and Sundays, the Campaign only operated a single four-hour shift.

31.     Plaintiffs and Campaign Workers received emails before shifts that instructed them which Campaign office they were expected to show up to, and at what time they were required to show up.

32.     Plaintiffs and Campaign Workers usually started their work at the Campaign's 25 Taylor Street office for the first shift. They were required to sign a paper sign-in sheet at the

entrance of the office.  Plaintiffs and Campaign Workers were required to sign out when the shift ended.

33.     Plaintiffs and Campaign Workers called San Francisco voters using telephonic and computer equipment the Campaign provided them.  Campaign software directed them whom to call, and the Campaign provided a script prepared by the Coalition directing them what to say on these calls.

34.     Plaintiffs and Campaign Workers were paid an hourly rate of $25 for working phone-banking shifts.

35.     Some campaign workers, including at times Plaintiff Salvadora Correa, returned to 25 Taylor Street for a second shift of phone banking.  These workers called San Francisco voters in the same manner as described in the preceding paragraphs.

36.     Many Campaign Workers, including Plaintiffs, performed a second four-hour shift for the Campaign doing door-to-door canvassing within San Francisco. Those campaign workers who worked both a phone bank and a canvas shift in the same workday are referred herein as "Hybrid Campaign Workers."

37.     The Plaintiffs and Hybrid Campaign Workers doing canvassing were often instructed to show up at 1001 Clement Street.  Sometimes, the Hybrid Campaign Workers doing canvassing had an hour or less to travel from the 25 Taylor Street office to the 1001 Clement Street office.

38.     The Coalition provided Plaintiffs and Campaign Workers with Campaign materials and tablets to perform the canvassing work.  The workers picked up these tools from 1001 Clement Street at the beginning of each shift.  All three Plaintiffs performed at least some canvassing shifts starting from the 1001 Clement Street office.

39.     During each canvassing shift, the Campaign staff directed Campaign Workers as to which neighborhoods they were to canvas that day.  Once in their assigned neighborhoods, Plaintiffs and Campaign Workers were required to engage with specific voters at specific addresses.  The relevant voter information was provided to Plaintiffs and Campaign Workers through software on the tablets.

40.     Campaign staff instructed the Plaintiffs and Campaign Workers to tell potential voters about the upcoming election, tell the potential voters that they supported Proposition C, and encourage the potential voters to support the Proposition.

41.     Plaintiffs and the Campaign Workers were paid by the hour for the canvassing work.

42.     The Campaign Workers who used their personal cars to transport themselves and other workers during canvassing were reimbursed an additional amount per shift.

43.     The Campaign frequently assigned Plaintiff Maria Perez Bautista, and other Hybrid Campaign Workers, to work at 1001 Clement Street after working at 25 Taylor Street.  Plaintiffs Salvadora Correa and Luz Perez Bautista also worked shifts at the 1001 Clement Street office after working at the 25 Taylor Street office.

44.     Plaintiffs traveled from the Taylor Street location to the Clement Street location by public transit.  It takes approximately 35 minutes—and often longer—to travel between 25 Taylor Street and 1001 Clement Street via public transit.

45.     Plaintiffs and the Hybrid Campaign Workers were not compensated for the time it took to travel between the two Campaign work sites—25 Taylor Street and 1001 Clement Street.

46.     Plaintiffs and other Hybrid Campaign Workers at times did not have a 30 minute uninterrupted meal period.  For example, Plaintiff Maria Perez Bautista frequently ate on the bus while in transit to her canvassing assignment.

47.     The Campaign opened a third office in the Mission District of San Francisco in late September.  During the second half of September, some Hybrid Campaign Workers, including Plaintiff Salvadora Correa, were assigned to work canvassing shifts at the Mission District office instead of at the Clement Street office.

48.     About a week after Plaintiff Luz Perez Bautista was hired, she was promoted to a new position in which she provided administrative support for the other Campaign Workers. Such work included setting up the 25 Taylor office for phone banking, collecting worker sign-in sheets, calling workers who did not show up for work, preparations for canvassing operations, and

assisting with other administrative and clerical tasks around the office. The Campaign employed at least 20 other Campaign Workers to perform similar work.

49.    Defendant Long Ying International issued bi-weekly paychecks to Plaintiffs and other Campaign Workers.  The check stubs did not: state any address for Long Ying; state the number of hours worked during any pay period; or include any information to indicate that Long Ying withheld any money for tax purposes.

