UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ PEREZ BAUTISTA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., et al.,<br><br>Defendants. | Case No. 20-cv-01613-HSG<br><br>**ORDER DENYING MOTIONS TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 34, 37 |

Pending before the Court are motions to compel arbitration and stay the proceedings filed by Defendants Long Ying International, Inc. ("LYI"), David M. Ho, Juul Labs, Inc. ("Juul"), and the Coalition for Reasonable Vaping Regulation ("CRVR"). Dkt. Nos. 34 ("LYI Mot."); 37 ("Juul Mot."). Briefing on the motions is complete. Dkt. Nos. 49 ("LYI Opp."); 50 ("Juul Opp."); 51 ("LYI Reply"); 52 ("Juul Reply"). On June 25, 2020, the Court held a hearing on the motions. Dkt. No. 65. For the following reasons, the Court **DENIES** Defendants' motion to compel arbitration and stay the proceedings.

**I.   BACKGROUND**

On June 25, 2019, San Francisco's Board of Supervisors banned the sale and distribution of e-cigarettes and vaping products in San Francisco. On July 10, 2019, the San Francisco Department of Elections certified a ballot measure (Proposition C) for the 2019 general election that would repeal the ban passed by the Board of Supervisors. *See* Declaration of David M. Ho ("Ho Decl.," Dkt. No. 44) ¶ 2.

CRVR is a political committee and advocacy organization established and incorporated under California law to "advocat[e] for the enforcement of strong and coherent laws, regulations and policies which will prevent the use of e-cigarettes and other tobacco products by youth under

the age of 21, while allowing adults the choice to continue purchasing these products in brick and mortar stores and online." *Id.* ¶ 3, Ex. D. CRVR retained LYI, a San Francisco-based strategic consultancy company, to provide campaign consulting and field management services in support of the Yes on C Campaign. David Ho, the CEO of LYI, is a political consultant and registered lobbyist. Mr. Ho was also retained by CRVR as an independent contractor to provide field campaign consulting services. *Id.* ¶ 2.

Plaintiffs Maria de la Luz Perez Bautista, Luz Perez Bautista, and Salvadora Correa (collectively, "Plaintiffs")[1] are former campaign workers who were hired by LYI to provide canvassing, phone banking, and administrative services, purportedly as independent contractors, to support the Yes on C Campaign in San Francisco in 2019. Plaintiffs are native Spanish speakers who applied for a position to join the Spanish-speaking campaign team. Dkt. No. 49-1 ("Bautista-Perez Decl.") ¶ 4; Dkt. No. 49-2 ("Perez Bautista Decl.") ¶ 4; Dkt. No. 49-3 ("Correa Decl.") ¶ 4.

Each of the Plaintiffs entered into an Independent Contractor Agreement ("ICA") with LYI under which they worked for the "Yes on C Campaign." Dkt. No. 1 ("Compl.") ¶¶ 9-11. Between August and October 2019, Plaintiffs worked as phone bank callers and door-to-door canvassers, and Plaintiff Luz Perez Bautista also worked as an administrative assistant. *Id.* Plaintiffs admit that they each signed an agreement entitled "Independent Contractor Agreement" with LYI. *Id*. ¶¶ 25-26. However, Plaintiffs contend that they were only offered the ICA in English, and were not given the option of receiving a translated version of the ICA or allowed to take it home to have it translated. Bautista-Perez Decl. ¶ 6; Perez Bautista Decl. ¶¶ 7-9; Correa Decl. ¶ 8.

Plaintiffs and LYI entered into the ICAs for the stated purpose of providing services for CRVR. Ho Decl. ¶ 5, Exs. A-C. Mr. Ho signed the contracts on behalf of LYI. Compl. ¶ 25; Ho Decl. ¶ 4. The ICAs all contain the following arbitration clause:

> *All disputes over the terms of this Agreement* not resolved in a reasonable time by the parties *shall be submitted to mediation* before a mutually agreed-upon mediator, with the mediator's costs borne equally by the parties. If the *mediation is unsuccessful*, then the dispute *shall be resolved by arbitration* before a mutually agreed-

---

[1] On May 21, 2020, named Plaintiffs Luz Perez Bautista and Salvadora Correa withdrew consent to become a party plaintiff in this action. Dkt. No. 54.

