UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ BAUTISTA-PEREZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., et al.,<br><br>Defendants. | Case No. 20-cv-01613-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 82 |

Pending before the Court is Defendant Juul Labs, Inc.'s ("JLI") motion to dismiss (Dkt. No. 79, "Motion") Plaintiffs' First Amended Complaint (Dkt. No. 78, "FAC").[1] For the following reasons, the Court **GRANTS** the motion with leave to amend as to the claims against JLI.[2]

**I.   BACKGROUND**

On July 3, 2019, the Coalition for Reasonable Vaping Regulation ("CRVR") was incorporated for the purpose of "advocating for the enforcement of strong and coherent laws, regulations and policies which will prevent the use of e-cigarettes and other tobacco products by youth under the age of 21, while allowing adults the choice to continue purchasing these products

---

[1] Defendant Coalition for Reasonable Vaping Regulation ("CRVR") filed a joinder through which it seeks to join JLI's motion to dismiss by "adopt[ing] and incorporate[ing] all the statements and arguments set forth in JLI's motion that explain why the FAC should be dismissed as against CRVR." Dkt. No. 83 2:7-8. The Court finds that CRVR's attempt to join JLI's motion to dismiss is flawed. CRVR is differently situated than JLI with regarding to key legal and factual issues, including but not limited to (1) the relationships between CRVR, Long Ying, David Ho, the Yes on C Campaign, and Plaintiffs; and (2) CRVR's "usual course of business." Further, the argument made by JLI and CRVR that they are not each other's alter egos is undermined by CRVR's attempt to rely on JLI's motion practice. Accordingly, the Court rejects CRVR's purported joinder, and declines to consider whether any claims against CRVR should be dismissed, because no proper motion to dismiss has been filed as to those claims. If CRVR seeks to dismiss the claims against it in the FAC or a future amended complaint, it needs to bring its own motion.

[2] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

1    in brick and mortar stores and online." FAC ¶ 15.  CRVR is an "alliance of San Francisco
2    residents, businesses, and community leaders who believe in common sense regulation preventing
3    youth access and preserving adult choice." *Id*.  CRVR was formed to pass Proposition C, which
4    would have overturned a San Francisco ordinance suspending the sale of electronic cigarettes and
5    vapor products in the city. *Id.* ¶¶ 4, 15.

6    JLI is a San Francisco-based company that manufactures electronic nicotine delivery
7    devices. *Id.* ¶ 14.  Plaintiffs allege that JLI's Vice President of Supply and Demand Planning filed
8    Proposition C. *Id.* ¶ 23.  Plaintiffs assert that the CEO of CRVR is also a JLI employee, and that
9    JLI gave zero-interest loans and non-monetary contributions to CRVR. *Id.* ¶ 16.  Plaintiffs allege
10   that "[CRVR] and [JLI] are each other's alter egos and form a single enterprise." *Id.* ¶ 16.

11   The FAC alleges that "[JLI] and/or the [CRVR]" hired David Ho, a political consultant,
12   and his company Long Ying International, Inc. ("Long Ying"), a San Francisco-based strategic
13   consultancy, to provide campaign consulting and field management services in connection with
14   the Yes on C Campaign. *Id.* ¶ 24.  Plaintiffs allege that CRVR paid Long Ying over $4 million in
15   2019 for its campaign work. *Id.* ¶ 17.  Plaintiffs also allege that JLI paid David Ho $20,000 for
16   lobbying activity that occurred before "JLI and/or the Coalition" allegedly hired Ho and Long
17   Ying. *Id.* ¶¶ 18, 24.

18   Plaintiffs allege that CRVR advertised "Campaign Worker Positions online describing job
19   responsibilities as phone banking, direct in-person voter contact, and campaign visibility" for
20   "$25.00 per hour." *Id.* ¶ 26.  In the months preceding the November 5, 2019 election, Plaintiffs
21   allege that they were interviewed and hired by "[CRVR] and/or Long Ying" as independent
22   contractors to provide canvassing services for CRVR in connection with the Yes on C Campaign.
23   *Id.* ¶¶ 28-32.  Plaintiffs allege that, "[a]s part of the hiring process," they each signed and agreed to
24   "Independent Contractor Agreements" to work as "independent contractor[s]" with Long Ying.
25   *Id.* ¶ 30.  The agreements were signed by Plaintiffs and "David Ho on behalf of Long Ying". *Id.*
26   The Independent Contractor Agreements are not alleged to have been signed by CRVR or JLI.

27   Plaintiffs allege that the campaign workers started working on the Yes on C Campaign
28   around mid-August 2019, *id.* ¶¶ 27-29, and stopped working on the campaign on September 30,

2

2019. *Id.* ¶ 59. During the 1.5-month campaign, Plaintiffs and other campaign workers allegedly worked as canvassers, phone bankers, or both. *Id.* ¶¶ 34, 36. Plaintiffs allege that the "phone banking and canvassing operations were run on a day-to-day basis by a group of Campaign managers and administrators that were paid in part or in whole by the Coalition" and that "David Ho oversaw the phone banking and canvassing operations at the office." *Id.* ¶¶ 33-34. Plaintiffs allege that phone bankers reported to a "Campaign office," used equipment from the "Campaign," and were provided with scripts from the "Campaign." *Id.* ¶¶ 37-39. Plaintiffs further allege that canvassers were provided with "Campaign materials and tablets" from CRVR, but otherwise received directions from the "Campaign." *Id.* ¶¶ 44-46. The campaign workers received bi-weekly paychecks from Long Ying. *Id.* ¶ 56. The campaign, as well as all work performed by the campaign workers, ended on September 30, 2020. *Id.* ¶ 59. Plaintiffs generally allege that Defendants failed to pay the campaign workers minimum wages, separation wages, overtime wages, meal periods, and business expenses. *Id.* ¶¶ 73-138.

Based on these allegations, Plaintiffs assert individual and class claims against JLI, CRVR, Long Ying, and David Ho under the California Labor Code for (1) failure to pay wages owed at separation, (2) failure to furnish accurate wage statements, (3) failure to pay minimum wages, (4) failure to pay San Francisco minimum wage, (5) failure to pay overtime wages, (6) failure to reimburse business expenses, and (7) failure to provide meal periods. Plaintiffs also assert a claim for (8) violations of California's Unfair Competition Law. Further, Plaintiffs assert a claim for (9) failure to pay overtime wages under the federal Fair Labor Standards Act. Finally, Plaintiffs seek (10) civil penalties under the Private Attorneys General Act, Cal. Labor Code § 2698 et seq.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

3

1   Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a

2   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3   A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw

4   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

5   556 U.S. 662, 678 (2009).

6   In reviewing the plausibility of a complaint, courts "accept factual allegations in the

7   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

8   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless,

9   Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

10  fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

11  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  Even if the

12  court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend

13  even if no request to amend the pleading was made, unless it determines that the pleading could

14  not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

15  Cir. 2000) (en banc) (quotation omitted).

## III.   DISCUSSION

17  JLI contends that the FAC should be dismissed in its entirety because it fails to allege any

18  theory under which JLI would be liable to Plaintiffs or the putative class as to any of their ten

19  causes of action.  According to JLI, each of Plaintiffs' causes of action relies on the assumption

20  that JLI was, in some capacity, an "employer" of Plaintiffs and the campaign workers with some

21  say in how they were classified.  FAC ¶¶ 14, 74-76, 82, 85-86, 92-93, 100, 105, 107, 110-11, 114-

22  16, 121, 128-30, 135-36.  JLI further argues that Plaintiffs fail to adequately allege that JLI and

23  CRVR are each other's alter egos, and that even if they were, the FAC fails to allege any basis for

24  liability against CRVR.

25  Plaintiffs acknowledge that their claims against JLI are predicated on their allegations that

26  JLI and CRVR are a single enterprise or each other's alter egos and that CRVR employed

27  Plaintiffs.  *See* Dkt. No. 89 ("Opp.") 11:17-19.  Because Plaintiffs fail to adequately plead a single

28  enterprise or alter ego relationship between JLI and CRVR, the Court need not reach the question

whether CRVR employed Plaintiffs for purposes of California employment law or the FLSA. Plaintiffs argue in the alternative that JLI is a joint employer, but Plaintiffs also fail to adequately plead facts that would support this theory of employment.

### A.  Plaintiffs Fail To Adequately Allege That JLI and CRVR Are A Single Enterprise Or Each Other's Alter Egos

Plaintiffs allege that that JLI and CRVR "are each other's alter egos and form a single enterprise." FAC ¶ 16.  JLI contends that Plaintiffs' pleading is insufficient to overcome the presumption of corporate separateness.  Mot. at 10.

"Corporate entities are presumed to have a separate existence, and the corporate form will be disregarded only when the ends of justice require this result." *Toho–Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal.App.4th 1096, 1107 (2013).  "California recognizes alter ego liability where two conditions are met: First, where 'there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;' and, second, where 'adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice.'" *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.*, 572 P.2d 755, 761 n. 9 (1977)).

The single enterprise theory has been characterized as a version of alter ego liability in which "there is really only one corporation." *See Mossimo Holdings LLC v. Haralambus*, No. CV 14-05912 DDP JEMX, 2015 WL 476298, at *3 (C.D. Cal. Feb. 3, 2015) (quoting *Mesler v. Bragg Mgmt. Co.,* 39 Cal.3d 290, 301 (1985)).  "In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." *Las Palmas Associates v. Las Palmas Ctr. Associates,* 235 Cal.App.3d 1220, 1249–50 (1991); *see also Toho–Towa Co.*, 217 Cal.App.4th at 1108 ("The 'single-business-enterprise' theory is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose.").

//

### i.  Unity of Interest and Ownership

Unity of interest and ownership is a fact-intensive analysis that requires the Court to

> consider numerous factors, including inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002). "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *Id.*

Here, Plaintiffs allege that the CEO of CRVR is "also a Senior Director of Public Affairs at Juul." FAC ¶ 16. Plaintiffs also allege that (1) JLI made "$15,500,000 in zero-interest loans" to CRVR; (2) that JLI made other unspecified "non-monetary contributions" to CRVR; and (3) that JLI is the only creditor for CRVR's outstanding debts. *Id.* Plaintiffs contrast JLI's contributions to CRVR with the $950 that CRVR received from other sources, such as the Chinese American Democratic Club and individual donors. *Id.*

The Court finds that Plaintiffs fail to adequately plead unity of interest and ownership between JLI and CVRV. Alter ego liability is fundamentally an equitable doctrine, and Plaintiffs' allegations about funding and a single shared employee are insufficient to overcome the presumption of respect for the corporate form. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 960 (N.D. Cal. 2015) ("In determining whether a complaint has adequately pleaded alter ego liability, courts start from the premise that '[a]lter ego is a limited doctrine, invoked only where recognition of the corporate form would work an injustice.'").

### ii.  Inequitable Result

JLI contends that the FAC is devoid of allegations stating that treating JLI and CRVR as separate corporations would lead to an inequitable result. Mot. at 12. JLI contends that Plaintiffs would be unable to amend to assert such allegations because Plaintiffs have other defendants against whom they seek a remedy even if the claims against JLI are dismissed. *Id.* Plaintiffs respond in their Opposition that treating JLI and CRVR as separate corporations would lead to an

6

inequitable result because CRVR is undercapitalized with only $377,669.15 in cash on hand. Opp. at 13.

As an initial matter, Plaintiffs' undercapitalization argument relies on assertions not included in, incorporated by reference into, or the subject of a request for judicial notice regarding the FAC. *Id.*; *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) ("In general, the inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."). Further, the relevant Ninth Circuit case law regarding undercapitalization applies to a parent-subsidiary relationship, which JLI and CRVR are not alleged to have. *Slottow v. Am. Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1360 (9th Cir. 1993) ("inadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for the acts of the subsidiary."). Here, Plaintiffs do not allege a parent-subsidiary corporate structure between JLI and CRVR.

Accordingly, Plaintiffs' allegations, even taken as true, fail to establish that CRVR is an alter ego of, or a single enterprise with, JLI. Plaintiffs' failure to allege facts plausibly supporting either (1) a unity of interest and ownership; or (2) an inequitable result is fatal to Plaintiffs' alter ego claim against JLI. However, because the Court cannot conclude that amendment would be futile, the Court will allow leave to amend.

**B.   Plaintiffs Fail To Adequately Allege An Employment Relationship With JLI**

  **i.   Joint Employer Theory**

Plaintiffs argue in the alternative that JLI is a joint employer. Opp. at 16. Under the relevant standard, JLI can be liable under a joint employment theory only if it (1) "exercise[s] control over the wages, hours, or working conditions"; or (2) "suffer[s] or permit[s] [] work"; or (3) "engage[s]" workers to perform labor. *Henderson v. Equilon Enterprises, LLC*, 40 Cal. App. 5th 1111, 1117 (2019) (citing *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010)). "Engage," in this context, is "construed as the common law definition of an employment relationship." *Id.* Plaintiffs do not allege a direct common law employment relationship between JLI and the campaign workers. As a result, JLI is not alleged to have "engaged" the campaign workers to perform labor directly on its behalf.

7

Similarly, the FAC does not allege that JLI exercised control over the wages, hours, or working conditions of the campaign workers. Plaintiffs' allegations of control over working conditions primarily concern David Ho, the principal of Long Ying, and unidentified campaign staff. FAC ¶¶ 33-34 ("The phone banking and canvassing operations were run on a day-to-day basis by a group of Campaign managers and administrators that were paid in part or in whole by the Coalition….David Ho oversaw the phone banking and canvassing operation at the office."). Phone bankers reported to a "Campaign office," used equipment from the "Campaign," and were provided with scripts from the "Campaign," but the "Campaign" is not linked to any specific defendant. *Id.* ¶¶ 37-39. Plaintiffs also allege that canvassers were provided with "Campaign materials and tablets" from CRVR, but otherwise received directions from the "Campaign." *Id.* ¶¶ 44, 46. The campaign workers received bi-weekly paychecks from Long Ying. *Id.* ¶ 56. In sum, the FAC is devoid of allegations of control by JLI. Plaintiffs' arguments to the contrary rely on allegations of control by CRVR rather than by JLI.[3] Opp. at 18. As discussed above, allegations against CRVR are insufficient to state a claim against JLI.

### ii. Client Employer Theory

Plaintiffs' theory that JLI is liable as a "Client Employer" under Labor Code § 2810.3 also fails. Section 2810.3 imposes joint liability where a defendant (client employer) receives labor from another contractor (labor employer) that is "within [the client employer's] usual course of business." Cal. Labor Code § 2810.3(a)(1)(A) ("'Client employer' means a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor."). The statute further recognizes that "[u]sual course of business" means the "regular and customary work of a business, performed within or upon the premises or worksite of the client employer." Cal. Labor Code § 2810.3(a)(6).

---

[3] The Court notes that Plaintiffs, in the FAC and Opposition, often seem to conflate control over Plaintiffs' employment by the Yes on C Campaign with control by CRVR. Plaintiffs do not link the "Campaign" and "Campaign staff" with any particular defendant. *See Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) (dismissing complaint because plaintiff failed to sufficiently differentiate pleading against multiple defendants).

8

The FAC does not allege that the work for which Long Ying retained Plaintiffs constitutes work within JLI's "usual course of business." JLI is alleged to be in the business of being "an electronic cigarette producer." FAC ¶ 14. The FAC nowhere alleges that phone banking and canvassing fall within JLI's "usual course of business" of being "an electronic cigarette producer," *id.*, or that the work was performed on JLI's premises or worksite. Conversely, Long Ying, the entity with whom Plaintiff admits they signed Independent Contractor Agreements, is engaged in the business of providing "a full complement of public affairs and advocacy services." *Id.* ¶ 17. Plaintiff does not allege how public affairs and advocacy services fall within the "usual course of business" of producing electronic cigarettes. This notion is further undermined by the fact that the Yes on C Campaign lasted no more than one and a half months. *Id.* ¶ 59. As a result, the FAC fails to adequately allege a theory of recovery against JLI under Cal. Labor Code § 2810.3.

### C. UCL Cause of Action

Plaintiffs' claim under California's Unfair Competition Law ("UCL") is based on the same alleged statutory violations as Plaintiffs' other causes of action. Accordingly, at this stage, Plaintiffs' UCL claim fails for the same reasons. *See, e.g.*, *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 953 (S.D. Cal. 2016) ("When a statutory claim fails, a derivative UCL claim also fails."). Therefore, the Court need not now reach the merits of the UCL cause of action.

### D. FLSA Cause of Action

Plaintiffs' causes of action—including their cause of action under the FLSA—are predicated on whether Plaintiffs were employed by JLI. Plaintiffs nonetheless contend that the FLSA applies a separate standard for employment. Opp. at 10. The existence of a separate standard is not supported by Ninth Circuit law. *Rosenfield v. GlobalTranz Enterprises, Inc.*, 811 F.3d 282, 285 (9th Cir. 2015) ("The FLSA defines 'employee' as 'any individual employed by an employer' and, in turn, defines 'employ' as including 'to suffer or permit to work.'"); *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997) ("The term 'employ' has the same meaning under the AWPA as under the FLSA. The term includes 'to suffer or permit to work.'"). The "suffer or permit to work" standard under the FLSA directly mirrors the standard applicable under California

9

law. *See, e.g.*, *Curry v. Equilon Enterprises, LLC*, 23 Cal. App. 5th 289, 311 (2018) (holding that under California law, an entity may be liable where it "suffered or permitted" the work of the plaintiff). Accordingly, the deficiencies in Plaintiffs' state law claims apply with equal force to their claim under the FLSA.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED** with leave to amend. Plaintiff may not add any new causes of action or defendants to an amended complaint, and any amended complaint must be filed within 28 days from the date of this Order

**IT IS SO ORDERED.**

Dated: 12/18/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge