UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ BAUTISTA-PEREZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., et al.,<br><br>Defendants. | Case No. 20-cv-01613-HSG<br><br>**ORDER DENYING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT AND GRANTING MOTION FOR CONDITIONAL CERTIFICATION**<br><br>Re: Dkt. Nos. 79, 104, 105 |

Pending before the Court are Defendant JUUL Labs, Inc.'s ("JLI") and Defendant Coalition for Reasonable Vaping Regulation's ("CRVR") motions to dismiss Plaintiffs' Second Amended Complaint. Dkt. Nos. 104, 105. Also pending is Plaintiffs' amended motion for conditional certification of their Fair Labor Standards Act ("FLSA") collective action. Dkt. No. 79. For the following reasons, the Court **DENIES** the motions to dismiss and **GRANTS** the motion for conditional certification.[1]

**I.   BACKGROUND**

This is the second motion to dismiss filed by JLI. Both JLI and CRVR contend that they cannot be held liable for violations of wage-and-hour laws because they were not Plaintiffs' employers for purposes of either California or federal law. In its order granting JLI's previous motion to dismiss, the Court detailed the factual allegations made by Plaintiffs relevant to Plaintiffs' theories of liability against JLI and CRVR. Dkt. No. 98 at 1-3. On January 19, 2021, Plaintiffs filed a second amended complaint with new allegations concerning JLI's and CRVR's involvement with the Yes on C Campaign ("Campaign"), a political campaign to pass Proposition

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

C, which would have overturned a San Francisco ordinance suspending the sale of electronic cigarettes and vapor products in the city.  Dkt. No 100 ("SAC") ¶ 3.

Plaintiffs now allege that the Campaign was funded and operated by JLI with JLI controlling the Campaign finances and strategy and hiring the upper-level managers who directed the day-to-day operations. *Id. ¶* 4.  In support of this broader allegation, Plaintiffs allege a series of specific actions by JLI: JLI created CRVR as a shell entity to obscure its involvement with the Campaign, and JLI employees directed CRVR's activities, *Id*. ¶¶ 6, 67; JLI's involvement with the Campaign and hiring of lobbyists predated the incorporation of CRVR on July 3, 2019, *Id*. ¶¶ 25-58; except for $950, JLI was the exclusive source of funds for CRVR through no-interest loans, *Id.* ¶¶ 71-75; JLI continued to have operational control of the Campaign even after CRVR's incorporation, *Id.* ¶¶ 76-81; and JLI made the decision to cease all Campaign activity, *Id.* ¶ 137.

The SAC focuses on the control exerted over Campaign workers by Nathaniel Sillin, a JLI Executive Director of Corporate Responsibility and Trust. *Id.* ¶¶ 76-77.  According to the SAC, Mr. Sillin was integrally involved in the day-to-day operations of the Campaign, including supervision of the Campaign workers. *Id.* ¶ 125.  He provided the scripts used by Campaign workers and monitored the Campaign workers while they were phone banking. *Id.* ¶¶ 125-126.  He controlled how many Campaign workers were hired and how much they were paid. *Id.* ¶¶ 128-129.  He dictated field shift hours and reallocation of Campaign workers between assignments. *Id.* ¶¶ 131-132, 134.  He also terminated CRVR's Communications Director "[o]n behalf of the Coalition for Reasonable Vaping Regulation." *Id.* ¶ 138.

Based on these allegations, and other allegations discussed in the Court's prior order, Plaintiffs continue to assert individual and class claims against JLI, CRVR, and the other Defendants under the California Labor Code for (1) failure to pay wages owed at separation, (2) failure to furnish accurate wage statements, (3) failure to pay minimum wages, (4) failure to pay San Francisco minimum wage, (5) failure to pay overtime wages, (6) failure to reimburse business expenses, and (7) failure to provide meal periods.  Plaintiffs also assert a claim for (8) violations of California's Unfair Competition Law ("UCL").  Further, Plaintiffs assert a claim for (9) failure to pay overtime wages under the federal Fair Labor Standards Act.  Finally, Plaintiffs continue to

2

1  seek (10) civil penalties under the Private Attorneys General Act, Cal. Labor Code § 2698 et seq.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

The FLSA provides employees with a private right of action to sue an employer for violations of the Act "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, under the FLSA, "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).

In *Campbell*, the Ninth Circuit provided guidance as to how lower courts should handle the two-stage process of collective action certification. *Hernandez v. Dutton Ranch Corp.*, No. 19-CV-00817-EMC, 2020 WL 1274908, at *1 (N.D. Cal. Mar. 17, 2020). The first stage, known as either preliminary or conditional certification, generally occurs early in the litigation. Here, "the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109. "The level of consideration is 'lenient'" and "loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id.* The consequence of preliminary certification is simply that a notice is issued to members of the putative collective action advising them that they must affirmatively opt in to participate in the litigation. *Id.* Unlike Rule 23 class certification, "[p]reliminary certification in the FLSA context does not 'produce a class with an independent legal status[ ] or join additional parties to the action'"; rather, "'[t]he sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Id.* at 1101. "[P]reliminary certification is 'neither necessary nor sufficient for the existence of a [collective] action.'" *Id.*

## III.  DISCUSSION

### A.  Motions To Dismiss

Plaintiffs contend that they have adequately alleged that JLI is a joint employer under California law. Dkt. No. 113 at 7-13. JLI can be liable under a joint employment theory if it (1) "exercise[s] control over the wages, hours, or working conditions"; or (2) "suffer[s] or permit[s] [] work"; or (3) "engage[s]" workers to perform labor. *Henderson v. Equilon Enterprises, LLC*, 40 Cal. App. 5th 1111, 1117 (2019) (citing *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010)). In its prior order, the Court found that Plaintiffs had not adequately alleged that JLI exercised control over the wages, hours, or working conditions of the Campaign workers. Dkt. No. 98 at 8. Plaintiffs' previous allegations of control over working conditions primarily concerned Defendant David Ho, the principal of Defendant Long Ying, and unidentified Campaign staff. *Id.* In the SAC, by contrast, Plaintiffs have specifically alleged that Mr. Sillin, an Executive Director at JLI, was integrally involved with the day-to-day activities of Campaign workers. *See, e.g.*, SAC ¶ 126

("[O]n September 17, 2019, Mr. Sillin sent Mr. Hsieh, Mr. Whitehurst, and Mr. Mosher an email with the subject line: 'Field script not being implemented as said it was.' In that email, Mr. Sillin expressed concern that Campaign Workers were not using the right script while phone banking and attached a screenshot of software indicating that he could monitor what scripts each Campaign Worker was using while phone banking."); ¶ 127 ("On September 19, 2019, Mr. Sillin wrote Mr. Ho an email with the subject line 'Canvassing Script.' That email stated: 'In my ideal world, the attached is what we'll use, but if you suggest edits or think some aspect of this is unworkable, certainly open to suggestions.'"); ¶ 130 ("In an email on September 23, 2019, Mr. Sillin wrote to Mr. Whitehurst, Mr. Ho, and Ms. Trujillo, 'Based on the people currently on payroll working for Georgine, let's immediately shift them all to support David's canvassing / doors operation. We need competent managers given the size of the canvassing team – and this is of huge value. She chatted w/ Dave and wanted to run by you first. Really need Georgine and team's expertise on canvassing.'"); ¶ 131 ("In another email on September 23, 2019, Mr. Sillin wrote to Mr. Ho: 'Dave, / Here's what we're implementing: / . . . Field shifts should be 4 to 8 pm on weekdays, 10 a.m. to 8 p.m. on Sat, noon to 8 pm. on Sunday – each canvasser should be getting 4.5 FAVORABLES an hour. . . .'").

While Defendants characterize these allegations as showing that JLI provided only "surface level general comments," Dkt. No. 115 at 1, the Court disagrees. Plaintiffs have plausibly alleged that Mr. Sillin exercised a degree of control and supervision over how Campaign workers conducted their phone banking, which groups of Campaign workers carried out particular tasks, and what hours Campaign workers would be in the field. This is a higher level of control than was found insufficient in the cases cited by JLI. *See Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1433 (2010) (holding that a payroll company, which handled "ministerial tasks," did not exercise control over wages, hours, or working conditions); *Curry v. Equilon Enterprises, LLC*, 23 Cal. App. 5th 289, 302-303 (2018), *as modified on denial of reh'g* (May 18, 2018) (holding that Shell Oil's operational requirements for lessees of its gas stations did not amount to control over wages, hours, or working conditions of the lessee's employees when lessee "was responsible for hiring, firing, disciplining, training, and compensating" the employees).

In its motion to dismiss, CRVR argues that Plaintiffs' allegations regarding training manuals and phone banking scripts are insufficient to show control over wages, hours, or working conditions for purposes of the joint employer inquiry. Dkt. No. 105 11-12. But Plaintiffs' allegations with respect to CRVR are not limited to CRVR providing training manuals and scripts. Plaintiffs allege that CRVR hired four "field staff" whose duties included "[s]upport[ing] the field program with voter identification and outreach as it relates to the outreach program." SAC ¶ 48. Plaintiffs also allege that these field staff, who were hired and paid directly by the Coalition, were part of a group of administrators and leads who ran the phone banking and canvassing operations on a day-to-day basis.[2] *Id.* ¶¶ 91-92. Further, Plaintiffs allege that Mr. Sillin of JLI also acted on behalf of the Coalition. *Id.* ¶ 138. Although the precise lines of authority between JLI, CRVR, Mr. Sillin, and the other Defendants are not clear at this stage, California law allows the Court to look past superficial distinctions to examine which parties exercised actual control. *See Martinez*, 49 Cal. 4th at 71 (explaining that the definition of employer which "encompasses 'any person ... *who directly or indirectly, or through an agent or any other person,* employs or exercises control over the wages, hours, or working conditions of any person,' is broad enough to reach through straw men and other sham arrangements to impose liability for wages on the actual employer." (emphasis in original)).

For purposes of the FLSA, the Court must similarly assess the "economic reality" of the relationship between the Campaign workers and JLI and CRVR, the alleged joint employers. *See Torres-Lopez v. May*, 111 F.3d 633, 640-41 (9th Cir. 1997). This includes consideration of shared control, either direct or indirect. *See Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917-918 (9th Cir. 2003). At the motion to dismiss stage, Plaintiffs' allegations are sufficient to plausibly allege that JLI and CRVR exercised at least indirect control over wages, hours, or working conditions. Accordingly, the Court finds that Plaintiffs have plausibly alleged that JLI and CRVR are joint

---

[2] The relationship between JLI and CRVR—and between JLI, CRVR, and the Campaign—is complicated by allegations that JLI hired lobbyists and consultants, including Defendant Long Ying, to work on the Campaign before CRVR was incorporated, and that many of those same entities were then transitioned onto contracts with CRVR. SAC ¶¶ 45-52.

6

employers under California law and the FLSA.[3]

JLI also argues that Plaintiffs fail to adequately allege "enterprise coverage" under the FLSA. Dkt. No. 104 at 24-25. It is unclear to the Court whether JLI is making a good faith argument that it does not meet the requirements for enterprise coverage under the FLSA, namely that the enterprise has (1) "employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. § 203(s). Plaintiffs do allege that JLI is "an electronic cigarette producer," which is a good for commerce, and that JLI is an employer covered by the FLSA. SAC ¶ 16. While Plaintiffs do not specifically allege that JLI has an annual gross volume of sales greater than $500,000, the Court finds that this is a reasonable inference to draw given that JLI devoted more than $18,000,000 towards a single municipal political campaign. *See id.* ¶ 71.

CRVR's argument that Plaintiffs fail to adequately allege enterprise coverage as to CRVR is on firmer footing as it is less clear to the Court that CRVR on its own satisfies the requirements of 29 U.S.C. § 203(s). Dkt. No. 17-18. However, when considering the scope of "enterprise coverage," the Court can aggregate related activities if they are "performed under a unified operation or common control" and "performed for a common business purpose." 29 C.F.R. § 1620.7. "Activities are performed under common control when the power to direct, restrict, regulate, govern or administer the performance of the activities resides in a single person or entity or when it is shared by a group of persons or entities." *Id.* "Activities are performed for a common business purpose when they are directed to the same or similar business objectives." *Id.* As discussed above, Plaintiffs allege substantial overlap in the activities and personnel of JLI, CVRV, and the Campaign as they sought to advocate on behalf of Proposition C. Determining the extent of common control and common business purpose is a task better suited for the summary

---

[3] Because the Court finds that Plaintiffs have adequately pled facts supporting a theory of joint employment against both JLI and CRVR, the Court need not decide whether JLI and CRVR are each other's alter egos and whether the corporate veil should be pierced.

1    judgment stage. While CRVR may eventually prevail on this issue, the Court finds that Plaintiffs'
2    allegations are sufficient to plausibly allege enterprise coverage.
3         Both JLI and CRVR argue that Plaintiffs' UCL claim seeks remedies unavailable as a
4    matter of law. Dkt. No. 104 at 22-24; Dkt. No. 105 at 18-19. The gist of their argument seems to
5    be that because Plaintiffs were paid by Defendant Long Ying, Plaintiffs cannot seek restitution
6    from JLI or CRVR. *Id.* The Court first notes that Plaintiffs allege that CRVR did in fact issue
7    checks to them and therefore it is at least plausible that some of the funds allegedly owed to
8    Plaintiffs can be traced to CRVR and/or JLI. *See* SAC ¶ 141. JLI's and CRVR's arguments also
9    appear to be based on the premise that they cannot be considered joint employers under California
10   law. For the reasons discussed above, the Court rejects this premise at the pleading stage. And
11   "[a]n order for payment of wages unlawfully withheld from an employee is a restitutionary
12   remedy authorized by the UCL." *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 367
13   (2017).
14        Accordingly, the Court **DENIES** JLI's and CRVR's motions to dismiss.

**B.    Plaintiffs' Motion For Conditional Certification**

Plaintiffs filed an amended motion for conditional certification of a collective action under FLSA 29 U.S.C. § 216(b) on September 24, 2020. Dkt. No. 79. They seek conditional certification of a group of similarly situated Campaign workers who worked uncompensated overtime while phone banking and canvassing for the Campaign. *Id.* at 2. The proposed representative group includes: All individuals who were hired by Long Ying International, Inc. to work on the Yes on C Campaign and who either: (a) worked 11 or more shifts in a work week; or (b) worked 10 shifts in a work week and reported to two different work locations in at least one day of that week. *Id.* at 2. JLI opposes conditional certification on the grounds that JLI and CRVR were not involved in the employment of Campaign workers and the prospective collective action members are not similarly situated. Dkt. No. 86 at 6-13. JLI also argues that Plaintiffs' proposed notice is deficient. *Id.* at 14-15. CRVR filed a partial joinder of JLI's opposition in which it adopts JLI's arguments on the grounds that they apply equally to CRVR. Dkt. No. 88. Defendants Long Ying and David Ho also filed a partial joinder of JLI's opposition, joining in

JLI's arguments that prospective collective action members are not similarly situated. Dkt. No. 87.

As discussed above, the Court finds that Plaintiffs have adequately alleged facts in support of a joint employer theory of liability for JLI and CRVR. Given that conditional certification is considered under a "lenient" standard "loosely akin to a plausibility standard, commensurate with the stage of the proceedings," *see Campbell*, 903 F.3d at 1109, the Court rejects the arguments of Defendants that are based on the premise that JLI and CRVR cannot be considered joint employers under the FLSA. *See* Dkt. No. 86 at 4-7, 9, 11-13.[4]

Defendants also argue that Plaintiffs fail to allege a single unlawful decision, plan, or policy and that material differences between Plaintiffs and putative class members outweigh material similarities. *Id.* at 6-8, 9-11. In the Ninth Circuit, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. "[A]s long as the proposed collective's 'factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.'" *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 948 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 248 (2020) (quoting *Campbell*, 903 F.3d at 1114). To resolve Plaintiffs' FLSA claim, the Court will have to determine whether Plaintiffs and other Campaign workers accrued unpaid overtime through unpaid travel time and/or working more than 10 shifts in a week and whether Defendants misclassified the Campaign Workers in an attempt to evade their FLSA obligations. The similarity of these legal and factual inquiries makes conditional certification appropriate.

Defendants also object to the following aspects of Plaintiffs' proposed notice:

- The notice includes the Court's name at the top of page 1;

---

[4] JLI submitted declarations by Mr. Berrier and Mr. Sillin in support of their opposition. Dkt. No. 86-1; Dkt. No. 86-2. Mr. Sillin's declaration includes the statement that "Neither I nor anyone from JLI has any information as to the number of Campaign Workers that were involved in the work performed by Ho and/or LYI on the Campaign Similarly, neither I nor anyone at JLI has information as to the identity of the Campaign Workers, when they worked, how long they worked, or what they were paid for their work." Dkt. No. 86-1 ¶ 13. This statement appears to be materially inconsistent with the content of Mr. Sillin's emails that Plaintiffs allege in the SAC. *See* SAC ¶¶ 128-132.

- Plaintiffs provide details regarding the state law claims at page 6;
- The denial of liability language at page 3 does not include JLI's defense that it was not Plaintiffs' employer and therefore is not liable;
- Plaintiffs request a response period of 75 days.

Dkt. No. 86 at 14-15.

Contrary to Defendants' argument, the Court does not find the caption at the top of page 1 to improperly imply the Court's endorsement of Plaintiffs' lawsuit. *See Bonner v. SFO Shuttle Bus Co.*, No. C13-1606 TEH, 2013 WL 6139758, at *4 (N.D. Cal. Nov. 21, 2013) ("The Court finds that use of the caption does not give a false impression of endorsement; rather it indicates the importance of the notice and may distinguish it from junk mail."). The proposed notice also states that "the Court takes no position regarding the merits of the claims in the Lawsuit." Dkt. No. 79-1 at 7. The Court accordingly approves of the inclusion of the case caption. *See Flores v. Velocity Exp., Inc.*, No. 12-CV-05790-JST, 2013 WL 2468362, at *9 (N.D. Cal. June 7, 2013) ("[N]otices typically contain a court caption.").

Regarding the state law claims, the Court disagrees with Defendants that the discussion of the state law claims is misleading. The proposed notice contains the clear statement that "[t]he California state law claims asserted in this lawsuit are separate and apart from the claims asserted under the FLSA." Dkt. No. 79-1 at 6. Further, such information could be helpful for prospective collective action members in deciding whether to opt into the collective action, and the Court sees no harm in providing a brief description of the state law claims.

The Court also disagrees that Plaintiffs need to include more information about JLI's defenses. The current statement that "Defendants contest Plaintiff's claims and allegations asserts in this lawsuit, will assert defenses to the claims, and deny any wrongdoing or liability" is sufficient to advise prospective collective action members that Defendants deny all liability. *See Brown v. Permanente Med. Grp., Inc.*, No. 16-CV-05272-VC, 2017 WL 1536493, at *2 (N.D. Cal. Feb. 2, 2017) ("[N]otice need not include a detailed statement of [defendant's] defenses, though it must include the statement that [defendant] denies all liability.").

Finally, the Court finds that the 75-day response period is reasonable given the number of

former employees and the potential difficulty of locating employees whose employment lasted at most two and a half months and who were terminated over eighteen months ago. *See Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) ("Though opt-in periods vary, timeframes of sixty to ninety days appear to have become the presumptive standard in this District.").

Accordingly, the Court **GRANTS** the motion for conditional certification and **APPROVES** the proposed class notice.

## IV. CONCLUSION

The Court **DENIES** Defendants' motions to dismiss. The Court **GRANTS** Plaintiffs' motion for conditional certification. Within two weeks of this order, Defendants are **DIRECTED** to provide Plaintiffs' counsel with a list of names and contact information of the prospective collective action members. Once that information is received, Plaintiffs are **DIRECTED** to distribute the proposed notice by mail.

**IT IS SO ORDERED.**

Dated: 4/27/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

11