AARON KAUFMANN, SBN 148580
GISELLE OLMEDO, SBN 294750
LEONARD CARDER, LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
akaufmann@leonardcarder.com
golmedo@leonardcarder.com

GEORGE A. WARNER, SBN 320241
LEGAL AID AT WORK
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 864-8848
Facsimile: (415) 593-0096
gwarner@legalaidatwork.org

*Attorneys for Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ BAUTISTA-PEREZ, LUZ PEREZ BAUTISTA and SALVADORA CORREA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., COALITION FOR REASONABLE VAPING REGULATION, LONG YING INTERNATIONAL, INC., DAVID M. HO, and DOES 1-10 inclusive,<br><br>Defendants. | Case No.  4:20-cv-01613-HSG<br><br>**NOTICE OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Operative Complaint Filed:    September 9, 2020<br>Trial Date:                              None set<br><br>Date:          April 7, 2022<br>Time:          2:00 p.m.<br>Before:        Hon. Haywood S. Gilliam<br>Courtroom:  2, Fourth Floor<br>                     1301 Clay Street<br>                     Oakland, CA |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................. 3

       A.     Plaintiffs' Factual Allegations ............................................................ 3

       B.     Procedural Background ....................................................................... 4

III.   PROPOSED SETTLEMENT .............................................................................. 6

       A.     Settlement Class Definitions ............................................................... 6

       B.     Plan Of Allocation ............................................................................... 7

              1.     Net Settlement Fund .................................................................. 7

                     a)     Waiting Time Penalty Share ........................................... 7

                     b)     Wage Statement Penalty Share ...................................... 7

                     c)     Unpaid Wages and Expenses Share ............................... 7

              2.     LWDA Payment ......................................................................... 8

              3.     FLSA Settlement ....................................................................... 8

              4.     Attorneys' Fees .......................................................................... 8

              5.     Class Representative Service Awards ...................................... 8

              6.     Settlement Administration Fees and Proposed Administrator ...... 9

              7.     Distribution Plan and Possible Cy Pres Allocation ................. 9

       C.     Notice Procedure ................................................................................ 10

IV.    ARGUMENT ...................................................................................................... 10

       A.     Conditional Certification of the Rule 23 Class is Appropriate because
              the Settlement Class Meets the Requirements of Rules 23(a) and (b)(3)...... 11

       B.     The Settlement Class Satisfies the Requirements of Rule 23(a) ............ 11

       C.     The Settlement Class Satisfies Predominance and Superiority............... 12

       D.     Preliminary Approval is Appropriate Because the Settlement is Fair,
              Reasonable and Adequate.................................................................... 14

       E.     The Settlement is the Product of Informed, Non-Collusive Negotiation ..... 15

       F.     The Settlement Falls Within the Range of Possible Approval ................ 16

              1.     The Strength of Plaintiffs' Case and the Risk of Further
                     Litigation Support Preliminary Approval..................................... 16

              2.     The Settlement Consideration is Fair ........................................ 18

              3.     The Planned Allocation Is Fair .................................................. 19

              4.     The FLSA Claim Allocation Is Fair ............................................ 19

              5.     The PAGA Claim Allocation is Fair ........................................... 19

i

6.   The Proposed Service Awards Are Reasonable, and Are Subject to Court Review ....................................................................................... 20

7.   Attorneys' Fees and Costs that Plaintiffs Will Request Are Reasonable ........................................................................................ 21

8.   Class Action Fairness Act Notice ................................................ 22

G.   The Proposed Notice is the Best Notice Practicable ............................. 22

V.   CONCLUSION .......................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOT AND MPA ISO PLTFS' UNOPPOSED MOTION FOR PRELIM APPVL OF SETTLEMENT AND
CONDITIONAL CLASS CERTIFICATION

1

## TABLE OF AUTHORITIES

**CASES**

*Boyd v. Avanquest N. Am., Inc.,*
No. 12-cv-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015) ...................................... 14
*Churchill Village, LLC v. General Electric,*
361 F.3d 566 (9th Cir. 2004) ........................................................................................................ 22
*Custom Led, LLC v. eBay, Inc.,*
No. 12-CV-00350-JST, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) ...................................... 14
*Cuzick v. Zodiac U.S. Seat Shells, LLC,*
No. 16-CV-03793-HSG, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) ................................. 14, 21
*Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.,*
No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ................................... 14-15
*EEOC v. Kovacevich "5" Farms,*
No. CV-F-06-165 OWW/TAG, 2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) .......................... 11
*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 11, 13, 14
*Haralson v. U.S. Aviation Servs. Corp.,*
383 F. Supp. 3d 959 (N.D. Cal. 2019) ........................................................................... 15, 19, 20
*Harris v. Vector Mktg. Corp.,*
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................... 14
*In re Bluetooth Headset Prod. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ........................................................................................................ 21
*In re Mercury Interactive Securities Litigation,*
618 F.3d 988 (9th Cir. 2010) ........................................................................................................ 21
*Mazza v. Am. Honda Motor Co., Inc.,*
666 F.3d 581 (9th Cir. 2012) ........................................................................................................ 12
*Noe v. Superior Ct.,*
237 Cal. App. 4th 316 (2015) ...................................................................................................... 17
*O'Connor v. Uber Techs., Inc.,*
201 F. Supp. 3d 1110 (N.D. Cal. 2016) ...................................................................................... 15
*Ohayon v. Hertz Corp.,*
No. 5:11-cv-01662 EJD, 2012 WL 4936058 (N.D. Cal. Oct. 16, 2012) .................................. 22
*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ........................................................................................................ 20
*Soc. Sers. Union, Local 535 v. Cnty. of Santa Clara,*
609 F.2d 944 (9th Cir. 1979) ................................................................................................... 11-12
*Talavera v. Sun-Maid Growers of California,*
No. 1:15-cv-00842-DAD-SAB, 2020 WL 2195115 (E.D. Cal. May 6, 2020) .......................... 15
*Van Vranken v. Atlantic Richfield Co.,*
901 F.Supp. 294 (N.D. Cal. 1995) .............................................................................................. 21
*Villegas v. J.P. Morgan Chase & Co.,*
CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................................. 15

**STATUTES**

28 U.S.C.
§1715 ............................................................................................................................................ 22

iii

1

TABLE OF AUTHORITIES (cont'd)

2

**STATUTES (cont'd)**

3

29 U.S.C.
4   § 260 .................................................................................................................... 19

5   Cal. Lab. Code
    § 2699(l)(2) .................................................................................................. 8, 15, 17
6

7   Fed. R. Civ. P.
    23 .................................................................................................... 10, 11, 12, 22

8   Labor Code
    § 203 ................................................................................................... 4, 6, 7, 16
9

10  Labor Code
    § 226 ................................................................................................................ *passim*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOT AND MPA ISO PLTFS' UNOPPOSED MOTION FOR PRELIM APPVL OF SETTLEMENT AND
CONDITIONAL CLASS CERTIFICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 7, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Haywood S. Gilliam, United States District Court for the Northern District of California, located at Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street Oakland, CA 94612 in Courtroom 2, 4th Floor, Plaintiffs Maria De La Luz Bautista-Perez, Luz Perez Bautista and Salvadora Correa ("Plaintiffs") will and hereby do respectfully move this Court for preliminary approval of the proposed Collective and Class action settlement.

Plaintiffs request that this Court enter an Order (1) conditionally certifying the Rule 23 settlement class; (2) granting preliminary approval to the proposed Class and Collective Action Settlement; (3) appointing Plaintiffs as class representatives of the Class and as representative Plaintiffs for the collective action; (4) appointing Plaintiffs' attorneys as Class Counsel; (5) appointing CPT Group, Inc. ("CPT") as Settlement Administrator; (6) approving the form, content, and method of distribution proposed by counsel to provide notice of the class settlement; (7) and scheduling a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and Service Awards to the Named Plaintiffs.

This motion is made on the ground that proposed settlement is the product of arm's length negotiations by qualified class counsel with the assistance of an experienced and renowned neutral mediator. Its terms are fair, reasonable and adequate in light of the risks the Plaintiffs and Class Members face in connection with continuing to litigate liability, and proof of damages. Defendants do not oppose this motion.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of George Warner and Exhibits thereto; the Declaration of Aaron Kaufmann; the Proposed Order; the Court's record of this action; all matters of which the Court may take notice, and any other such evidence, briefing, or argument that may be presented to the court at or before the time of hearing.

## I.    INTRODUCTION

Plaintiffs seek preliminary approval of a $1.75 million settlement to resolve local, state and

1

federal wage and hour claims on behalf of putative class of approximately 370 former Campaign Workers hired by Long Ying International, Inc. to work on the Yes on C: Coalition for Reasonably Vaping Regulation campaign in 2019. Plaintiffs allege that defendants Long Ying International and its owner, the Coalition for Reasonable Vaping Regulation, and Juul Labs, Inc. willfully misclassified workers as independent contractors, and violated a number of wage and hour laws as a result of the misclassification, including failure to pay workers for all hours worked, failure to pay overtime compensation, failure to provide compliant pay statements, and failure to pay all wages due at termination. There are also claims for penalties under California's Labor Code Private Attorneys General Act ("PAGA") arising from these same violations. The settlement provides substantial relief to all Campaign Workers based on the number of pay periods worked, the amount of unpaid time, and the amount of time the Campaign Workers had to wait before being fully compensated after termination.

The proposed settlement is the product of arm's length negotiations by experienced counsel, assisted by a retired judge serving as mediator. It is fair, reasonable and adequate in light of the risks the Plaintiffs and Class Members face in connection with continued litigation over class membership, liability, proof of damages, and other defenses asserted by Defendant. The settlement will provide significant recovery to class members. The net settlement fund will compensate the class for at least 70 percent of their total possible projected damages, and will compensate campaign workers for 90 percent wages and liquidated damages associated with violations of San Francisco and California's minimum wage and overtime. Declaration of George Warner ISO Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action and Collective Action Settlement and Conditional Class Certification ("Warner Decl.") ¶ 17.

Accordingly, Plaintiffs request that the Court (1) conditionally certify the Rule 23 settlement class; (2) grant preliminary approval to the proposed Class and Collective Action Settlement; (3) conditionally approve the PAGA settlement; (4) appoint Plaintiffs as class representatives of the Class; (5) appoint Plaintiffs' attorneys as Class Counsel; (6) appoint CPT Group ("CPT") as Settlement Administrator; (7) approve the form, content, and method of distribution of the Notice of Class Settlement; and (8) schedule a hearing regarding final approval

of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and service awards to the Named Plaintiffs.

## II.    BACKGROUND

### A.    Plaintiffs' Factual Allegations

Long Ying and its owner Defendant David Ho hired workers to provide canvassing and phone banking, and related administrative services for the Yes on Proposition C Campaign. Dkt. 100, Second Am. Compl., ¶ 84. These Campaign Workers were hired as "independent contractors," and were required to sign a form independent contractor agreement with Long Ying International. *Id.* at ¶ 88. The contract stated that the Campaign Workers would provide services as: "Coalition for Reasonable Vaping Regulation Campaign Canvassers." *Id.* at ¶ 82.

Campaign Workers started working for the campaign in July 2019. Second Am. Compl., ¶ 82. By September, Long Ying had hired roughly 370 Campaign Workers. *See id.* at ¶ 3; Warner Decl. ¶ 13. Campaign Workers performed work in four-hour shifts. Campaign Workers were paid between $25 and $35 an hour, depending on the type of shift they were working. Second Am. Compl., ¶ 106. At times, workers performed two four-hour shifts a day, and had to report to two different offices to perform this work. *Id.* at ¶¶ 102–03. Workers were not compensated for the time it took for them to travel between worksites, and were not reimbursed for the cost of travel between work sites. *Id.* at ¶ 110–13. A small number of workers performed ten shifts a week; these workers were not provided overtime premiums, even though they worked over 40 hours a week, when including travel time. *See* Dkt. 117, Order Granting Cond. Cert., 8:19–23; Warner Decl. ¶ 15. A few Campaign Workers also worked for 11 shifts during a single week, but were not paid overtime premium wages. *Id.*

The Campaign Workers were paid every two weeks on a fixed schedule. Second Am. Compl., ¶ 115. But Campaign Workers' pay statements did not include information required to be provided to employees under the Labor Code, including the number of hours worked, the regular rate of pay, and the address of the company that hired them. *Id.* at ¶ 160.

On September 30, 2019, the Campaign Workers were terminated from their positions by email. Dkt.100, Second Am. Compl., ¶ 139. Although employees who are terminated have the right

3

to receive their full wages on the date they are terminated, the email terminating them stated that Campaign Workers were not able to receive their final paycheck until October 3. *Id.* Workers who travelled between worksites during the day have never been compensated for the time worked during that period, and thus have never received their complete final wages. *Id.* at ¶¶ 8, 150, 156. Labor Code section 203 provides that when an employer "willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty . . . at the same rate" until paid, for up to 30 days.

Plaintiffs aver that David Ho, the CEO for Long Ying, is individually liable because he participated in instituting the unlawful pay practices, and had control over Long Ying's policies for how Campaign Workers' were paid, what schedules the Campaign Workers worked, and how they engaged in canvassing, phone banking, and associated administrative work. Dkt. 100, Second Am. Compl., ¶ 20.

Plaintiffs aver that although Long Ying hired the Campaign Workers, Juul Labs, Inc. and the Coalition for Reasonable Vaping Regulation are liable as joint employers of the Campaign Workers. Plaintiffs allege that the Coalition is liable because—among other reasons—a number of the supervisors that managed and monitored the Campaign Workers' jobs were hired directly by the Coalition. Dkt. 100, Second Am. Compl., ¶ 17. Plaintiffs allege that Juul is liable because—among other reasons—Nat Sillin, a Juul employee, had indirect control over the wages paid to the Campaign Workers and the schedule of shifts that were available to Campaign Workers. *Id.* at ¶¶ 16 –18, 45–57, 125–34. Plaintiffs also allege that Mr. Sillin was able to indirectly control working conditions: including what scripts Plaintiffs used while phone banking, and was able to direct Mr. Ho and others to discharge Campaign Workers. *Id.* at ¶¶ 125–34. Plaintiffs also aver that Juul is liable because the Coalition is a joint employer, and Juul should be held liable for the Coalition's actions under alter ego doctrine. *Id.* at ¶ 18.

### B.   Procedural Background

On March 4, 2020, Named Plaintiffs filed this action in this Court, asserting claims under the California Labor Code and the federal Fair Labor Standards Act ("FLSA"). On August 12,

4

2020, the Court denied Defendants' motions to compel arbitration. Dkt. 66. On September 9, 2020, Plaintiffs filed their First Amended Complaint adding claims for PAGA penalties. Dkt. 78.

Thereafter, the Parties engaged in extensive written and documentary discovery. In response to Named Plaintiffs' discovery requests, and after numerous discovery disputes, the Defendants ultimately produced over 34,500 pages of documents. Warner Decl. ¶ 10(a). In addition, Named Plaintiffs' issued subpoenas to a number of third-party entities associated with the campaign; over 15,600 pages of documents were produced through these subpoenas. Warner Decl. ¶ 10(b). Counsel for Named Plaintiffs deposed David Ho, on March 29, 2021. Warner Decl. ¶ 10(d). Counsel for Named Plaintiffs conducted interviews with approximately 10 class members for purposes of collecting information in support of class certification and conditional certification of the FLSA overtime claim, and reached out to an additional 16 persons associated with the campaign to gather additional information for purposes of class certification. Warner Decl. ¶¶ 10(c), 10(e).

Simultaneously, the parties continued to engage in motion practice regarding the viability of Plaintiffs' complaint. Defendant Juul Labs moved to dismiss the First Amended Complaint on October 1, 2020, and Defendant Coalition for Reasonable Vaping Regulation joined that motion. Dkt. Nos. 82-83. On December 18, 2020, the Court granted Juul Labs's Motion to Dismiss with leave to amend, and denied that motion as to the Coalition for Reasonable Vaping Regulation. Dkt. 98.

On January 14, 2021, Plaintiffs filed their Second Amended Complaint. Dkt. 100. On April 27, 2021, the Court denied Juul Labs, Inc. and the Coalition for Reasonable Vaping Regulations' Motions to Dismiss the Second Amended Complaint, and granted Plaintiffs' Motion for Conditional Certification. Dkt. 117. On June 4, 2021, the Court stayed the case so that the parties could pursue mediation. Dkt. 128.

The parties attended mediation on August 11, 2021, before mediator Judge Ronald M. Sabraw, Alameda County Superior Court Judge (Ret.). Warner Decl. ¶ 11. Prior to the mediation, Defendant Long Ying provided Named Plaintiffs with a large volume of damages data regarding the work performed by the putative Class Members, from which Plaintiffs' Counsel built a

damages model (including determining number of days worked, hours each day worked, location of each shift, number of pay periods worked, days worked at multiple locations for each putative Class Members). Warner Decl. ¶¶ 12–15.

On August 23, 2021, the parties accepted a mediator's proposal to settle the case. The parties engaged in further efforts to prepare a written settlement agreement. The parties finalized that agreement on December 13, 2021.

### III.    PROPOSED SETTLEMENT

The details of the Settlement are set forth in the Settlement Agreement and Release of Claims. Warner Decl., Ex. 1 (hereinafter the "Settlement Agreement" or "SA"). A summary is set forth below:

#### A.    Settlement Class Definitions

This Action includes a class action for claims brought under the Labor Code and San Francisco law, a collective action for the overtime claim under the FLSA, and a representative action for PAGA penalties. Second Am. Compl. ¶ 142. The agreement is structured so that there is a single class consisting of all individuals who were hired directly by Long Ying International, Inc. to perform phone banking, canvassing and/or administrative tasks for the Yes on C Campaign and did perform such work at any time during the Class Period. SA § VI.B. All members of the class have claims for Waiting Time penalties under Labor Code section 203 and penalties for noncompliant paystubs under Labor Code section 226. Warner Decl. ¶ 15. A subset of the class has claims for unpaid minimum wages, unpaid overtime wages, and unreimbursed expenses based on travel time between two work sites.[1] Warner Decl. ¶ 15.

---

[1] The definition of the class in the settlement agreement is identical to the definition proposed in the Second Amended Complaint, except that the class period has been modified slightly from July 2019 through October 2019 to July 2, 2019 through November 4, 2019. *Compare* Operative Complaint included a subclass of "all Campaign Workers who were scheduled to work multiple four-hour blocks during a single day, and, to perform these blocks, were required to travel between work at or out of multiple offices for the Yes on C Campaign." Dkt. 100, Second Am. Compl. ¶ 143. Although the settlement agreement does not define this group as a separate subclass, class members who "were required to travel between work at or out of multiple offices" will receive additional compensation under the settlement agreement for damages associated with working at two different job sites during a single day.

A small subset of the class also has overtime claims under the FLSA, according to the records of shifts worked produced by Long Ying. SA § VI.F; Warner Decl. ¶ 15. These individuals will receive a modified notice of the settlement and be provided the opportunity to join the collective action—if they have not already done so—under the FLSA. SA § VI.E, Exh. B. Those who opt into the collective action will be Opt-In Plaintiffs, and will receive additional compensation to resolve their FLSA overtime claim. SA § VI.F.

### B.    Plan of Allocation

#### 1.    Net Settlement Fund

The Net Settlement Fund is estimated to be approximately $563,000, which is $1,750,000 less payments made to resolve the PAGA penalty claims, payments made to resolve the FLSA claims; attorneys' fees and costs, class representative service awards, and settlement administration fees. Warner Decl. ¶ 16–17. The Net Settlement Fund is to be allocated—in a manner that roughly parallels the share of possible damages under Plaintiffs' damages model—as follows:

##### a)    Waiting Time Penalty Share

Eighty-five (85) percent of the Net Settlement Fund will be allocated for distribution to class members for violations of Labor Code section 203, which provides for the payment of penalties where an employee is not paid in full upon termination. SA § VI.H. Such payments will be distributed in proportion to the number of days that a Class Member is possibly entitled to Waiting Time Penalties under Plaintiffs' damages model. SA § VI.H.

##### b)    Wage Statement Penalty Share

Eleven (11) percent of the Net Settlement Fund will be allocated for distribution to class members for violations of Labor Code section 226, which provides for the payment of penalties where an employee does not receive a compliant pay statement with each pay period. SA § VI.H. Such payments will be distributed in proportion to the number of pay periods that class members worked. SA § VI.H.

##### c)    Unpaid Wages and Expenses Share

Four (4) percent will be allocated to damages associated with working at two different job sites during a single day, including unpaid regular wages recoverable under the Labor Code and

7

San Francisco law, unpaid overtime wages recoverable under the Labor Code, unreimbursed travel-related expenses recoverable under the Labor Code, and administrative penalties recoverable under San Francisco law. SA § VI.H. Such payments will be distributed in proportion to the number of days that a class member worked at multiple job locations. SA § VI.H.

### 2. LWDA Payment

The parties have agreed to allocate $400,000 to resolve the PAGA penalty claims. SA § VI.E. In accord with the PAGA, Labor Code section 2699(i), the Defendants will pay the California Labor & Workforce Development Agency ("LWDA") $300,000 (75 percent of a $400,000 PAGA penalty allocation). The aggrieved employees (which includes all Class Members, including any Class Members who opt-out of the Class) will receive equal shares of the remaining $100,000 portion of the PAGA settlement. SA § VI.E. The parties will provide a copy of the Agreement to the LWDA at the time the Agreement is submitted to the Court for approval per Cal. Labor Code §2699(1)(2). Warner Decl. ¶ 23.

### 3. FLSA Settlement

The parties have agreed to allocate $1,500 toward the FLSA claims for liquidated damages and unpaid overtime premiums, to be divided among Opt-In Plaintiffs in pro-rata shares based on each Opt-In Plaintiff's total possible recovery possible under the FLSA. SA § VI.F.

### 4. Attorneys' Fees

The Settlement Agreement permits Plaintiffs' counsel to submit an application for an award of attorneys' fees and costs in an amount up to $750,000, which is less than Plaintiffs' counsel's lodestar as of December 2021. SA § VI.C.

### 5. Class Representative Service Awards

The Settlement provides that Named Plaintiffs Salvadora Correa and Maria de la Luz Bautista-Perez may petition the Court for service awards of up to $5,000 each, and Named Plaintiff Luz Perez Bautista may petition the Court for service awards of up to $7,000, representing $17,000 in the aggregate. SA § VI.B. This is in addition to any distribution to which they may otherwise be entitled to as Settlement Class Members. These amounts are to compensate Named Plaintiffs for (1) the significant time and effort Plaintiffs have spent on behalf of the Settlement Class, including

assisting in the investigation, participating in extensive discovery, and consulting with counsel regarding all aspects of the litigation and settlement., and (2) the risk incurred by suing a former employer, a fact that is easily obtainable through the Court's records. SA § VI.B. The higher award for Luz Perez Bautista reflects the substantial additional assistance that Ms. Perez Bautista provided during the course of the litigation regarding factual development of the claims. Warner Decl. ¶ 16(c).

### 6.    Settlement Administration Fees and Proposed Administrator

Subject to Court approval, the parties propose CPT Group to serve as the Settlement Administrator. SA § IV.M. The Parties initially contacted CPT, Simpluris, Settlement Services, Inc., and Phoenix Class Action Administration Solutions. CPT provided a bid that was roughly equivalent to Simpluris and Phoenix, and significantly lower than Settlement Services, Inc. Warner Decl. ¶ 20. Plaintiffs' counsel have had good experiences working with CPT in the past.

CPT will be paid from the gross Settlement Fund. The estimated fees and costs to effectuate the administration of the settlement are not to exceed $18,500. If the fees charged by the Settlement Administrator are less than $18,500, the amount will be returned to the Settlement Fund for distribution to the Settlement Class. Settlement Agreement § VI.D.

### 7.    Distribution Plan and Possible Cy Pres Allocation

The settlement provides that Class Members will be sent their individual settlement payments within 10 days of when an order granting final approval becomes final, and Class Members will have 90 days to deposit their checks. Class members do *not* need to file a claim to receive payment. SA § VIII.C. After 90 days, the Settlement Administrator will provide notice as to the total amount of funds left undeposited, and will provide notice by email to Class Members who did not cash the initial check so that those Class Members can inform the Settlement Administrator of any change of address. *Id.* at § VIII.E. The Settlement Administrator will also use updated forwarding addresses to obtain the most recent address available. *Id.* The Settlement Administrator will then provide those Class Members who did not deposit their initial checks the option to get paid via check or electronic payment, such as Venmo or Paypal. SA § VIII.E. If, after this second distribution, at least $20,000 is remaining, the Settlement Administrator will issue an

additional distribution to the Class Members who deposited their initial checks. SA § VIII.F. If less than $20,000 is remaining, the Parties ask that the Court order that the remainder is paid to Open Door Legal as a *cy pres* beneficiary. *Id.* Open Door Legal is a nonprofit legal services provider that serves low-wage residents of San Francisco in employment matters and other legal matters. Warner Decl. ¶ 16(g).

### C.    Notice Procedure

Within three days after preliminary approval is granted, Plaintiffs will provide the Settlement Administrator with the Settlement Class Members' contact information, including last known addresses, telephone and email. The Settlement Administrator will send the Notices to Class Members via first-class mail and email within 15 business days of the Preliminary Approval date. SA § VII.C. For undeliverable Class Notices, the Settlement Administrator will attempt to locate the Class Members' updated addresses through people-finder software, or equivalent program, and skip-trace searches. SA § VII.C.

The Notices will include: (1) contact information for class counsel; (2) the website address with links to case documents; (3) instructions on how to access the case docket via PACER or in person; (4) the date of the final approval hearing; (5) instructions on how to opt-out and associated deadlines; (6) the deadline for submission of any objections; and (7) an estimate of the expected total settlement amount that the Class Member will receive. SA, Exhs. A-B.

### IV.    ARGUMENT

### A.    Conditional Certification of the Rule 23 Class is Appropriate because the Settlement Class Meets the Requirements of Rules 23(a) and (b)(3)

Federal Rule of Civil Procedure 23 requires Court approval for the proposed settlement, voluntary dismissal or compromise of a class proposed to be certified for purposes of settlement. Fed. R. Civ. P. Rule 23(e).[2] The Court must first determine that the proposed class satisfies the criteria set out in Federal Rules of Civil Procedure Rule 23(a), specifically that: (1) the class is so numerous that joinder would be impracticable; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and (4) the

---

[2] The Court already preliminary certified the FLSA collective action. Dkt. 117.

named plaintiffs and their counsel will adequately and fairly represent the interests of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Additionally, the action must be maintainable under Rule 23(b)(1), (b)(2), or (b)(3). *Id.* at 1027. Here, certification is appropriate under Rule 23(a) and (b)(3).

### B. The Settlement Class Satisfies the Requirements of Rule 23(a)

The proposed Settlement Class satisfies all the requirements of Rule 23(a).

<u>Numerosity</u>: The Settlement Class is sufficiently numerous that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). Courts have generally found a class of at least 40 members meets the numerosity requirement. *See, e.g., EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007). Here, the proposed Class has approximately 370 Campaign Workers, and easily meets this standard. Warner Decl. ¶ 13.

<u>Typicality</u>: the typicality requirement of Rule 23 (a)(3) is satisfied because Named Plaintiffs' claims are typical of the claims asserted on behalf of the Class. Typicality is established if representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Named Plaintiffs' claims arise out of the same factual and legal circumstances as the claims of other Class Members: like all Class Members, Named Plaintiffs were misclassified as independent contractors, working on the same Campaign performing phone banking, canvassing, and related administrative work; did not receive accurate and compliant wage statements; and were not paid in full for their work at the time of termination. *See, e.g.*, Dkt. 100, Second Am. Compl. at ¶¶ 86-115. Moreover, each Plaintiff performed work at two job sites in a single day, and so was not compensated for travel time, was not provided daily overtime premium pay, and was not provided reasonable business expenses. *See id*. at ¶ 11.

<u>Adequacy:</u> Plaintiffs have fairly and adequately protected the interests of the class and will continue to do so. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members, and the named plaintiffs and their counsel will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020; *Soc. Sers. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 946-47 (9th Cir.

1    1979).

2        Here, Named Plaintiffs share an interest to prosecute the claims on behalf of themselves

3    and the Class, have vigorously prosecuted the claims, and have no conflicts of interest with Class

4    Members.

5        In addition, Named Plaintiffs are represented by experienced counsel. Warner Decl. ¶¶ 4–7;

6    Kaufmann Decl. ¶¶ 3–17. In appointing class counsel, the court must consider: (i) the work counsel

7    has done in identifying or investigating potential claims in the action; (ii) counsel's experience in

8    handling class actions, other complex litigation and the type of claims asserted in the action; (iii)

9    counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to its

10   representation. Fed. R. Civ. P. 23(g).

11       Plaintiffs' counsel have actively identified, investigated and prosecuted the claims that are

12   the subject of this Settlement. They collectively have decades of extensive experience in class

13   action litigation, including wage-and-hour claims of the type asserted here; have been appointed

14   class counsel in numerous other cases; and have demonstrated that they have the ability and

15   resources to vigorously pursue the claims asserted in this litigation. Warner Decl., ¶¶ 2-8. For these

16   reasons, Plaintiffs' counsel and the Named Plaintiffs meet the adequacy requirement of Rule 23

17   (a)(4), and Plaintiffs' counsel should be appointed as Class Counsel pursuant to Rule 23(g).

18       <u>Commonality:</u> Commonality is satisfied because there "are questions of law and fact

19   common" to the proposed Class. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th

20   Cir. 2012). Here, as discussed in greater detail below in the discussion of predominance, there are a

21   number of questions that can be resolved with respect to the entire class. *See infra.*

22       **C.    The Settlement Class Satisfies Predominance and Superiority**

23       The Settlement Class satisfies the requirements of Rule 23 (b)(3), because common

24   questions "predominate over any questions affecting only individual members," and class

25   resolution is "superior to other available methods for the fair and efficient adjudication of the

26   controversy."

27       First, the Settlement Class satisfies the predominance requirement, which examines whether

28   the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150

F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id*. Here, all of the significant legal issues can be resolved in collective fashion. Those include:

- Whether the Class Members were properly treated as independent contractors in their roles as canvassing and phone bank staff;

- Whether the uniform pay statement that Class Members received were compliant with Labor Code § 226;

- Whether Class Members were paid immediately when they were terminated on September 30, 2021, or whether Class Members had to wait until a later date to receive their full pay;

- Whether time spent traveling between two worksites in between scheduled shifts is time worked under California law and Federal law;

- Whether the Coalition for Reasonable Vaping Regulation was a joint employer under California law and federal law;

- Whether the Juul Labs, Inc. was a joint employer under California law and federal law;

- Whether the Coalition for Reasonable Vaping Regulation was an alter ego of Juul Labs, Inc.;

- Whether David Ho "violate[d] or cause[d] to be violated" the alleged violations of California Labor Code, and was a joint employer of the Class Members under California law and Federal law.

Each of these questions is a "common contention . . . of such a nature that it is capable of classwide resolution," given the common factual underpinnings that will determine the answers to these questions. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2012). And, together, they amount to the entire case, less the calculation of damages for each individual Class Member. Thus, since "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication," common questions predominate, and class certification is warranted. *Hanlon*, 150 F.3d at 1022.

And addressing these claims on a class-wide basis is "superior to other available methods

1  for the fair and efficient adjudication of the controversy." *Id.* at 1023. The alternative to a single

2  class action—numerous individual actions—would be inefficient and unfair. *See, e.g., Custom Led,*

3  *LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2013 WL 4552789, at *5 (N.D. Cal. Aug. 27, 2013)

4  (superiority established because a "class action would achieve the resolution of the putative class

5  members' claims at a lower cost and would reduce the likelihood of inconsistent determinations");

6  *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually. . .

7  would not only unnecessarily burden the judiciary, but would prove uneconomic for potential

8  plaintiffs.").

9
10      **D.     Preliminary Approval is Appropriate Because the Settlement is Fair, Reasonable and Adequate**

11      Once the Settlement Class has been conditionally certified the Court can determine whether

12  the proposed class action settlement warrants preliminary approval by determining the fairness,

13  reasonableness and adequacy of the settlement terms, and, if so, direct that notice be sent to

14  proposed class members, reserving closer scrutiny for the final approval hearing. *See Harris v.*

15  *Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011). *See*

16  *also Boyd v. Avanquest N. Am., Inc.*, No. 12-cv-04391-WHO, 2015 WL 4396137, at *2 (N.D. Cal.

17  July 17, 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "Courts

18  may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1)

19  appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious

20  deficiencies; (3) does not grant improper preferential treatment to class representatives or other

21  segments of the class; and (4) falls within the range of possible approval." *Cuzick v. Zodiac U.S.*

22  *Seat Shells, LLC*, No. 16-CV-03793-HSG, 2017 WL 4536255, at *5 (N.D. Cal. Oct. 11, 2017).

23      Courts apply a largely similar standard to review settlements involving FLSA collective

24  actions and claims under PAGA. In the absence of clear guidance from the Ninth Circuit, "courts in

25  this district apply the Eleventh Circuit's widely-followed standard set forth in *Lynn Food Stores*

26  and consider whether the proposed settlement constitutes 'a fair and reasonable resolution of a

27  bona fide dispute over FLSA provisions.'" *Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 13-CV-

28

05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). While applying this standard, courts regularly consider the Rule 23 factors for assessing whether the proposed settlement results in a fair and reasonable resolution of the claims. *Talavera v. Sun-Maid Growers of California*, No. 1:15-cv-00842-DAD-SAB, 2020 WL 2195115, *6 (E.D. Cal. May 6, 2020). There is a bona-fide dispute here over whether Opt-In Plaintiffs are entitled to overtime premium pay and liquidated damages under the FLSA because the parties dispute whether the Opt-In Plaintiffs were properly classified as independent contractors, and whether Juul and CRVR were joint employers of the Opt-In Plaintiffs under the FLSA.

The same principles apply for claims brought under PAGA. A settlement of claims brought under PAGA must be approved by the Court because "a settlement of PAGA claims compromises a claim that could otherwise be brought by the state." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (citations omitted); *see also* Cal. Lab. Code § 2699(l)(2). Although there is little state law governing the review of settlements under PAGA, the Labor Workforce Development Agency ("LWDA") has advised that "evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA," *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quoting LWDA Response), and courts have generally applied this standard. *Haralson*, 383 F. Supp. 3d at 971–72. As part of this evaluation, where PAGA claims are settled together with claims under the Labor Code, "courts have also looked to the interplay of the two recoveries to determine whether PAGA's purposes have been served," recognizing that providing fair compensation to workers both serves to enforce the class's rights under the Labor Code and deter employers from violating the Labor Code in the future. *Id.* at 972. Claims under PAGA must also be submitted to the LWDA for review. *Id.* at 971. The parties have submitted the settlement to the LWDA. Warner Decl. ¶ 23.

**E.    The Settlement is the Product of Informed, Non-Collusive Negotiation**

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive. *See Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). This

Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case, with the assistance of a well-regarded mediator and former state court judge. Warner Decl. ¶ 11. Settlement occurred after lengthy motion practice on Defendants' motion to compel arbitration, successive efforts to dismiss the case at the pleading stage, a motion for collective action and notice under the FLSA, and substantial document production and other formal and informal discovery efforts. Warner Decl. ¶¶ 9–10.

### F.    The Settlement Falls Within the Range of Possible Approval

#### 1.    The Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval

Although Plaintiffs have a strong case on the merits, there are a number of legal and practical risks that Plaintiffs face by continuing to pursue litigation. There is no question that the Campaign Workers did not receive pay statements that comply with Labor Code § 226, were not paid in full at the time of termination, in accordance with Labor Code § 203, and were not compensated for travel time between worksites during the course of the day.

But Defendants have a number of arguments that they will assert preclude liability in this case. First, all Defendants will argue that Plaintiffs and the other campaign workers were properly classified as independent contractors. Second, there is a legitimate—and already hotly litigated—dispute regarding whether Juul Labs, Inc. and the Coalition for Reasonable Vaping Regulation are liable as joint employers, and whether David Ho is liable under Labor Code section 558.1. If Juul and the Coalition for Reasonable Vaping Regulation prevail on this argument, Plaintiffs would only be able to recover from Long Ying International, Inc., which is a small company that likely cannot pay out a class action judgment of this size. If Juul is able to prevail on its argument that it is not a joint employer, but the Court determines that the Coalition is a joint employer, this victory will be pyrrhic unless Plaintiffs also can convince the Court that Juul is the Coalition's alter ego, as the Coalition is insolvent and does not appear to have any realistic possibility of receiving additional funds, unless Juul chooses to so provide. *See* Second Am. Compl., ¶ 18.

1    Defendants could also prevail on the argument that Plaintiffs were not working when they

2    traveled between shift sites during the day, because they were not required to work multiple shifts

3    within a single day. Such a holding would eliminate the claims for unpaid minimum wages,

4    unreimbursed expenses, and unpaid overtime wages. If the Court ruled in Defendants' favor as to

5    the travel time claims, this determination would also dramatically reduce the Campaign Workers'

6    waiting time penalty claims. If Campaign Workers were entitled to their travel time pay, then they

7    were never paid in full, and are entitled to 30 days wages in Waiting Time Penalties. If Campaign

8    Workers were not entitled to travel time pay, most Campaign Workers would only be entitled to

9    Waiting Time Penalties for two days, as Campaign Workers were able to get their final pay two

10   days after they were terminated.

11   By far the largest claim brought against Defendants is the claim for willful misclassification

12   under Labor Code dec. 226.8, which allows for civil penalties—recoverable only through the

13   PAGA—of between $5,000 and $25,000 for "[w]illful misclassification of an individual as an

14   independent contractor." As discussed, Defendants will argue that no misclassification occurred.

15   Defendants Juul and the Coalition will also argue that even if misclassification occurred, they did

16   not act willfully in causing the misclassification to occur. *See Noe v. Superior Ct.*, 237 Cal. App.

17   4th 316, 329 (2015) (holding that Labor Code section 226.8 applies to joint employer who

18   "knowingly participated or involved themselves in the willful misclassification decision"").

19   Defendants will also argue that because the misclassification only occurred during a three-month

20   period, Plaintiffs cannot show that that Defendants engaged in "a pattern or practice of these

21   violations," which is a necessary predicate for obtaining penalties between $15,000 and $25,000.

22   There is also a risk that the Court would exercise its discretion to reduce penalties obtainable under

23   PAGA—on the grounds that such award would be "unjust, arbitrary and oppressive, or

24   confiscatory." Labor Code § 2699(e)(2).

25   Without conceding that any adverse rulings would be justified, Plaintiffs recognize the risk

26   of such outcomes and weighed them against the potential recoveries. Plaintiffs estimate that, if they

27   prevailed on all potential claims, they could recover:

28   • waiting time penalties of approximately $654,930;

17

- penalties for noncompliant pay stubs of approximately $84,550;

- unpaid overtime wages of approximately $6,115;

- unpaid minimum wages of approximately $2,340, and approximately $13,300 in associated statutory penalties;

- unreimbursed expenses of approximately $850;

- liquidated damages for unpaid federal overtime of approximately $2,335; and

- through the PAGA, civil penalties between approximately $3.2 million (assuming $5000 per violation of Labor Code § 226.8) and up to $10.6 million (assuming $25,000 per violation of Labor Code § 226.8).

Warner Decl. ¶ 15. Of the maximum $10.6 million in PAGA penalties, $9.225 million are associated with willful misclassifications claims under Labor Code section 226.8. *Id.* The $1.75 million settlement is eminently reasonable in light of the potential risks, including the significant risks linked to both the Court's discretion to award a fraction of the potential PAGA penalties and the waiting time penalties claim that require a finding of willfulness.

## 2. The Settlement Consideration is Fair

Here, the Settlement will result in payment of a fair and reasonable award to class members, particularly in light of the litigation risks. The Settlement affords relief to Class Members who likely would never have filed individual claims. The net amount to be paid to these Campaign Workers under the proposed settlement (after payment of class counsel fees and expenses, Class Representative Service Awards, settlement administration costs) will be roughly $563,000, and an additional $1,500 paid to members of the FLSA collective, and $100,000 allocated to aggrieved employees for the PAGA claims. Warner Decl., ¶ 17. The average Campaign Worker, who worked less than 10 weeks for the Campaign, will recover at least $1,525 through the class-action portion of the settlement. Warner Decl., ¶ 18. In sum, the payments will result in the members of the class recovering around 74 percent of their total possible damages and penalties, as calculated by Plaintiffs' counsel, and over 90 percent of total damages and penalties associated with the claims for failure to pay state overtime and the minimum wage. Warner Decl. ¶ 17. Under the circumstances, the amount of the settlement is fair, adequate and reasonable.

1

### 3.    The Planned Allocation Is Fair

The plan of allocation is also fair and reasonable. The Settlement provides that the settlement fund shall be allocated based on the best available records from which to estimate the number of pay periods worked by each Campaign Worker, the number of days worked where the Campaign Worker was not paid for travel time, and the number of days between a Campaign Workers' final workday and her final pay. SA § VI.H.

### 4.    The FLSA Claim Allocation Is Fair

The allocation of $1,500 to the FLSA collective action is appropriate in this case, given the circumstances of this case. After review of time records in this case, it is clear that most Campaign Workers did not work at least 10 shift a week, and thus did not work 40 hours a week, even including uncompensated overtime hours. *See* Warner Decl., ¶ 13. Thus, because federal law only provides overtime for time worked over 40 hours a week, most workers do not have claims under the FLSA. *Id.* Records show that 26 workers have viable FLSA claims for overtime, with total possible unpaid premium wages of $2,335.23, and total possible recoverable liquidated damages in the same amount.[3] Warner Decl., ¶ 15. The $1,500 allocation for the FLSA claim will compensate the unpaid premium wages at a rate of at least 64.2 percent, if all potential collective members opt into the settlement. *See* Warner Decl., ¶ 15. If less opt into the settlement, Campaign Workers who opt-in will recover their unpaid premiums and liquidated damages at a higher rate.

### 5.    The PAGA Claim Allocation is Fair

The resolution to the PAGA claims for $400,000 is fair and reasonable.  Courts regularly approve PAGA settlements where the settlement amount is over one percent of the total value of the claim. *Haralson*, 383 F. Supp. 3d at 973. Here, settlement value represents roughly 2.5 percent of the total possible exposure, assuming the Court awarded the maximum $25,000 per employee for willful misclassification under Labor Code section 226.8, and roughly 12.5 percent of the total

---

[3] California law provides for overtime for all hours worked above eight hours in a work day in most circumstances, as well as for overtime for all hours worked above 40 regular hours in a work week. The FLSA provides for liquidated damages in an amount equal to the amount of overtime withheld. *See* 29 U.S.C. § 260. California law does not have a liquidated damages provision for unpaid overtime.

NOT AND MPA ISO PLTFS' UNOPPOSED MOTION FOR PRELIM APPVL OF SETTLEMENT AND
CONDITIONAL CLASS CERTIFICATION

exposure if the Court awarded $5,000 per employee for willful misclassification. See Warner Decl. ¶¶ 15, 17.

The other factors courts consider where the PAGA settlement is less than one percent of the total possible recovery also weigh in favor of finding the PAGA portion of the settlement fair and reasonable. In those circumstances, courts consider both the risk that the Court will use its discretion to award a fraction of the potential exposure, and whether an accompanying class action settlement provides "relatively substantial" benefits to class members. *Haralson*, 383 F. Supp. 3d at 973. Here there is a significant risk that the Court would exercise its discretion to reduce an award under PAGA, given that Labor Code section 226.8 provides the Court substantial discretion as to the appropriate penalty amount for willful misclassification, the Campaign only operated for a period of months, and Long Ying International is a small employer. And here the settlement does provide significant recovery to class members. The Net Settlement Fund will compensate the class for at least 70 percent of their total possible damages, according to counsel's damages model, Warner Decl. ¶ 17, and will compensate campaign workers for nearly their entire wages and liquidated damages recoverable for violations of San Francisco and California's minimum wage and protections. Warner Decl. ¶ 17.

The plan of allocation for the PAGA portion of the settlement is also reasonable. Allocating this award evenly among the aggrieved employees is reasonable given that the vast majority of potential liability is distributed evenly among the aggrieved employees for alleged violations of Labor Code section 226.8's prohibition on willful misclassification. Warner Decl. ¶ 17.

### 6.    The Proposed Service Awards Are Reasonable, and Are Subject to Court Review

The settlement provides that Named Plaintiffs Salvadora Correa and Maria de la Luz Bautista-Perez may petition the Court for service awards of up to $5,000 each, and Named Plaintiff Luz Perez Bautista may petition the Court for service awards of up to $7,000. Service or incentive awards are typical in class action cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In evaluating incentive awards, courts may consider "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties

encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995). This Court has already concluded that incentive awards because incentive awards are discretionary and not "per se unreasonable," the allocation of an incentive award in a settlement "weighs in favor of preliminary approval." *Cuzick*, 2017 WL 4536255, at *6.

Here, Plaintiffs' counsel believe that Service Awards to the three Named Plaintiffs in the amounts requested is consistent with a fair, just and adequate settlement. Plaintiffs will provide supporting declarations at final approval describing their efforts in this case, amounts of time spent serving the class, and risks incurred.

### 7. Attorneys' Fees and Costs that Plaintiffs Will Request Are Reasonable

The Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees *and* out-of-pocket litigation expenses in an amount not to exceed $750,000. SA § VI.C.

Plaintiffs' Counsel submit that this provision is fair and reasonable given the significant time and expense that they have devoted to this case, the risk they have borne during this time, and the result that they have achieved for the proposed class, the aggrieved employees, and the members of the collective action. The amount requested is less than the "presumptively reasonable" lodestar amount of $913,074. Warner Decl. ¶ 21; Kaufmann Decl. ¶ 23; *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *Id.*

Class Counsel shall file their application for fees and costs within 21 days of preliminary approval, so that Class Members can be fully informed of the fee request and have ample time to consider the request prior to the deadline for objecting and opting out. SA § VI.C; *see In re Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

1

**8.      Class Action Fairness Act Notice**

2      Defendant are expected to issue notice of this Settlement as required by the Class Action

3   Fairness Act under 28 U.S.C. §1715 no later than 10 days after this proposed Settlement is filed

4   with this Court. Warner Decl. ¶ 22. Defendants' CAFA notice will comply with the requirements of

5   28 U.S.C. §1715(b).

6      **G.      The Proposed Notice is the Best Notice Practicable**

7      Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, "[t]he court must direct notice

8   in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B)

9   provides: "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the

10  nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses;

11  (iv) that a class member may enter an appearance through an attorney if the member so desires; (v)

12  that the court will exclude from the class any member who requests exclusion; (vi) the time and

13  manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under

14  Rule 23 (c)(3)." Notice is satisfactory if it "generally describes the terms of the settlement in

15  sufficient detail to alert those with adverse viewpoints to investigate and come forward and be

16  heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

17     The parties have agreed on the language of the Settlement Notice, which is attached as an

18  exhibit to the Stipulation of Class Settlement and Release. Settlement Agreement, Exh. A. The

19  parties have agreed on a modified Settlement Notice, which is also attached as an exhibit to the

20  Stipulation of Class Settlement and Release, to be sent to those class members who also have claims

21  under the FLSA, and are being invited to opt into that claim. Settlement Agreement, Exh. B.

22     The parties have agreed, subject to Court approval, to have the Settlement Administrator

23  mail notice via first class mail, postage prepaid, to the last-known addresses of the class members

24  as updated through the U.S. Postal Service's NCOA database. SA § VII.C. Returned mail with

25  forwarding addresses will be re-mailed while returned mail without forwarding addresses will be

26  skip traced to get an updated address and then re-mailed. This method meets the requirements of

27  due process. *Ohayon v. Hertz Corp.,* No. 5:11-cv-01662 EJD, 2012 WL 4936058, at *5-6 (N.D.

28  Cal. Oct. 16, 2012). In addition, the Settlement Administrator will send the notices via e-mail to

those class members for whom it has e-mail addresses. SA § VII.B.

The Settlement Administrator will also establish a website where Class Members can obtain information about the settlement, and also provide notice to class members by email. SA § VII.H.

Accordingly, the proposed notice plan complies with Rule 23 and due process.

**V.     CONCLUSION**

In light of the forgoing, Plaintiff respectfully requests that the Court grant the motion for preliminary approval of the class action settlement.

DATED:  December 20, 2021                    LEGAL AID AT WORK

                                            LEONARD CARDER, LLP

                                            By: ___/s/ George A. Warner_____
                                                    GEORGE A. WARNER

                                            *Attorneys for Plaintiffs and the Putative Class*

NOT AND MPA ISO PLTFS' UNOPPOSED MOTION FOR PRELIM APPVL OF SETTLEMENT AND
CONDITIONAL CLASS CERTIFICATION