UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ BAUTISTA-PEREZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., et al.,<br><br>Defendants. | Case No. 20-cv-01613-HSG<br><br>**ORDER GRANTING PRELIMINARY SETTLEMENT APPROVAL**<br><br>Re: Dkt. No. 131 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs. Dkt. No. 131 ("Mot."). The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

## I. BACKGROUND

### A. Factual Allegations

Defendant Juul Labs, Inc. ("Juul") is a foreign stock corporation that produces electronic cigarettes. *See* Dkt. No. 100 ("Second Amended Complaint" or "SAC") ¶ 16. In the run-up to San Francisco's November 5, 2019 municipal election, Juul oversaw the Yes on C Campaign to pass Proposition C (the "Campaign"), which would have overturned a San Francisco ordinance suspending the sale of electronic cigarettes. *Id.* ¶ 3. Juul hired Defendant Long Ying International, Inc. ("Long Ying"), a campaign operator based in San Francisco, and Defendant David Ho, the CEO for Long Ying, to help manage the Campaign's operations. *Id.* ¶ 5.

Long Ying and its owner David Ho hired Plaintiffs and roughly 365 other workers to provide canvassing, phone banking, and related administrative services for the Campaign. SAC ¶¶

3, 116. These campaign workers were hired as independent contractors and were required to sign a form independent contractor agreement with Long Ying. *Id.* ¶¶ 8, 89.

Plaintiffs allege that Defendant Juul and Coalition were also legal employers of the campaign workers because, among other reasons, a Juul employee had the ability to control the campaign workers' wage, hours, and working conditions, and the campaign workers were supervised in part by Coalition employees. *Id.* ¶¶ 125-132. Plaintiffs also allege that Defendants failed to comply with several state and federal laws by violating requirements to provide compliant pay statements and to pay workers for all hours worked and immediately upon discharge. *Id.* ¶¶ 153-201.

### B. Procedural Background

In March 2020, Named Plaintiffs brought this lawsuit, asserting claims under the California Labor Code and the federal Fair Labor Standards Act ("FLSA"). Dkt. No. 1. The Court denied Defendants' motions to compel arbitration in August 2020. Dkt. No. 66. Plaintiffs then filed their First Amended Complaint ("FAC"), which added claims for penalties under the Private Attorneys General Act ("PAGA"). Dkt. No. 78. Defendant Juul moved to dismiss the FAC, and Defendant Coalition joined that motion. Dkt. Nos. 82-83. In December 2020, the Court granted Juul's Motion to Dismiss but gave Plaintiffs leave to amend their complaint. Dkt. No. 98.

Plaintiffs filed their Second Amended Complaint in January 2021. Dkt. No. 100. Plaintiffs then moved to conditionally certify the class, while Juul and Coalition moved to dismiss the SAC. Dkt. Nos. 79, 104, 105. The Court denied the motions to dismiss and granted conditional class certification. Dkt. No. 117. In June 2021, the Court stayed the case to allow the parties to pursue mediation. Dkt. No. 128. The parties attended a mediation session and ultimately accepted a mediator's proposal to settle the case in August 2021. Mot. at 6. The parties finalized a settlement agreement in December 2021, which they now present to the Court for approval. *Id.*

//

//

//

### C. Settlement Agreement

Following discovery and with the assistance of a private mediator, the parties entered into a settlement agreement. *See* Dkt. No. 131-1, Declaration of George Warner ISO Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action and Collective Action Settlement and Conditional Class Certification ("Warner Decl."); Exhibit 1 ("Settlement Agreement" or "SA"). The terms of the Settlement Agreement are summarized below:

<u>Class Definition</u>: The Settlement Class is defined as all individuals who were hired directly by Long Ying to perform phone banking, canvassing and/or administrative tasks for the Campaign and performed such work at any time during the Class Period. SA § IV.B. The parties have represented that there are approximately 369 individuals who fall within the class definition. Warner Decl. ¶ 13.

<u>Monetary Terms</u>: Defendants have agreed to pay a gross Settlement Fund of $1,750,000. SA § VI.A. $400,000 of the gross Settlement Fund will be allocated to resolve claims raised under PAGA, of which $300,000 will be disbursed to the State of California and $100,000 will be disbursed to the class members. *Id.* § VI.E. $1,500 of the gross Settlement Fund will be allocated to resolve the collective action members' FLSA claims. *Id.* § VI.F. At least $563,000 of the gross Settlement Fund will be allocated to class members to resolve claims under the Labor Code and San Francisco law. *Id.* §§ VI.B–VI.D; Warner Decl. ¶ 17. The Settlement Agreement permits payment of attorneys' fees of up to $750,000 for Plaintiffs' attorneys, fees of $18,500 to the settlement administrator, and $17,000 in class representative service awards. SA §§ VI.B–VI.D; Warner Decl. ¶ 17.

<u>Class Notice</u>: Upon preliminary approval, the Settlement Administrator will send a notice to members of the class, using first-class mail and, when available, e-mail. SA § VII.C, Ex. A. Members of the class who also have claims under the FLSA will receive a slightly modified notice that will allow them to join the collective action portion of this case and participate in the settlement of the FLSA portion of the settlement. *Id.* § VII.C, Ex. B. In addition, the Settlement Administrator will establish a website for Class Members' inquiries. *Id.* § VII.H.

3

1  Opt-Out Procedure: Any putative class member who does not wish to participate in the
2  class action portion of the settlement must sign and postmark a written request for exclusion to the
3  settlement administrator within 45 days from the mailing of the class notice. SA § VII.F.

4  Opt-In Procedure for FLSA Claims: The campaign workers who also have a claim under
5  the FLSA will receive a separate version of the class action notice that provides information about
6  the FLSA portion of the settlement. SA § VII.E, Ex. B. This version invites campaign workers to
7  opt into the settlement of the FLSA overtime claim by filling out the form attached to the notice
8  and sending it to Plaintiffs' counsel by email or mail, or by filling out the consent to join form
9  online. *Id.*

10  Distribution Plan and Possible Cy Pres Allocation: Class members will receive their
11  individual settlement payments within 10 days of the final approval of the Settlement Agreement,
12  after which class members will have 90 days to deposit their checks. SA § VIII.C. Class
13  members do not need to file a claim to receive payment. *Id.* After 90 days, the Settlement
14  Administrator will provide notice of the total amount of funds left undeposited and will provide
15  notice by email to class members who did not cash the initial check so that those class members
16  can inform the Settlement Administrator of any change of address. *Id.* § VIII.E. The Settlement
17  Administrator will also use updated forwarding addresses to obtain the most recent address
18  available. *Id.* The Settlement Administrator will then provide those class members who did not
19  deposit their initial checks the option to get paid via check or electronic payment, such as Venmo
20  or Paypal. SA § VIII.E. If, after this second distribution, at least $20,000 remains, the Settlement
21  Administrator will issue an additional distribution to the Class Members who deposited their
22  initial checks. SA § VIII.F. If less than $20,000 remains, Open Door Legal will receive the
23  remainder as a *cy pres* beneficiary. *Id.* Open Door Legal is a nonprofit legal services provider
24  that serves low-wage residents of San Francisco in employment matters and other legal matters.
25  Warner Decl. ¶ 16(g).

26  Release: The class will release all claims against Defendants that were alleged or could
27  have been alleged in this case based on the same facts and circumstances. SA § IX.B. Each opt-in
28  Plaintiff participating in the collective action will further release the Defendants from all causes of

4

action which were alleged or could be alleged under the FLSA. *Id.* § IX.C.

## II. PROVISIONAL CLASS CERTIFICATION

### A. Legal Standard

Plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, they must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), they must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### B. Analysis

To determine whether provisional certification is appropriate, the Court considers whether the requirements of Rule 23(a) and Rule 23(b)(3) are met. As discussed in more detail below, the Court finds that they are.

#### i. Rule 23(a) Certification

##### a. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court finds that numerosity is satisfied here because joinder of the approximately 369 class members would be impracticable. *See* Warner Decl. ¶ 13.

##### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A contention is sufficiently common where "it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350.

5

Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification … is not the raising of common 'questions'—even in droves—but rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Central questions in this case include: (1) whether the campaign workers were properly classified as independent contractors; (2) whether the pay stubs provided to campaign workers complied with the California Labor Code; (3) whether the Coalition and Juul were the campaign workers' joint employers; and (5) whether Juul and the Coalition should be treated as alter egos for purpose of liability in this action. *See* SAC ¶¶ 86-115. Because those questions are common to all class members and do not require an individualized analysis, the Court finds that the commonality requirement is met in this case.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Named Plaintiffs' claims are both factually and legally similar to those of the putative class. As is the case for all Class Members, Named Plaintiffs allege that they were misclassified as independent contractors; worked on the campaign performing phone banking, canvassing, and related administrative work; did not receive accurate and compliant wage statements; and were not paid in full for their work at the time of termination. *See* SAC ¶¶ 86-115. Moreover, Plaintiffs allege that they and all class members were not paid for time traveling between worksites and

1  were not paid upon discharge. *Id.* ¶¶ 135-141. These common allegations are sufficient to satisfy
2  the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must address two legal questions: (1) whether Named Plaintiff and counsel have any conflicts of interest with other class members, and (2) whether Named Plaintiff and counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

As to Named Plaintiffs, the Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that Plaintiffs have a conflict with other class members. And as to Plaintiff's Counsel, the Court notes that they have been appointed class counsel in numerous federal and state class actions. *See* Declaration of Aaron Kaufmann ("Kaufmann Decl.") ¶ 16; Warner Decl. ¶¶ 4-5. The Court finds that the representative parties have prosecuted this action vigorously on behalf of the class to date and will continue to do so. The adequacy of representation requirement is satisfied.

### ii. Rule 23(b)(3) Certification

To certify a class, Plaintiff must also satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* The Court finds that both requirements are met.

//
//
//

### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member[.]" *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation marks omitted).

Here, the Court finds for purposes of settlement that the common questions raised by Plaintiffs' claims predominate over questions affecting only individual members of the proposed class. As explained above, common questions of law and fact in this action include whether the Campaign Workers were properly classified as independent contractors, whether the pay stubs provided to Campaign Workers complied with the California Labor Code, whether workers were paid upon discharge as required by California law, whether the Coalition and Juul were the Campaign Workers joint employers, and whether Juul and the Coalition should be treated as alter egos for purpose of liability in this action. *See* SAC ¶¶ 86-115. Those questions are central to this case and they are "susceptible to generalized, class-wide proof." *Tyson Foods, Inc.*, 136 S. Ct. at 1045. And while the calculation of damages for each individual class member may vary, a "significant aspect of the case" can nevertheless be "resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. The Court accordingly finds that the predominance requirement is satisfied for the purposes of settlement.

### b. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the

difficulties likely to be encountered in the management of a class action. *Id.*

Here, because common legal and factual questions predominate over individual ones, and taking into account the large size of the proposed class, the Court finds that the judicial economy achieved through common adjudication makes a class action the superior method of adjudicating the claims of the proposed class.

### iii. Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts should consider when making that decision include:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

In light of Plaintiffs' Counsel's extensive experience litigating class actions in federal court, and their diligence in prosecuting this action to date, the Court appoints Legal Aid at Work and Leonard Carder as class counsel. *See* Warner Decl. ¶¶ 4-5; Kaufmann Decl. ¶ 16

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement— may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts

apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "'exacting review' is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (citations and quotations omitted).

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See id*. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id*.

Those subtle signs of collusion are absent in this case. The Settlement Agreement is non-reversionary and does not contain a clear sailing agreement. *See* SA § VIII.F. And while the Settlement Agreement authorizes Plaintiffs' counsel to request up to $750,000 in attorneys' fees, which is about 42% of the gross settlement fund, it does not necessarily contemplate a

10

1    disproportionate cash allocation between counsel and the class, as was the case in *Roes*. *See Roes*,
2    944 F.3d at 1051 ("Here, more of the available $2 million in settlement cash ultimately went to
3    attorneys' fees ($950,000) than would be distributed to class members ($864,115)."). That said,
4    the Court is cognizant of its obligations to evaluate class fee awards with particular rigor, and at
5    the final approval stage will carefully scrutinize the circumstances and determine what attorneys'
6    fee awards is appropriate in this case.

7    The settlement process further supports the conclusion that there was no collusion at play.
8    The parties settled only after a motion to compel arbitration, successive efforts to dismiss the case
9    at the pleading stage, a motion for collective action and notice under the FLSA, and substantial
10   formal and informal discovery efforts. *See* Warner Decl. ¶¶ 9–10. And in addition, the Settlement
11   Agreement was reached through arm's-length negotiation by experienced counsel familiar with
12   the applicable law, class action litigation, and the facts of this case, and with the assistance of an
13   experienced mediator and former state court judge. *See* Warner Decl. ¶ 11. The Court is satisfied
14   that the Settlement Agreement is the product of informed, non-collusive negotiations, and finds
15   that this factor weighs in favor of preliminary approval.

### ii. Preferential Treatment

17   The Court next considers whether the settlement agreement provides preferential treatment
18   to any class member. The Ninth Circuit has instructed that district courts must be "particularly
19   vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to
20   infect negotiations." *In re Bluetooth.*, 654 F.3d at 947. For that reason, courts in this district have
21   consistently stated that preliminary approval of a class action settlement is inappropriate where the
22   proposed agreement "improperly grant[s] preferential treatment to class representatives."
23   *Tableware*, 484 F. Supp. 2d at 1079.

24   The Settlement Agreement authorizes Class Counsel to request up to $17,000 in class
25   representative service awards, including $5,000 to Salvadora Correa and Maria de la Luz Bautista-
26   Perez, and $7,000 for Luz Perez Bautista. *See* Warner Decl. ¶ 16. The Court will consider the
27   evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive
28   award request. Nevertheless, because incentive awards are not per se unreasonable, the Court

11

finds that this factor still weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary") (emphasis omitted).

### iii. Settlement within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. This requires the Court to evaluate the strength of Plaintiff's case.

Here, Class Counsel estimates that the total possible value of the claims asserted in the class case on behalf of the 369 Campaign Workers is roughly $763,869.45, including wages due, statutory damages, statutory penalties recoverable by the class, and interest on those claims. Warner Decl. ¶¶ 15, 17. Class Counsel also estimates that the total possible value of the claims asserted under the FLSA is $4,670.45, divided equally between unpaid wages and liquidated damages. *Id.* ¶ 15. The PAGA claims have a theoretical maximum value of $9.89 million, but the vast majority of that value comes from the claim of "willful" misclassification under Labor Code section 226.8, which provides for penalties of between $5,000 and $25,000 per violation. *Id.* Ultimately, Class Counsel estimates that class members will on average receive about $1,528.46 of the class action settlement, and slightly over $1,800 including allocations for the FLSA collective action and PAGA settlement. *Id.* ¶ 19.

The court finds that the proposed settlement of $1.75 million is within the range of possible approval. The settlement provides for significant recovery for the individual Campaign Workers, who will recover at least 73 percent of their maximum possible recovery (setting aside the theoretical PAGA maximums), and a higher share of their possible overall recovery for the overtime and minimum wage claims. *Id.* ¶ 15. The discount of the maximum and theoretical recovery makes sense considering the legal and practical risks presented by this case. As Plaintiffs explain, three of the four defendants in this case may lack the financial resources to pay a substantial judgment. *See* Mot. at 16. And there is a real risk that the fourth, Juul Labs, would not

1  be found not liable either because it is not a joint employer, because it is not the Coalition's alter
2  ego, or, for the penalties under Labor Code section 226.8, because it did not act "willfully" with
3  regard to any decision to misclassify the Campaign Workers. *See id.*; *Noe v. Superior Ct.*, 237
4  Cal. App. 4th 316, 329 (2015) (holding that Labor Code section 226.8 applies to joint employer
5  who "knowingly participated or involved themselves in the willful misclassification decision").
6  Plaintiffs have considered these risks and weighed them against the potential recovery. The Court
7  finds that the settlement amount is within the range of possible approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies and therefore finds that this factor weighs in favor of preliminary approval.

*       *       *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.[1] The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

### IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

---

[1] Approval of a FLSA collective action settlement is not formally required at the preliminary stage. *Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019 WL 861425, at *5 (N.D. Cal. Feb. 22, 2019) ("*Bisaccia I*"). Nonetheless, for the reasons explained above, the Court finds that the proposed settlement also constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982); *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *1 n.1 (N.D. Cal. June 22, 2017).

|   |   |
|---|---|
| (i) | the nature of the action; |
| (ii) | the definition of the class certified; |
| (iii) | the class claims, issues, or defenses; |
| (iv) | that a class member may enter an appearance through an attorney if the member so desires; |
| (v) | that the court will exclude from the class any member who requests exclusion; |
| (vi) | the time and manner for requesting exclusion; and |
| (vii) | the binding effect of a class judgment on members[.] |

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that CPT Group, a third-party settlement administrator, will send class notice via first-class U.S. mail to each absent class member at their last known address, as provided by Defendant and updated by the Settlement Administrator as appropriate. SA §§ VII.C. Any notice packets returned as undeliverable will be sent to any updated address provided with the returned mail. *Id.* Moreover, the Settlement Administrator will conduct "skip tracing" to identify current addresses for returned notice packages. *Id.* The notice will also be sent by email to class members. *Id.* The Settlement Administrator will also e-mail notice to those for whom addresses are available. The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045.

The Court also finds that the content of the proposed Notice describes the information required by Federal Rule of Civil Procedure 23. The parties have attached a copy of their proposed class notices to the Settlement Agreement. SA §§ VII.C, Exs. A-B. These notices will also be translated into Spanish and Chinese. *Id.* Among other things, the proposed Notice apprises class members of the nature of the Action, the definition of the Settlement Class to be certified, the Class claims and issues, and the claims that will be released. *Id.* And it does so in plain, easily understood language. The Court therefore finds that the content of the proposed Notice provides sufficient information about the case and conforms with due process requirements. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) (en banc) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (citations and quotation marks omitted)).

14

## V. CONCLUSION

The Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative class members | |
| Filing Deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for class members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 2/2/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

15