50.    On September 30, 2019, Juul announced that it was no longer actively supporting the Yes on C Campaign.  Hours later, the Coalition issued a statement stating that it was discontinuing the campaign in light of Juul's decision to stop actively supporting the Campaign.

51.    Late on the night of September 30, the Campaign sent a group email out to Campaign Workers.  The English translation of the message sent in Spanish to Spanish speaking workers is as follows:

> We have just learned, and we regret to inform you that the client has decided to suspend the effective campaign immediately. We know that this suspension is abrupt, but we did not expect this news and could not give you more notice.
>
> You did a good job. We appreciate your effort and know that your work helped the campaign so much.
>
> All workers will be paid for work until September 30. Your check will be ready to pick up on October 3 between 12 p.m. and 5 p.m., and also on October 4, between 12 p.m. and 5 p.m.
>
> After October 4, we will mail you your check. The Human Resources Department will be available to ensure that everyone receives all their payment and refunds.
>
> In conclusion, we want to thank you for all your work and dedication. It was a pleasure working with you and we wish you all the best in the future!
>
> It is also important, if you have reimbursement receipts, bring them tomorrow from 9am to 5pm at the Taylor Street location.
>
> If you have any questions, you can come to 25 Taylor Street on Tuesday, Thursday or Friday, during normal business hours (9 am-5pm).
>
> All the best,
>
> Yes on C Campaign.

52.    At the Campaign's instruction, Plaintiff Luz Perez Bautista and others who had performed administrative and clerical tasks went to work on October 1.  Plaintiff Luz Perez

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES

Bautista and the others packed up equipment at the 25 Taylor Street office.  At around 3 p.m., one of the Campaign managers told Plaintiff Luz Perez Bautista and the others at the 25 Taylor Street office that there was no more work required, that they were also being discharged, and that they could also pick up their checks on October 3 or October 4 like the other Campaign Workers.

53.     In December 2019, the Coalition issued Plaintiff Luz Perez Bautista an additional check for $250 directly from the Coalition.  This check was dated October 18, 2019.  Plaintiff Salvadora Correa also received an additional check for $100 directly from the Coalition in October 2019.  According to the Coalition's public filings, the Coalition also sent payments of $100 each to Plaintiff Maria Perez Bautista and 408 other people and $250 to 38 people on October 18, 2019. The Coalition characterized these payments as "Campaign Workers' Salaries" and did not include any information regarding hours worked.

## VI.     CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring claims for violations of California's Labor Code and IWC Wage Order No. 4, and San Francisco's Administrative Code on behalf of themselves and a Rule 23 class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Plaintiffs seek to certify a Rule 23 class (the "Class" or "Campaign Workers") comprised of:

> all individuals who were hired by Long Ying International, Inc. to perform phone banking, canvassing and/or administrative tasks for the Yes on C Campaign and did perform such work at any time during the period between July 2019 and October 2019.

55.     Plaintiffs seek to certify a subclass (the "Subclass" or "Hybrid Campaign Workers") comprised of:

> all Campaign Workers who performed both canvassing and phone banking on a single day, and to perform such work were required to work at or out of multiple offices for the Yes on C Campaign during the course of a single calendar day.

56.     <u>Numerosity</u>: The members of the Rule 23 Class are sufficiently numerous that joinder of all members is impracticable.  On information and belief, there are approximately 450 members of the Campaign Worker Class and approximately 400 members of the Hybrid Campaign Worker Subclass.

57.     <u>Commonality</u>: There are questions of law and fact common to the Class and Subclass that are answerable on a common basis, and these questions predominate over individual questions.  The questions of law and fact common to the Class and Subclass include, without limitation:

- Whether the Class Members were employees or independent contractors for purposes of the IWC Wage Order No. 4;

- Whether the Class Members were employees or independent contractors for purposes of the California Labor Code;

- Whether Class Members were paid all overtime wages due under California law;

- Whether Class Members were paid minimum wage for all hours worked under California law;

- Whether Class Members were paid minimum wage for all hours worked under the San Francisco minimum wage ordinance;

- Whether the pay statements provided to Class Members complied with California law;

- Whether Class Members were paid at the time of separation as required under California law;

- Whether Subclass Members had to travel between offices during the course of a single workday, and whether such travel time is compensable time under California law;

- Whether Subclass Members were compensated for costs incurred to travel between offices during the course of a single workday and whether such costs are compensable time under California law; and

- Whether Defendants were employers of Class Members under California law and the San Francisco Minimum Wage Ordinance.

58.     <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class and the Subclass they seek to represent.  As set forth herein, Defendants' common course of conduct caused Plaintiffs the same or similar injuries and damages as other Class Members and Subclass Members

11

1   employed by Defendants.  Plaintiffs' claims are thereby representative of and co-extensive with the

2   claims of the Class and Subclass.

3        59.     Adequacy: Plaintiffs will fairly and adequately represent the interests of all

4   members of the Class and Subclass they seek to represent.  Plaintiffs are members of the Class and

5   Subclass they seek to represent, do not have any conflicts of interests with the putative Class and

6   Subclass Members, will prosecute the case vigorously on behalf of the Class and Subclass, and

7   have devoted time and resources to the initial investigation of these claims.  Plaintiffs' counsel are

8   competent and experienced in litigating employment actions, including wage and hour class

9   actions.

10       60.     Superiority of Class Action: A class action is superior to other available methods for

11  the fair and efficient adjudication of this controversy.  Because the damages suffered by certain

12  individual members of the Class may be relatively small, the expense and burden of individual

13  litigation makes it impracticable for Class Members to pursue their claims separately.  Class action

14  treatment will allow those members of the Class and Subclass to litigate their claims in the manner

15  that is most efficient and economical for the parties and the judicial system.  Class action treatment

16  will also avoid inconsistent outcomes because the same issues can be adjudicated in the same

17  manner for all members of the Class.

18              **VII.   COLLECTIVE ACTION ALLEGATIONS**

19       61.     Plaintiffs bring claims under the FLSA as a collective action under 29 U.S.C. §

20  216(b).  Members of the Collective Action include:

21           all individuals who were hired by Long Ying International, Inc. to perform
             phone banking, canvassing and/or administrative tasks for the Yes on C
22           Campaign, and performed both canvassing and phone banking, working at or
             out of multiple Campaign offices during the course of a single calendar day at
23           any time during the period between July 2019 and October 2019.

24       62.     Plaintiffs and the Collective Action Members are similarly situated, in that they

25  have performed substantially similar duties for Defendants, and were subject to Defendants'

26  common practice of not paying Campaign Workers who traveled between Campaign offices for all

27  hours worked and not paying them overtime wages for hours worked over 40 hours a week.

28  //

63.     The violations of the FLSA may be brought and maintained as an "opt-in" collective action, under 29 U.S.C. § 216(b), because Plaintiffs' claims are similar to the claims of other Collective Action Members.

64.     The names and addresses of the Collective Action Members that are eligible to opt-in are available from Defendants.  Accordingly, Plaintiffs pray herein for an order requiring Defendants to provide the names and all available contact information for all Collective Action Members, so notice can be provided to them of the pendency of this action, and their right to opt in to this collective action.

## VIII.   CLAIMS

### FIRST CLAIM
**FAILURE TO PAY FULL WAGES OWED PROMPTLY AT SEPARATION**
**CALIF. LABOR CODE §§ 201, 203**
**(ON BEHALF OF PLAINTIFFS, CLASS AND SUBCLASS)**

65.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

66.     Calif. Labor Code § 201 requires an employer who discharges an employee to pay all compensation due and owing to that employee immediately upon discharge.  Calif. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by § 201, then the employer is liable for waiting time penalties in the form of continued compensation of up to 30 work days.

67.     Defendants willfully failed to issue final paychecks until several days after Defendants abruptly terminated Plaintiffs and other Class Members.

68.     Defendants have also never paid to Plaintiffs and the Subclass all wages accrued at time of termination, including unpaid minimum wage, overtime compensation, and meal period premiums.

69.     As a result, Plaintiffs, the Class, and the Subclass are entitled to recovery of penalties under § 203, interest thereon, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

//

**SECOND CLAIM**
**FAILURE TO FURNISH ACCURATE WAGE STATEMENTS**
**CALIF. LABOR CODE § 226**
**(ON BEHALF OF PLAINTIFFS AND CLASS)**

70.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

71.     Calif. Labor Code § 226(a) require employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the total hours worked by the employee.  Calif. Labor Code § 226(e) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which the violation occurred and one hundred dollars ($100) for each subsequent pay period, up to four thousand dollars ($4,000).

72.     Defendants knowingly and intentionally failed to furnish Plaintiffs and other Class Members with timely, itemized statements showing the total hours worked and the name and address of the legal entity that paid Plaintiffs.

73.     Plaintiffs, on behalf of themselves and other Class Members, request penalties under § 226(e), as well as attorneys' fees and costs and such other legal and equitable relief as the Court deems just and proper.

**THIRD CLAIM**
**FAILURE TO PAY CALIFORNIA MINIMUM WAGE**
**CALIF. 1182.11, 1182.12, 1194, 1194.2 & 1197, CALIF. IWC WAGE ORDER NO. 4 § 4, &**
**MINIMUM WAGE ORDER**
**(ON BEHALF OF PLAINTIFFS AND SUBCLASS)**

74.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

75.     Calif. Labor Code §§ 1182.11, 1182.12, 1194, and 1197, Calif. IWC Wage Order No. 4, § 4, and the Calif. Minimum Wage Order, all require that employees receive the minimum wage for all hours worked.

//

//

14

76.     Calif. Labor Code § 1194 entitles an employee receiving less than the minimum wage to recover in a civil action the unpaid balance of the full amount of this minimum wage, including interest thereon, reasonable attorneys' fees, and costs of suit.

77.     Calif. Labor Code § 1194.2 entitles an employee receiving less than the legal minimum wage to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

78.     Calif. Labor Code § 1197.1 subjects an employer or other person who caused an employee to be paid a wage less than the minimum wage to: (1) a civil penalty equal to one hundred dollars ($100) for each underpaid employee for each pay period in which the employee is underpaid for an initial violation that is intentionally committed; (2) a civil penalty equal to two hundred fifty dollars ($250) for a subsequent violation for the same specific offense for each underpaid employee for each pay period regardless of whether the initial violation is intentionally committed; (3) restitution of wages; and (4) liquidated damages, all payable to the employee.

79.     Plaintiffs, on behalf of themselves and other Subclass Members, were required to travel to multiple Campaign offices during the course of a workday but were not paid for this work-related travel time.  This travel time typically occurred between signing out at the end of their first shift and reporting to their second shift of the workday.  The failure to pay for such travel time violated Plaintiffs and other Subclass Members right to receive the minimum wage for all hours worked.

80.     As a result of Defendants' unlawful acts, Plaintiffs and other Subclass Members have been deprived of wages owed them in an amount to be determined at trial, and, under Calif. Labor Code § 1194, are entitled to recover of such amount, plus interest thereon, liquidated damages, attorneys' fees and costs. and such other legal and equitable relief as the Court deems just and proper.

//

//

//

//

**FOURTH CLAIM**
**FAILURE TO PAY SAN FRANCISCO MINIMUM WAGE,**
**SAN FRAN. ADMIN. CODE § 12R.4**
**(ON BEHALF OF PLAINTIFFS AND SUBCLASS)**

81.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

82.     San Francisco Administrative Code § 12R.4 requires that employees receive the local minimum wage for all hours worked.

83.     During all relevant periods after, the San Francisco Administrative Code defines "employee" as any person entitled to payment under the California minimum wage law who works at least two (2) hours per week within the geographic boundaries of the city, and an "employer" as any person as defined in Section 18 of the California Labor Code, including corporate officers or executives, who directly or indirectly or through an agent or any other person, including through the services of a temporary services or staffing agency or similar entity, employs or exercises control over the wages, hours or working conditions of any employee.  *See* S.F. Admin. Code Chap. 12R.3.

84.     The San Francisco Administrative Code further entitles an employee receiving less than the local minimum wage to recover in a civil action the payment of any back wages unlawfully withheld, the payment of an additional sum as liquidated damages in the amount of fifty dollars ($50.00) to each employee for each day that the violation occurred, reasonable attorneys' fees, and costs.  *See* S.F. Admin. Code Chap. 12R.7.

85.     Plaintiffs, on behalf of themselves and other Subclass Members, were required to travel to multiple Campaign offices during the course of a workday but were not paid for this work-related travel time.  This travel time typically occurred between signing out at the end of their first shift and reporting to their second shift of the workday.  The failure to pay for such travel time violated Plaintiffs and other Subclass Members right to receive a minimum wage for all hours worked.

86.     As a result of Defendants' unlawful acts, Plaintiffs and other Subclass Members have been deprived of wages owed them in an amount to be determined at trial, and, are entitled

under San Francisco Administrative Code § 12R.7(d)–(e) to recover of such amount, plus interest thereon, $50 penalties for each day worked, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### FIFTH CLAIM
**FAILURE TO PAY OVERTIME WAGES**
**CALIF. LABOR CODE §§ 510, 1194  & IWC WAGE ORDER NO. 4, § 3**
**(ON BEHALF OF PLAINTIFFS AND SUBCLASS)**

87.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

88.     Plaintiffs, on behalf of themselves and other Subclass Members, were required to travel to multiple Campaign offices during the course of a workday but were not paid for this work-related travel time. This travel time occurred between signing out at the end of their first shift and reporting to their second shift of the workday. This uncompensated work-related travel caused Plaintiffs and other Subclass Members to work over eight hours in a day and over 40 hours in a week, but Defendants did not pay them – much less overtime premium compensation – for such overtime hours.

89.     By failing to pay overtime compensation to Plaintiffs, as alleged above, Defendants violated Calif. Labor Code § 510 and IWC Wage Order No. 4, § 3.

90.     Defendant Ho violated or caused to be violated the provisions of I.W.C. Wage Order No. 4 governing wages or hours and days or work.

91.     As a result of Defendants' unlawful acts, Plaintiffs, on behalf of themselves and other Subclass Members, have been deprived of overtime compensation in an amount to be determined at trial, and, under Calif. Labor Code § 1194 are entitled to recovery of such amounts, plus interest thereon, and attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

//

//

//

//

**SIXTH CLAIM**

**FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENSES
CALIF. LABOR CODE § 2802
(ON BEHALF OF PLAINTIFFS AND SUBCLASS)**

92.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

93.     Calif. Labor Code § 2802 requires employers to indemnify each employee "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

94.     Defendants failed to indemnify and reimburse Plaintiffs and other Subclass Members for necessary expenditures they incurred as a direct result of the duties they performed for the Defendants' benefit, including by not fully indemnifying employees for the expenses required to travel between the Defendants' offices during the course of their workday.

95.     As a result, Plaintiffs, on behalf of themselves and other Subclass Members, seek unreimbursed expenses, interest, costs incurred, attorneys' fees, and such other legal and equitable relief as the Court deems just and proper.

**SEVENTH CLAIM**

**FAILURE TO PROVIDE MEAL PERIODS
CALIF. LABOR CODE §§ 226.7, 512 & IWC WAGE ORDER NO. 4, § 11
(ON BEHALF OF PLAINTIFFS AND SUBCLASS)**

96.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

97.     Calif. Labor Code §§ 226.7, 512 and IWC Wage Order No. 4, § 11 require employers to provide employees who work five or more hours a day an uninterrupted half-hour meal period in which they were relieved of all duties.

98.     Defendants did not provide Plaintiffs and other Subclass Members who were required to travel to multiple Campaign offices during the course of a workday an uninterrupted half-hour meal period in which they were relieved of all duties.

//

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES

99.     As a result, Plaintiffs, on behalf of themselves and other Subclass Members, seek premium pay for missed meal periods, interest, and such other legal and equitable relief as the Court deems just and proper.

**EIGHTH CLAIM**
**VIOLATIONS OF UNFAIR COMPETITION LAW**
**CALIF. BUS. & PROF. CODE § 17200 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS, CLASS, AND SUBCLASS)**

100.    The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

101.    Calif. Business & Professions Code § 17200 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

102.    Calif. Business & Professions Code § 17204 allows "any person acting for the interests of itself, its members or the general public" to prosecute a civil action for violation of the UCL.

103.    Defendants improperly, fraudulently, and unlawfully classified their Campaign Workers as "independent contractors" and have thereby committed unlawful, unfair, and/or fraudulent business acts and practices as defined by Calif. Business & Professions Code § 17200. Further, Defendants also engaged in the following, as to the Subclass (a) failing to pay regular and overtime compensation to Hybrid Campaign Workers, as required by federal and California law; (b) failing to indemnify to Hybrid Campaign Workers for employment-related business expenses and losses; and (c) failing to provide meal periods to to Hybrid Campaign Workers.

104.    These violations of these laws serve as unlawful, unfair, and/or fraudulent predicate acts and practices for purposes of Calif. Business and Professions Code § 17200.

105.    As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent acts and practices described herein, Defendants have received and continue to hold ill-gotten gains belonging to Plaintiffs.  As a direct and proximate result of Defendants' unlawful business practices, Plaintiffs have suffered economic injuries including, but not limited to funds spent on expenses for the Defendants' benefit, unpaid compensation for missed meal periods, and unpaid

overtime and regular wages. Defendants have profited from their unlawful, unfair, and/or fraudulent acts and practices.

106.     Pursuant to Calif. Business & Prof. Code §17203, Plaintiffs are entitled to: (a) restitution of money acquired by Defendant by means of their unfair business practices, in amounts not yet ascertained but to be ascertained at trial; and (b) a declaration that Defendants' business practices are unfair within the meaning of the statute.

107.     Plaintiffs have assumed the responsibility of enforcement of the laws and lawful claims specified herein.  There is a financial burden incurred in pursuing this action which is in the public interest. Therefore, reasonable attorneys' fees are appropriate pursuant to Calif. Code of Civil Procedure § 1021.5.

108.     Plaintiffs request relief as described below.

## NINTH CLAIM

### FAILURE TO PAY OVERTIME WAGES
### FLSA, 29 U.S.C. § 201 *ET SEQ.*
### (ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE ACTION MEMBERS)

109.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

110.     The FLSA, 29 U.S.C. § 207, provides employees with the right to receive compensation at "one and one-half times the regular rate at which [they are] employed" for hours worked in excess of forty hours a week.

111.     Plaintiffs and other Collective Action Members were required to travel to multiple Campaign offices during the course of a workday but were not paid for this work-related travel time.  This travel time typically occurred between signing out at the end of their first shift and reporting to their second shift of the workday. This uncompensated work-related travel caused Plaintiffs and other Collective Action Members to work over 40 hours in a week, but Defendants did not pay them overtime premium compensation for such overtime hours.

112.     By failing to pay overtime premium pay for hours worked by Plaintiffs and Collective Action Members in excess of 40 hours in a week, Defendants have violated the FLSA, 29 U.S.C. §§ 201, *et. seq.*, including 29 U.S.C. §§ 207(a)(1), 215(a).

113.   As a result of Defendants' unlawful acts, Plaintiffs and Collective Action Members have been deprived of wages owed to them in an amount to be determined at trial, and are entitled to recover of such amount, and liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), plus interest thereon, attorneys' fees and costs and such other legal and equitable relief as the Court deems just and proper.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

A.   An award to Plaintiffs, on behalf of themselves and other members of the Class, of waiting time penalties and interest thereon, subject to proof at trial;

B.   An award to Plaintiffs, on behalf of themselves and other members of the Class, of statutory penalties because of Defendants' failure to provide Plaintiffs with itemized wage statements that comply with the requirements of Calif. Labor Code § 226, subject to proof at trial;

C.   An award to Plaintiffs, on behalf of themselves and other members of the Subclass, of damages in the amount of unpaid wages, liquidated damages, necessarily incurred business expenses, premium wages for failure to provide required meal periods, penalties, and interest thereon, subject to proof at trial;

D.   An order requiring Defendants to pay restitution of all amounts owed to Plaintiffs, on behalf of themselves and other members of the Class and Subclass, for Defendants' misclassification of the Class and failure to pay the Subclass accrued wages, failure to reimburse the Subclass for necessarily incurred business expenses, and failure to provide the Subclass required meal periods, as well as interest thereon, in an amount according to proof, pursuant to Business & Professions Code § 17203;

E.   An award to Plaintiffs and other members of the Collective Action, of damages in the amount of unpaid overtime wages, liquidated damages, and interest thereon, subject to proof at trial;

1  F.  An award to Plaintiffs of reasonable attorneys' fees and costs, pursuant to Calif.

2     Code of Civil Procedure § 1021.5, Calif. Labor Code §§ 218.5, 226, 1194, and

3     2802, 29 U.S.C. § 216, and/or any other applicable law; and

4  G.  An award to Plaintiffs of such other and further relief as this Court deems just and

5     proper.

6 DATED:  March 4, 2020     LEONARD CARDER, LLP

7

8             By:  */s/ Aaron D. Kaufmann*
                 AARON D. KAUFMANN

9

10 DATED:  March 4, 2020     LEGAL AID AT WORK

11

12             By:  */s/ George A. Warner*
                 GEORGE A. WARNER

13

14             *Attorneys for Plaintiffs*

15      **SIGNATURE ATTESTATION Local Rule 5-1(i)(3)**

16   I, Aaron Kaufmann, attest that the other signatory to this document concurs in the filing of

17 this document.

            */s/ Aaron D. Kaufmann*
18             Aaron D. Kaufmann

19

20

21

22

23

24

25

26

27

28

CLASS/COLLECTIVE ACTION COMPLAINT FOR DAMAGES