United States District Court
Northern District of California

> upon arbitrator, which shall be binding on the parties, with the prevailing party in the arbitration entitled to recover reasonable attorneys' fees and costs from the losing party. Notwithstanding the foregoing, either party may pursue resolution of a dispute over this Agreement via small claims court.

Ho Decl. ¶¶ 4, 6, Exs. A-C (emphasis added).

Plaintiffs allege that "Defendants are each joint employers of Plaintiffs and the Campaign Workers, and Defendants are jointly and severally liable for violations of applicable San Francisco, California, and federal law." Compl. ¶ 16. Further, Plaintiffs allege that "[CRVR] and [Juul] are each other's alter egos and form a single enterprise." *Id*. ¶ 13.

Specifically, Plaintiffs allege that Defendants are liable for (1) Failure to Pay Wages Owed at Separation, Cal. Labor Code §§ 201, 203; (2) Failure to Furnish Accurate Wage Statements, Cal. Labor Code § 226; (3) Failure to Pay Minimum Wages Under California Law, Cal. Labor Code §§ 1194, 1194.2; (4) Failure to Pay San Francisco Minimum Wage, S.F. Admin. Code § 12R; (5) Failure to Pay Overtime Wages, Cal. Labor Code §§ 510, 1194; (6) Failure to Reimburse Business Expenses, Cal. Labor Code § 2802; (7) Failure to Provide Meal Periods, Cal. Labor Code §§ 226.7, 512; (8) Violations of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.; and (9) Failure to Pay Overtime Wages, FLSA, 29 U.S.C. § 207. Plaintiffs also seek to represent a class of "all individuals who were hired by [LYI] to perform phone banking, canvassing and/or administrative tasks for the Yes on C Campaign and did perform such work at any time during the period between July 2019 and October 2019." *Id*. ¶ 54.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability,

1  according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In analyzing whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."  *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  In interpreting the validity and scope of an arbitration agreement, courts apply state law principles of contract formation and interpretation.  *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).

## III.  DISCUSSION

In determining whether to compel arbitration, two "gateway" issues must be decided by the Court: (1) whether there exists a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute at issue.  *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407, n.2 (2003); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  As detailed below, the Court finds that even if a valid agreement to arbitrate was formed, Plaintiffs' causes of action are not covered by the applicable arbitration provision.  Therefore, the Court will only address whether Plaintiffs' causes of action are covered by the scope of the arbitration provision.

### A.  Plaintiffs' Claims are Not Covered by the Arbitration Provision

Under the FAA, the Court must compel arbitration if the claims asserted fall within the scope of a valid arbitration agreement.  *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986) ("Where a contract contains an arbitration clause, there is a presumption of arbitrability [and] '[d]oubts should be resolved in favor of coverage.'").  Here, the ICA provides that "[a]ll disputes *over the terms of this Agreement*" shall be submitted to mediation in the first instance, and that if mediation is unsuccessful such disputes will "be resolved by arbitration before a mutually agreed-upon arbitrator, which shall be binding on the parties[.]"  Ho. Decl. Ex. A

(emphasis added). The central dispute for purposes of this motion is whether Plaintiffs' classification as independent contractors by the ICA means that Plaintiffs' labor code causes of action are "disputes over the terms of [the] Agreement."

Defendants contend that the allegations that Plaintiffs were not paid for all time worked, provided accurate wage statements, paid minimum wages, provided with meal and rest breaks, reimbursed for work-related expenditures, or paid all wages due upon separation necessarily flow from Plaintiffs' independent contractor classification under the ICA, and that had Plaintiffs not agreed to the arbitration provision in the ICA, they would not have been selected for their respective positions by Defendants. Put differently, Defendants believe that because Plaintiffs performed work for LYI under the ICA, their claims must arise from, and are therefore a dispute over the terms of, the ICA. Plaintiffs counter that the scope of the arbitration clause at issue is exceedingly narrow, and that these causes of action are neither based in contract nor a dispute over any the of terms of the ICA.

Ninth Circuit and California cases support Plaintiffs' position. In *Narayan v. EGL, Inc.*, 616 F.3d 895 (9th Cir. 2010), the Ninth Circuit explained the distinction between claims arising under a contract and those arising under an applicable labor code statute. The issue in *Narayan* was whether a contractual choice of law provision requiring the application of Texas law applied to claimed California labor code violations. The Ninth Circuit explained that labor code violations did not arise out of the contract, reasoning that the plaintiffs' claims for relief were dependent on whether they were employees (as opposed to independent contractors), which in turn was dependent "on the definition that the otherwise governing law—*not the parties*—gives to the term 'employee.'" *Id.* at 899 (emphasis added). The Ninth Circuit further explained that although the contracts could be relevant evidence later in the dispute, the labor code causes of action were not based on those contracts, stating that "[w]hile the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, *involve the interpretation of any contract terms*, or otherwise require there to be a contract." *Id.* (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal.3d 341, 348 (Cal. 1989) (listing over a dozen factors "logically pertinent to the inherently difficult determination whether a provider of

1  service is an employee or an excluded independent contractor for purposes of workers'
2  compensation law.")) (emphasis added).
3          In light of the Supreme Court's directives favoring arbitration, the application of the Ninth
4  Circuit's reasoning regarding a choice of law provision—as opposed to an arbitration clause—
5  only gets the Court so far.  However, in *Elijahjuan v. Superior Court*, 210 Cal. App. 4th 15 (Cal.
6  Ct. App. 2012), the California Court of Appeal addressed an issue nearly identical to the one
7  presently before the Court.  In *Elijahjuan*, plaintiffs alleged violations of the California Labor
8  Code and the Unfair Business Practices Act, among others, arising from alleged misclassification
9  as independent contractors instead of employees.  Defendants moved to compel arbitration
10 pursuant to the relevant contracts, which stated that the parties agreed to arbitration "if a dispute
11 arises with regard to [their] application or interpretation."  *Id*. at 18.  "The crucial issue," the Court
12 noted, "is whether the arbitration provision—which applies to any dispute that 'arises with regard
13 to [the Agreements'] application or interpretation'—includes the alleged misclassification [] as
14 independent contractors."  *Id*. at 20-21.  The court further noted that the "critical dispute in this
15 case is not whether the Agreements describe petitioners as independent contractors—they clearly
16 do—but whether petitioners were in fact independent contractors under the applicable legal
17 principles."  *Id*. at 21.
18         Applying the Ninth Circuit's reasoning in *Narayan*, the court in *Elijahjuan* found that
19 plaintiffs' rights "under the Labor Code are distinct from their contractual rights under the
20 Agreements.  The ultimate issue … is whether [defendants] satisfied the requirements of the Labor
21 Code, not how the parties described their relationship in the Agreements."  *Id.* at 23.  The Court
22 therefore held that "Labor Code claims do not arise out of the contract but instead are distinct from
23 rights under the Agreements," and reversed an order compelling arbitration.  *Id*. at 24.[2]  Put
24 differently, the court concluded that misclassification causes of action under California law are
25 "*unrelated to the substance of the parties' contractual obligations*, and instead depend[] on extra-
26

---

[2] The Court also distinguished the provision at issue there from broader arbitration provisions encompassing "any and all employment-related disputes."  *Id.* at 24 (citing *Brown v. Ralphs Grocery Co.*, 197 Cal.App.4th 489, 495 (Cal. Ct. App. 2011)).

6

1    contractual legal obligations an employer owes its employees, but does not owe its independent

2    contractors." *Id*. at 17 (emphasis added).³

3          In response, Defendants rely on a number of cases involving broad arbitration clauses, and

4    point to the Supreme Court's decision in *Epic Systems* as functionally abrogating prior labor code

5    non-arbitrability decisions. Neither argument is persuasive.

6          First, the arbitration clauses in the cases Defendants cite were fundamentally unlike the one

7    in the ICA. For example, in *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782 (Cal. Ct. App. 2017), the

8    arbitration agreement provided that "'any dispute' [the parties] could not resolve informally would

9    be determined by binding arbitration," and specifically defined as subject to arbitration disputes

10   regarding "wages, vacation pay, sick time pay, overtime pay, state and federal employment laws

11   and regulation, including but not limited to, the Fair Labor Standards Act (29 U.S.C. § 201 et

12   seq.), including the Equal Pay Act ( 29 U.S.C. § 206 et seq.)." *Id.* at 784-85. And the only issue

13   there was whether a nonsignatory could compel arbitration, and Plaintiff did not dispute that an

14   arbitration agreement existed or that it was valid. *Id.* at 785 ("[Plaintiff] does not contend the

15   arbitration agreement is invalid or unenforceable, and indeed he admits that his claims must be

16   arbitrated with signatory Real Time.").

17         Similarly, in *Reynosa-Juarez v. Accountable Healthcare Staffing, Inc*., No. 5:18-cv-06302-

18   EJD, 2019 WL 5814653, at *1 (N.D. Cal. Nov. 7, 2019), plaintiff signed a "Short Term Travel

19   Contract," which specified that for plaintiff "[t]o be paid … overtime, any overtime worked must

20   be approved before the shift is worked, in writing, by someone of authority at the facility.

21   Unapproved overtime will be paid to you as regular time." The arbitration clause also stated that

22   "[a]ny dispute to this agreement will be settled by binding arbitration." *Id.* Because the Short

23   Term Travel Contract contained "specific provisions relating to the payment of overtime, bonuses,

24   and per diems along with other terms and conditions of employment," and the language in the

25   contract about overtime payments formed the basis of the causes of actions asserted against the

---

³ In holding that the arbitration provision there did not cover misclassification causes of action, the California Court of Appeal also noted that "California law, like federal law, favors enforcement of valid arbitration agreements." *Id.* at 20 (quoting *Armendariz v. Foundation Health Psychcare Services, Inc*., 24 Cal.4th 83, 97 (Cal. 2000)).

1  defendants, the Court found that FLSA, California Labor Code, and UCL causes of action were
2  covered by the arbitration provision. *Id.*[4]
3        Defendants also rely on the Supreme Court's recent decision in *Epic Systems*, 138 S. Ct.
4  1612, to argue that Plaintiffs' authority that predates that 2018 decision is no longer good law.
5  LYI Reply at 6. In *Epic Systems*, the Supreme Court addressed whether employees are permitted
6  to bring their claims in class or collective actions, regardless of their agreement with their
7  employers, and held that a group of employees could not rely on a federal statute to void their
8  agreement to arbitrate disputes with their employer through one-on-one arbitration. *Id.* at 1619
9  ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according
10 to their terms – including terms providing for individualized proceedings."). The Supreme Court
11 analyzed the National Labor Relations Act ("NLRA") and confirmed that it does not conflict with
12 the FAA's command to enforce bilateral arbitration agreements. *Id.* at 1624-27. The Supreme
13 Court held that it does not "mak[e] any difference" whether a contrary rule arises under federal
14 law or state law; the FAA requires courts "to enforce, not override, the terms of the arbitration
15 agreement[]." *Id.* at 1623.
16       Contrary to Defendants' assertions, however, *Epic Systems* does not abrogate (or even
17 impact) Plaintiffs' authority (including *Narayan* or *Elijahjuan*), nor does it establish that
18 Plaintiffs' causes of action are somehow subject to a form of mandatory arbitration. *Epic Systems*
19 simply holds that arbitration agreements "must be enforced as written," and that the NLRA does
20 not reflect congressional intent to displace to FAA. *Id.* at 1623-27, 1632. The Supreme Court
21 described the agreement at issue in *Epic Systems* as "providing that [the parties] would arbitrate
22 any disputes that might arise between them." *Id.* at 1620. So that decision, involving the broadest
23 possible arbitration clause, does not bear on the Court's analysis of the substantially different

---

[4] In *Fontana v. Chefs' Warehouse Inc.*, No 16-cv-06521-HSG, 2017 WL 2591872, at *1 (N.D. Cal. June 15, 2017), this Court compelled arbitration of dispute regarding a severance agreement where the arbitration provision governed "all disputes" "arising out of, relating to, or resulting from the terms and conditions of Employee's employment." *Fontana*, however, did not involve the classification of an individual as an independent contractor versus an employee, and is distinguishable on that ground alone. In any event, the arbitration clause there was substantially broader than the one presently before the Court.

8

clause in this case.[5]

When coupled with the clear directive that arbitration provisions covering disputes "arising out of this agreement" or "arising hereunder" only cover claims arising from the contract terms, even if such claims in some sense would not have arisen but for the parties' agreement, the Court is satisfied that Plaintiffs' causes of action are not disputes "over the terms of [the] Agreement" that would invoke the arbitration provision in the ICA. *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921–924 (9th Cir. 2011) ("[a]ny dispute arising under this agreement" was not broad enough to require arbitration of a related claim for violation of a federal statute); *Tracer Research Corp. v. Nat'l Envt'l Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (agreement to arbitrate "any controversy or claim arising out of this agreement" is more narrow than agreement to arbitrate claims related to the agreement and does not encompass tort or statutory claims, even if the "tort claim would not have arisen 'but for' the parties' licensing agreement"); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (finding clause with "arising hereunder" language "is intended to cover a much narrower scope of disputes than language that includes 'relating' to a contract; *i.e.*, only those relating to the interpretation and performance of the contract itself."); *Rice v. Downs*, 248 Cal. App. 4th 175, 180, 186-194 (2016) (clause providing for arbitration of any controversy "arising out of this agreement" was "narrow"); *compare Brown v. Quantcast Corp.*, No. 19-cv-5773-EMC, 2019 WL 6727503, at *2 (N.D. Cal. Dec. 11, 2019) (granting motion to compel arbitration where the arbitration provision "[did] not state that it covers claims arising from or regarding the employment agreement," but instead

---

[5] Defendants contend that following the Supreme Court's decision in *Epic Systems*, courts have routinely enforced arbitration provisions that require FLSA claims to be arbitrated. *See, e.g.*, *Hughes v. S.A.W. Ent'mt*, 16-cv-03371-LB, 2018 WL 4109100, at *1 (N.D. Cal. Aug. 29, 2018) (granting motion to compel arbitration of individual claims brought in putative collective action under FLSA and putative class action under Fed. R. Civ. P. 23); *Carabajal v. Rentokil N. Am., Inc.*, 17-CV-6651-YGR, 2018 WL 3304635, at *1 (N.D. Cal. July 5, 2018) (granting motion to compel arbitration where the clause at issue provided that "[a]ny and all claims or controversies arising out of Employee's application or candidacy for employment, employment, or cessation of employment with the Company shall be resolved through final and binding arbitration …."). But Defendants again miss the point. The issue is not whether these types of causes of action *may* be subject to arbitration—that is undisputed. Rather, the issue is whether the wording of the arbitration provision in the ICA captures labor code claims based on misclassification, and none of the authority cited by Defendants addresses that question.

provided that it "cover[ed] claims arising from or regarding (*inter alia*) *performance* of the employment agreement.") (emphasis in original).

Although the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (quoting *Moses*, 460 U.S. at 24-25), the Court finds that Plaintiffs' claims are not a dispute over the terms of the ICA so as to trigger the arbitration provision. Without question, Defendants could have drafted the arbitration provision to cover labor code misclassification causes of action by, for example, expressly providing for arbitration of disputes or claims arising out of, or related to, Plaintiffs' employment, or of all labor code claims. Instead, Defendants drafted a narrow clause that only covers "disputes over the terms of" the ICA, which, applying Ninth Circuit and California law, Plaintiffs' causes of action clearly are not. Therefore, the Court finds that Plaintiffs did not agree to arbitrate the causes of action pled in the Complaint.[6]

Because the dispute does not fall within the scope of the arbitration provision in the ICA, the Court **DENIES** the motions to compel arbitration. The Court also **DENIES** Juul's motion to compel arbitration as a non-signatory in light of the Court's finding that the arbitration provision in the ICA does not cover Plaintiffs' claims. *See, e.g.*, *Lau v. Mercedes-Benz USA, LLC*, No. CV 11-1940 MEJ, 2012 WL 370557, at *5, 10-11 (N.D. Cal. Jan. 31, 2012) (denying motion to compel unenforceable arbitration agreement even where non-signatory had standing to enforce arbitration clause under theories of equitable estoppel and principal-agency relationship); *Corin v. Cintas Corp.*, No. CIV. S-09-2384 FCD/KJM, 2009 WL 5206712, at *1 (E.D. Cal. Dec. 18, 2009) (denying motion to compel and finding that the court need to consider whether non-signatories to an unenforceable arbitration agreement can also compel arbitration).

## IV. CONCLUSION

Because Plaintiffs' causes of action are not subject to the arbitration provision in the ICA,

---

[6] Because the Court finds that the arbitration provision in the ICA does not cover Plaintiffs' causes of action, the Court need not discuss Plaintiffs' arguments regarding unconscionability or class-wide arbitration.

the Court **DENIES** the Motions to Compel. The Court further sets a telephonic case management conference for August 25, 2020 at 2:00 p.m. The parties should be prepared to discuss next steps, including a plan for resolving the Motion for Conditional Certification. Dkt. No. 53. All counsel shall use the following dial-in information to access the call: Dial-In: 888-808-6929/Passcode: 6064255. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The parties are further advised to ensure that the Court can hear and understand them clearly before speaking at length.

**IT IS SO ORDERED.**

Dated: 8/12/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge