AARON KAUFMANN, SBN 148580
GISELLE OLMEDO, SBN 294750
LEONARD CARDER, LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
akaufmann@leonardcarder.com
golmedo@leonardcarder.com

GEORGE A. WARNER, SBN 320241
LEGAL AID AT WORK
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 864-8848
Facsimile: (415) 593-0096
gwarner@legalaidatwork.org

*Attorneys for Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ BAUTISTA-PEREZ, LUZ PEREZ BAUTISTA and SALVADORA CORREA, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>JUUL LABS, INC., COALITION FOR REASONABLE VAPING REGULATION, LONG YING INTERNATIONAL, INC., DAVID M. HO, and DOES 1-10 inclusive,<br><br>    Defendants. | Case No.  4:20-cv-01613-HSG<br><br>**NOTICE OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Operative Complaint Filed:    September 9, 2020<br>Trial Date:                          None set<br><br>Date:        June 2, 2022<br>Time:        2:00 p.m.<br>Before:     Hon. Haywood S. Gilliam<br>Courtroom: 2, Fourth Floor<br>                  1301 Clay Street<br>                  Oakland, CA |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.      INTRODUCTION ...................................................................................................... 2

II.     BACKGROUND ......................................................................................................... 2

    A.  Factual Allegations ....................................................................................... 2

    B.  Procedural Background through Preliminary Approval ....................... 3

    C.  Administration of the Settlement ............................................................... 5

III.    PROPOSED SETTLEMENT ................................................................................... 5

    A.  Settlement Class Definitions ....................................................................... 6

    B.  Plan of Allocation .......................................................................................... 7

        1.  Net Settlement Fund ......................................................................... 7

        2.  LWDA Payment ................................................................................. 7

        3.  FLSA Settlement ............................................................................... 8

        4.  Attorneys' Fees ................................................................................. 8

        5.  Class Representative Service Awards ............................................ 8

        6.  Settlement Administration Fees and Administrator ................... 8

        7.  Distribution Plan and Possible Cy Pres Allocation ................... 9

IV.     ARGUMENT ............................................................................................................... 9

    A.  Final Approval of the Settlement is Appropriate Where the Settlement
        is Fair, Reasonable and Adequate ............................................................. 9

    B.  Here, the Factors Used to Consider the Fairness of the Settlement Weigh
        In Favor of Granting Final Approval ........................................................ 11

        1.  The Response of the Class Supports Approval ........................... 11

        2.  The Views of Counsel Supports a Finding of Fairness ............. 11

        3.  The Strength of Plaintiffs' Case and the Risk of Further Litigation
            Support Final Approval .................................................................. 12

        4.  The Size of the Settlement Fund Supports Approval ................ 14

        5.  The Planned Allocation Supports Finding that the Settlement Is Fair ..................... 14

            a.  The FLSA Claim Allocation Is Fair .................................... 15

            b.  The PAGA Claim Allocation is Fair ................................... 15

        6.  The Fact the Settlement Was the Result of Arms-Length Negotiation
            Before an Experienced Mediator Supports a Finding that the Settlement
            Is Fair Adequate and Reasonable. ............................................... 16

i

<u>TABLE OF CONTENTS (cont'd)</u>

C.  The Class Representative's Requested Service Awards and Class Counsel's Requested Fees and Costs Are Addressed by a Separate Motion ................................. 17

D.  The Notice Plan Approved at Preliminary Approval Is the Best Practicable................. 17

V.    CONCLUSION ...................................................................................................................... 17

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Bisaccia v. Revel Sys. Inc.,*
  No. 17-CV-02533-HSG, 2019 WL 3220275 (N.D. Cal. July 17, 2019)......................................11

4

*Cuzick v. Zodiac U.S. Seat Shells, LLC,*
  No. 16-CV-03793-HSG, 2018 WL 2412137 (N.D. Cal. May 29, 2018) ..................................10

5

*Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.,*
  No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ......................................10

6

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ...........................................................................................9

7

*Haralson v. U.S. Aviation Servs. Corp.,*
  383 F. Supp. 3d 959 (N.D. Cal. 2019)..........................................................10, 11, 15, 16

8

*Noe v. Superior Ct.,*
  237 Cal. App. 4th 316 (2015) .............................................................................................13

9

*O'Connor v. Uber Techs., Inc.,*
  201 F. Supp. 3d 1110 (N.D. Cal. 2016)........................................................................11

10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.,*
  688 F.2d 615 (9th Cir. 1982) ..............................................................................................10

11

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009)........................................................................................10, 11

12

*Talavera v. Sun-Maid Growers of California,*
  No. 1:15-cv-00842-DAD-SAB, 2020 WL 2195115 (E.D. Cal. May 6, 2020) ..........................10

13

*Villegas v. J.P. Morgan Chase & Co.,*
  CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)..................................16

14

15

**STATUTES**

16

29 U.S.C.
  § 260 ...................................................................................................................................15

17

Cal. Lab. Code
  § 2699 ...................................................................................................................7, 10, 13

18

Labor Code
  § 203 ...............................................................................................................3, 6, 7, 12
  § 226 .............................................................................................................................*passim*

19

20

Fed. R. Civ. P.
  23 ....................................................................................................................................9, 17

21

22

23

24

25

26

27

28

NOT AND MPA ISO PLTFS' UNOPPOSED MOTION FOR FINAL APPVL OF SETTLEMENT

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 2, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Haywood S. Gilliam, United States District Court for the Northern District of California, located at Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street Oakland, CA 94612 in Courtroom 2, 4th Floor, Plaintiffs Maria De La Luz Bautista-Perez, Luz Perez Bautista and Salvadora Correa ("Plaintiffs") will and hereby do respectfully move this Court for final approval of the proposed Collective and Class action settlement.

Plaintiffs request that this Court enter an order granting final approval of the settlement.

This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of George Warner and Exhibits thereto; the Declaration of Emilio Cofinco; the Proposed Order; the Court's record of this action; all matters of which the Court may take notice, and any other such evidence, briefing, or argument that may be presented to the Court at or before the time of hearing.

DATED:  May 4, 2022                     LEGAL AID AT WORK
                                        LEONARD CARDER, LLP

                                        By:  ___/s/ George A. Warner___
                                             GEORGE A. WARNER

                                        *Attorneys for Plaintiffs and the Putative Class*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

Plaintiffs seek final approval of a $1.75 million settlement to resolve local, state and federal

4

wage and hour claims on behalf of a class of 379 former Campaign Workers hired by Long Ying

5

International, Inc. to work on the Yes on C: Coalition for Reasonably Vaping Regulation campaign

6

in 2019.

7

This Court preliminarily approved the settlement in February after recognizing that the

8

settlement provides substantial value to the class, the coterminous set of aggrieved employees and

9

the state of California that benefit from the Private Attorney General Act claim, and the collective

10

action Opt-In Plaintiffs participating in the Fair Labor Standards Act claim.

11

Since the settlement administrator disseminated the authorized class settlement notice to the

12

class informing in mid-February 18, there have been no objections, disputes, or requests for

13

exclusion. In light of the favorable response from the Class, and the substantial value the settlement

14

provides for the class, the state of California, and the collective action Opt-In Plaintiffs, the Court

15

should grant final approval so this matter may be closed and payments distributed in accordance

16

with the settlement terms.

17

## II.    BACKGROUND

18

### A.  Factual Allegations

19

Long Ying and its owner Defendant David Ho hired workers to provide canvassing and

20

phone banking, and related administrative services for the Yes on Proposition C Campaign. Dkt.

21

100, Second Am. Compl., ¶ 84. These Campaign Workers were hired as "independent contractors,"

22

and were required to sign a form independent contractor agreement with Long Ying International.

23

*Id.* at ¶ 88.

24

Campaign Workers started working for the campaign in July 2019. Second Am. Compl., ¶

25

82. By September, Long Ying had hired 379 Campaign Workers. *See id.* at ¶ 3; Warner Decl. ¶ 15.

26

Campaign Workers normally performed work in four-hour shifts, earning between $25 and $35 an

27

hour. Second Am. Compl., ¶ 106. At times, workers performed two four-hour shifts a day, and had

28

to report to two different offices to perform this work. *Id.* at ¶¶ 102–03. Plaintiffs allege that

Campaign Workers were not compensated for the time it took for them to travel between worksites, and were not reimbursed for the cost of travel between work sites. *Id.* at ¶ 110–13. A small number of workers performed ten shifts a week; Plaintiffs allege these workers were not provided overtime premiums, even though they worked over 40 hours a week, including travel time. *See* Dkt. 117, Order Granting Cond. Cert., 8:19–23; Warner Decl. ¶ 16. A few Campaign Workers also worked for 11 shifts during a single week, but Plaintiffs allege these Campaign Workers were not paid overtime premium wages. *Id.*

The Campaign Workers were paid every two weeks on a fixed schedule. Second Am. Compl., ¶ 115. But Plaintiffs allege Campaign Workers' pay statements did not include information required to be provided to employees under the Labor Code, including the number of hours worked, the regular rate of pay, and the address of the company that hired them. *Id.* at ¶ 160.

On September 30, 2019, the Campaign Workers were terminated from their positions by email. Dkt.100, Second Am. Compl., ¶ 139. Plaintiffs aver a waiting time claim under Labor Code section 203 because, while the terminated workers were legally entitled to receive their full wages on the date they are terminated, the email terminating them stated that Campaign Workers were not able to receive their final paycheck until October 3. *Id.* Plaintiffs further allege that the workers who travelled between worksites during the day have never been compensated for the time worked during that period, and thus have never received their complete final wages. *Id.* at ¶¶ 8, 150, 156.

Plaintiffs aver that David Ho, the CEO for Long Ying, along with Juul Labs and the Coalition for Reasonable Vaping Regulation are liable as joint employers.  Dkt. 100, Second Am. Compl., ¶¶ 16 –18, 20, 45–57, 125–34.

## B.  Procedural Background through Preliminary Approval

On March 4, 2020, Plaintiffs filed this action, asserting claims under the California Labor Code and the federal Fair Labor Standards Act ("FLSA"). On August 12, 2020, the Court denied Defendants' motions to compel arbitration. Dkt. 66. On September 9, 2020, Plaintiffs filed their First Amended Complaint adding claims for PAGA penalties. Dkt. 78.

Thereafter, the parties engaged in extensive written and documentary discovery. In response to Plaintiffs' discovery requests, and after numerous discovery disputes, Defendants

ultimately produced over 34,500 pages of documents. Warner Decl. ¶ 10(a). In addition, Plaintiffs issued subpoenas to a number of third-party entities associated with the campaign; over 15,600 pages of documents were produced through these subpoenas. Warner Decl. ¶ 10(b). Plaintiffs' counsel deposed David Ho. Warner Decl. ¶ 10(d). Plaintiffs' counsel also interviewed approximately 10 Campaign Workers for purposes of collecting information in support of class certification and conditional certification of the FLSA overtime claim, and reached out to an additional 16 persons associated with the campaign to gather additional information for purposes of class certification. Warner Decl. ¶¶ 10(c), 10(e).

Simultaneously, Defendants sought dismissal on the pleadings. Juul Labs moved to dismiss the First Amended Complaint on October 1, 2020, and the Coalition for Reasonable Vaping Regulation joined that motion. Dkt. Nos. 82–83. On December 18, 2020, the Court granted Juul Labs's Motion to Dismiss with leave to amend, and denied that motion as to the Coalition for Reasonable Vaping Regulation. Dkt. 98.

On January 14, 2021, Plaintiffs filed their Second Amended Complaint. Dkt. 100. On April 27, 2021, the Court denied Juul Labs and the Coalition for Reasonable Vaping Regulations' Motions to Dismiss the Second Amended Complaint, and granted Plaintiffs' Motion for Conditional Certification. Dkt. 117. On June 4, 2021, the Court stayed the case so that the parties could pursue mediation. Dkt. 128.

The parties attended mediation on August 11, 2021. Warner Decl. ¶ 11. Prior to the mediation, Defendant Long Ying provided Named Plaintiffs with a large volume of damages data regarding the work performed by the putative Class Members, from which Plaintiffs' Counsel built a damages model (including determining number of days worked, hours each day worked, location of each shift, number of pay periods worked, days worked at multiple locations for each putative Class Members). Warner Decl. ¶¶ 12–14, 16. On August 23, 2021, the parties accepted a mediator's proposal to settle the case. The parties engaged in further efforts to prepare a written settlement agreement. The parties finalized that agreement on December 13, 2021.

Plaintiffs moved for conditional certification of the class action and preliminary approval of the settlement on December 20, 2021. Dkt. 131. This Court heard the unopposed motion on

4

1  January 27, 2022, Dkt. 137, and granted conditional certification of the class action and

2  preliminary approval of the settlement on February 2, 2022. Dkt. 138.

3           Plaintiff's counsel filed a Motion for Attorneys' Fees and Expenses, and Class

4  Representative Service Awards on February 28, 2022. Dkt. 141.

5           **C.  Administration of the Settlement**

6           The Court approved the proposed notice filed with the motion for preliminary approval, and

7  well as the distribution plan contemplated by the parties. Dkt. 138 at 13–14. On February 9, 2022,

8  the Court ordered that the Settlement Administrator mail and email the notice to all Class Members

9  by no later than February 18, 2022. Dkt. 140.

10           After preliminary approval, but before final approval, the parties' agreed that 18 workers

11  were part of the class who had not been included in the estimated class represented at preliminary

12  approval. These workers had been excluded because they largely performed administrative and

13  managerial tasks, as opposed to phone banking and canvassing tasks. Warner Decl. ¶¶ 13, 15. After

14  meeting and conferring, counsel agreed that these workers fit within the class definition, and were

15  thus added to the class list. *Id.* The parties also agreed that eight workers listed in the initial class

16  list provided by Long Ying were not members of the class, because they were not hired by Long

17  Ying. *Id.* In total, the class includes 379 workers. *Id.*

18           The settlement administrator, CPT Group, distributed the proposed notice, as approved by

19  the Court, in English, Spanish, and Chinese on February 18, 2022. Cofinco Decl. ¶¶ 7–8. *See also*

20  SA § VII.C; SA, Exhs. A–B.

21           CPT has received *no* opt-outs or objections. Cofinco Decl. ¶¶ 12–13. Twelve workers opted

22  into the collective action. *Id.* at ¶ 14.

23  **III.     PROPOSED SETTLEMENT**

24           The details of the Settlement are set forth in the Settlement Agreement and Release of

25  Claims. Warner Decl., Ex. 1 (hereinafter the "Settlement Agreement" or "SA"). A summary is set

26  forth below:

27  //

28  //

1

**A.      Settlement Class Definitions**

2

This Action includes a class action for claims brought under the Labor Code and San

3

Francisco law, a collective action for the overtime claim under the FLSA, and a representative

4

action for civil PAGA penalties. Second Am. Compl. ¶ 142. The agreement is structured so that

5

there is a single class consisting of all individuals who were hired directly by Long Ying

6

International, Inc. to perform phone banking, canvassing and/or administrative tasks for the Yes on

7

C Campaign and did perform such work at any time during the Class Period. SA § VI.B. All

8

members of the class have asserted claims for statutory waiting time penalties under Labor Code

9

section 203 and statutory penalties for noncompliant paystubs under Labor Code section 226.

10

Warner Decl. ¶ 15. A subset of the class has asserted claims for unpaid minimum wages, unpaid

11

overtime wages, and unreimbursed expenses based on travel time between two work sites.[1] Warner

12

Decl. ¶ 15.

13

A small subset of the class also has asserted overtime claims under the FLSA, according to

14

the records of shifts worked produced by Long Ying. SA § VI.F; Warner Decl. ¶ 15. These

15

individuals will receive a modified notice of the settlement and be provided the opportunity to join

16

the collective action—if they have not already done so—under the FLSA. SA § VI.E, Exh. B.

17

Those who opt into the collective action will be Opt-In Plaintiffs, and will receive additional

18

compensation to resolve their FLSA overtime claim. SA § VI.F.

19

*//*

20

*//*

21

*//*

22

---

23

[1] The definition of the class in the Settlement Agreement is identical to the definition proposed in

24

the Second Amended Complaint, except that the class period has been modified slightly from July 2019 through October 2019 to July 2, 2019 through November 4, 2019. The Second Amended

25

Complaint included a subclass of "all Campaign Workers who were scheduled to work multiple four-hour blocks during a single day, and, to perform these blocks, were required to travel between

26

work at or out of multiple offices for the Yes on C Campaign." Dkt. 100, Second Am. Compl. ¶ 143. Although the settlement agreement does not define this group as a separate subclass, class

27

members who "were required to travel between work at or out of multiple offices" will receive additional compensation under the settlement agreement for damages associated with working at

28

two different job sites during a single day.

### B. Plan of Allocation

#### 1. Net Settlement Fund

The Net Settlement Fund is estimated to be $563,000, which is $1,750,000 less payments made to resolve the PAGA penalty claims, payments made to resolve the FLSA claims; attorneys' fees and costs, class representative service awards, and settlement administration fees. Warner Decl. ¶ 17–18. The Net Settlement Fund is to be allocated—in a manner that roughly parallels the share of possible damages under Plaintiffs' damages model—as follows:

Waiting Time Penalty Share – 85% for waiting time penalties, Labor Code section 203, distributed in proportion to the number of days that a Class Member is potentially entitled to such statutory penalties.

Wage Statement Penalty Share – 11% for pay statement violations, Labor Code section 226, distributed in proportion to the number of pay periods that Class Members worked.

Unpaid Wages and Expenses Share – 4% for damages associated with working at two different job sites during a single day (including unpaid regular wages recoverable under the Labor Code and San Francisco law, unpaid overtime wages recoverable under the Labor Code, unreimbursed travel-related expenses recoverable under the Labor Code, and administrative penalties recoverable under San Francisco law), distributed in proportion to the number of days that a class member worked at multiple job locations.

#### 2. LWDA Payment

The parties have agreed to allocate $400,000 to resolve the PAGA penalty claims. SA § VI.E. In accord with the PAGA, Labor Code section 2699(i), Defendants will pay the California Labor & Workforce Development Agency ("LWDA") $300,000 (75 percent of a $400,000 PAGA penalty allocation). The aggrieved employees (which includes all Class Members) will receive equal shares of the remaining $100,000 portion of the PAGA settlement. SA § VI.E. Plaintiffs' counsel provided a copy of the Agreement to the LWDA on December 20, 2021, after filing of its motion for preliminary approval and conditional certification. Warner Decl. ¶ 22.

//

//

### 3. FLSA Settlement

The parties have agreed to allocate $1,500 toward the FLSA claims for liquidated damages and unpaid overtime premiums, to be divided among the 16 Opt-In Plaintiffs in pro-rata shares based on each Opt-In Plaintiff's total possible recovery possible under the FLSA. SA § VI.F.

### 4. Attorneys' Fees

The Settlement Agreement permits Plaintiffs' counsel to submit an application for an award of attorneys' fees and costs in an amount up to $750,000, which is less than Plaintiffs' counsel's lodestar as of December 2021. SA § VI.C. Class counsel moved for an award of $750,000 on February 18, 2022. Dkt. 141.

### 5. Class Representative Service Awards

The Settlement provides that Plaintiffs Salvadora Correa and Maria de la Luz Bautista-Perez may petition the Court for service awards of up to $5,000 each, and plaintiff Luz Perez Bautista may petition the Court for a service award of up to $7,000, representing $17,000 in the aggregate. SA § VI.B. This is in addition to any distribution to which they may otherwise be entitled to as Settlement Class Members. These amounts are to compensate Plaintiffs for (1) the significant time and effort they have spent on behalf of the Settlement Class, including assisting in the investigation, participating in extensive discovery, and consulting with counsel regarding all aspects of the litigation and settlement., and (2) the risk incurred by suing a former employer, a fact that is easily obtainable through the Court's records. SA § VI.B. The higher award for Luz Perez Bautista reflects the substantial additional assistance she provided during the course of the litigation regarding factual development of the claims. Warner Decl. ¶ 17(c). Class counsel moved the Court to grant service awards in these amounts on February 18, 2022. Dkt. 141.

### 6. Settlement Administration Fees and Administrator

CPT will be paid from the gross Settlement Fund. The estimated fees and costs to effectuate the administration of the settlement are not to exceed $18,500. If the fees charged by the Settlement Administrator are less than $18,500, the amount will be returned to the Settlement Fund for distribution to the Settlement Class. Settlement Agreement § VI.D.

//

### 7.   Distribution Plan and Possible Cy Pres Allocation

The Settlement provides that Class Members will be sent their individual settlement payments within 10 days of when an order granting final approval becomes final, and Class Members will have 90 days to deposit their checks. Class members do *not* need to file a claim to receive payment. SA § VIII.C. After 90 days, the Settlement Administrator will provide notice as to the total amount of funds left undeposited, and will provide notice by email to Class Members who did not cash the initial check so that those Class Members can inform the Settlement Administrator of any change of address. *Id.* at § VIII.E. The Settlement Administrator will also use updated forwarding addresses to obtain the most recent address available. *Id.* The Settlement Administrator will then provide those Class Members who did not deposit their initial checks the option to get paid via check or electronic payment, such as Venmo or Paypal. SA § VIII.E. If, after this second distribution, at least $20,000 is remaining, the Settlement Administrator will issue an additional distribution to the Class Members who deposited their initial checks. SA § VIII.F. If less than $20,000 is remaining, the parties ask that the Court order that the remainder is paid to Open Door Legal as a *cy pres* beneficiary. *Id.* Open Door Legal is a nonprofit legal services provider that serves low-wage residents of San Francisco in employment matters and other legal matters. Warner Decl. ¶ 17(g).

## IV.   ARGUMENT

### A.   Final Approval of the Settlement is Appropriate Where the Settlement is Fair, Reasonable and Adequate

Federal Rule of Civil Procedure 23(e) provides that any settlement of class action must receive court approval. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The Court must conclude that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this evaluation, "the Court 'may consider some or all' of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the

reaction of the class members to the proposed settlement." *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-CV-03793-HSG, 2018 WL 2412137, at *2 (N.D. Cal. May 29, 2018) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009)). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). And the Court's role is a limited one, designed to ensure that the settlement is not a product of "fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*

Courts apply a largely similar standard to review settlements involving FLSA collective actions and claims under PAGA. In the absence of clear guidance from the Ninth Circuit, "courts in this district apply the Eleventh Circuit's widely-followed standard set forth in *Lynn Food Stores* and consider whether the proposed settlement constitutes 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). While applying this standard, courts regularly consider the Rule 23 factors for assessing whether the proposed settlement results in a fair and reasonable resolution of the claims. *Talavera v. Sun-Maid Growers of California*, No. 1:15-cv-00842-DAD-SAB, 2020 WL 2195115, *6 (E.D. Cal. May 6, 2020).

There is a bona-fide dispute here over whether Opt-In Plaintiffs are entitled to overtime premium pay and liquidated damages under the FLSA because the parties dispute whether the Opt-In Plaintiffs were properly classified as independent contractors, and whether Juul and CRVR were joint employers of the Opt-In Plaintiffs under the FLSA.

The same principles apply for claims brought under PAGA. A settlement of claims brought under PAGA must be approved by the Court because "a settlement of PAGA claims compromises a claim that could otherwise be brought by the state." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 959, 971 (N.D. Cal. 2019) (citations omitted); *see also* Cal. Lab. Code § 2699(l)(2). Although there is little state law governing the review of settlements under PAGA, the LWDA has advised that courts should "evaluate whether the settlement meets the standards of being

1   'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the

2   PAGA," *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quoting

3   LWDA Response), and courts have generally applied this standard. *Haralson*, 383 F. Supp. 3d at

4   971–72. As part of this evaluation, where PAGA claims are settled together with claims under the

5   Labor Code, "courts have also looked to the interplay of the two recoveries to determine whether

6   PAGA's purposes have been served," recognizing that providing fair compensation to workers

7   both serves to enforce the class's rights under the Labor Code and deters employers from violating

8   the Labor Code in the future. *Id.* at 972. Settlement of PAGA claims must also be submitted to the

9   LWDA for review. *Id.* at 971. The parties submitted the settlement to the LWDA in December

10  2021. Warner Decl. ¶ 22.

**B.      Here, the Factors Used to Consider the Fairness of the Settlement Weigh In Favor of Granting Final Approval**

13         The Court can confidently conclude that the settlement is fair, reasonable, and adequate

14  based on the non-exclusive factors enumerated by the Ninth Circuit.

**1.   The Response of the Class Supports Approval**

16         First, the response of the class supports final approval. None of the 379 members of the

17  settlement have objected to the settlement or opted out of the settlement, which strongly suggests

18  that the Class Members believe this settlement is a fair, reasonable, and adequate settlement of

19  their claims. Cofinco Decl. ¶¶ 12–13.

**2.   The Views of Counsel Supports a Finding of Fairness**

21         "[P]arties represented by competent counsel are better positioned than courts to produce a

22  settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at

23  967 (quotations omitted). "Accordingly, the recommendations of plaintiffs' counsel should be

24  given a presumption of reasonableness." *Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019

25  WL 3220275, at *6 (N.D. Cal. July 17, 2019) (quotations omitted). As the Court recognized in its

26  Order Granting Preliminary Approval, counsel has been "appointed class counsel in numerous

27  federal and state class actions," and, on behalf of the class, has "prosecuted this action vigorously

28  to date." Dkt. 138 at 7. Counsel here believes that that the settlement provides a fair and adequate

result, which weighs in favor of granting approval. Warner Decl. ¶ 20.

### 3. The Strength of Plaintiffs' Case and the Risk of Further Litigation Support Final Approval

As discussed at preliminary approval, although Plaintiffs have a strong case on the merits, there are a number of legal and practical risks that Plaintiffs face by continuing to pursue litigation. There is no question that the Campaign Workers did not receive pay statements that comply with Labor Code § 226, were not paid in full at the time of termination, in accordance with Labor Code § 203, and were not compensated for travel time between worksites during the course of the day.

But Defendants have a number of arguments that they will assert precludes liability in this case. First, all Defendants will argue that the campaign workers were properly classified as independent contractors. Second, there is a legitimate—and already hotly litigated—dispute regarding whether Juul Labs and the Coalition are liable as joint employers, and whether David Ho is liable under Labor Code section 558.1. If Juul and the Coalition prevail on this argument, Plaintiffs and the class would only be able to recover from Long Ying, which is a small company that likely cannot pay out a class action judgment of this size. If Juul is able to prevail on its argument that it is not a joint employer, but the Court determines that the Coalition is a joint employer, this victory will be pyrrhic unless Plaintiffs also can convince the Court that Juul is the Coalition's alter ego, as the Coalition is insolvent and does not appear to have any realistic possibility of receiving additional funds, unless Juul chooses to so provide. *See* Second Am. Compl., ¶ 18.

Defendants could also prevail on the argument that Plaintiffs were not working when they traveled between shift sites during the day, because they were not required to work multiple shifts within a single day. Such a holding would eliminate the claims for unpaid minimum wages, unreimbursed expenses, and unpaid overtime wages. If the Court ruled in Defendants' favor as to the travel time claims, this determination would also dramatically reduce the Campaign Workers' waiting time penalty claims. If Campaign Workers were entitled to their travel time pay, then they were never paid in full, and may be entitled to 30 days wages in waiting time penalties. If Campaign Workers were not entitled to travel time pay, most Campaign Workers would only be

1    entitled to waiting time penalties for two days, as Campaign Workers were able to get their final

2    pay two days after they were terminated.

3          By far the largest claim brought against Defendants is the claim for willful misclassification

4    under Labor Code section 226.8, which allows for civil penalties—recoverable only through the

5    PAGA—of between $5,000 and $25,000 for "[w]illful misclassification of an individual as an

6    independent contractor." As discussed, Defendants will argue that no misclassification occurred.

7    Defendants Juul and the Coalition will also argue that even if misclassification occurred, they did

8    not act willfully in causing the misclassification to occur. *See Noe v. Superior Ct.*, 237 Cal. App.

9    4th 316, 329 (2015) (holding that Labor Code section 226.8 applies to joint employer who

10   "knowingly participated or involved themselves in the willful misclassification decision").

11   Defendants will also argue that because the misclassification only occurred during a three-month

12   period, Plaintiffs cannot show that that Defendants engaged in "a pattern or practice of these

13   violations," which is a necessary predicate for obtaining penalties between $15,000 and $25,000.

14   There is also a risk that the Court would exercise its discretion to reduce penalties obtainable under

15   PAGA—on the grounds that such award would be "unjust, arbitrary and oppressive, or

16   confiscatory." Labor Code § 2699(e)(2).

17         Without conceding that any adverse rulings would be justified, Plaintiffs recognize the risk

18   of such outcomes and weighed them against the potential recoveries. Plaintiffs estimate that, if they

19   prevailed on all potential claims, they could recover:

20        • statutory waiting time penalties of approximately $632,910;

21        • statutory penalties for noncompliant pay stubs of approximately $94,850;

22        • unpaid overtime wages of approximately $6,120;

23        • unpaid minimum wages of approximately $2,345, and approximately $13,300 in

24          associated statutory penalties;

25        • unreimbursed expenses of approximately $850;

26        • liquidated damages for unpaid federal overtime of approximately $2,335; and

27

28

- through the PAGA, civil penalties between approximately $ 2.5 million (assuming $5000 per violation of Labor Code § 226.8) and up to $10.85 million (assuming $25,000 per violation of Labor Code § 226.8).

Warner Decl. ¶ 16. Of the maximum $10.6 million in PAGA penalties, $9.475 million are associated with willful misclassifications claims under Labor Code section 226.8. *Id.* The $1.75 million settlement is eminently reasonable in light of the potential risks, including the significant risks linked to both the Court's discretion to award a fraction of the potential PAGA penalties and the waiting time penalties claim that require a finding of willfulness.

### 4. The Size of the Settlement Fund Supports Approval

Here, the Settlement will result in payment of a fair and reasonable award to Class Members, particularly in light of the litigation risks. The Settlement affords relief to Class Members who likely would never have filed individual claims. The net amount to be paid to these Campaign Workers under the proposed settlement (after payment of class counsel fees and expenses, Class Representative Service Awards, settlement administration costs) will be at least $563,000, and an additional $1,500 paid to members of the FLSA collective, and $100,000 allocated to aggrieved employees for the PAGA claims. Warner Decl. ¶ 17. The average Campaign Worker, who worked less than 10 weeks for the Campaign, will recover around $1,485 through the class-action portion of the settlement, and roughly $1,750, including payments from the PAGA portion and collective action portions of the settlement. Warner Decl. ¶ 18–19. In sum, the payments will result in the members of the class recovering around 75 percent of their total possible damages and statutory, non-PAGA penalties, as calculated by Plaintiffs' counsel, and over 90 percent of total damages and statutory, non-PAGA penalties associated with the claims for failure to pay state overtime and the minimum wage. Warner Decl. ¶ 18. Under the circumstances, the amount of the settlement is fair, adequate and reasonable.

### 5. The Planned Allocation Supports Finding that the Settlement Is Fair

As discussed in the motion for preliminary approval, the plan of allocation is also fair and reasonable. The Settlement provides that the settlement fund shall be allocated based on the best available records from which to estimate the number of pay periods worked by each Campaign

Worker, the number of days worked where the Campaign Worker was not paid for travel time, and the number of days between a Campaign Workers' final workday and her final pay. SA § VI.H.

a.    The FLSA Claim Allocation Is Fair

The allocation of $1,500 to the FLSA collective action is appropriate in this case, given the circumstances of this case. After review of time records in this case, it is clear that most Campaign Workers did not work at least 10 shift a week, and thus did not work 40 hours a week, even including uncompensated overtime hours. *See* Warner Decl. ¶ 13. Thus, because federal law only provides overtime for time worked over 40 hours a week, most workers do not have claims under the FLSA. *Id.* Records show that 26 workers have viable FLSA claims for overtime, with total possible unpaid premium wages of $2,335.23, and total possible recoverable liquidated damages in the same amount.[2] Warner Decl. ¶ 15. The 16 Campaign Workers who have opted into the collective action will recover roughly the full unpaid overtime premium wages and full possible liquidated damages available under the FLSA. Warner Decl. ¶ 19.

b.    The PAGA Claim Allocation is Fair

The resolution to the PAGA claims for $400,000 is fair and reasonable. Courts regularly approve PAGA settlements where the settlement amount is over one percent of the total value of the claim. *Haralson*, 383 F. Supp. 3d at 973. Here, settlement value represents roughly 4 percent of the total possible exposure, assuming the Court awarded the maximum $25,000 per employee for willful misclassification under Labor Code section 226.8, and roughly 16 percent of the total exposure if the Court awarded $5,000 per employee for willful misclassification. *See* Warner Decl. ¶¶ 16–17.

The other factors courts consider where the PAGA settlement is less than one percent of the total possible recovery also weigh in favor of finding the PAGA portion of the settlement fair and reasonable. In those circumstances, courts consider both the risk that the Court will use its discretion to award a fraction of the potential exposure, and whether an accompanying class action

---

[2] California law provides for overtime for all hours worked above eight hours in a work day in most circumstances, as well as for overtime for all hours worked above 40 regular hours in a work week. The FLSA provides for liquidated damages in an amount equal to the amount of overtime withheld. *See* 29 U.S.C. § 260. California law does not have a liquidated damages provision for unpaid overtime.

NOT AND MPA ISO PLTFS' UNOPPOSED MOTION FOR FINAL APPVL OF SETTLEMENT

1  settlement provides "relatively substantial" benefits to Class Members. *Haralson*, 383 F. Supp. 3d

2  at 973. Here there is a significant risk that the Court would exercise its discretion to reduce an

3  award under PAGA, given that Labor Code section 226.8 provides the Court substantial discretion

4  as to the appropriate penalty amount for willful misclassification, the Campaign only operated for a

5  period of months, and Long Ying International is a small employer. And here the settlement

6  provides significant recovery to Class Members. The Net Settlement Fund will compensate the

7  class for roughly 75 percent of their total possible damages, according to counsel's damages model,

8  Warner Decl. ¶ 18, and will compensate campaign workers for nearly their entire wages and

9  liquidated damages recoverable for violations of San Francisco and California's minimum wage

10  and protections. Warner Decl. ¶ 18.

11       The plan of allocation for the PAGA portion of the settlement is also reasonable. Allocating

12  this award evenly among the aggrieved employees is reasonable given that the vast majority of

13  potential liability is distributed evenly among the aggrieved employees for alleged violations of

14  Labor Code section 226.8's prohibition on willful misclassification. Warner Decl. ¶ 16.

15

16       **6.  The Fact the Settlement Was the Result of Arms-Length Negotiation Before an Experienced Mediator Supports a Finding that the Settlement Is Fair Adequate and Reasonable.**

17

18       Adequate discovery and the use of an experienced mediator support the conclusion that

19  settlement negotiations were informed and non-collusive. *See Villegas v. J.P. Morgan Chase &*

20  *Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). As discussed

21  in the motion for preliminary approval, this Settlement Agreement was reached through arm's-

22  length negotiations by experienced counsel familiar with the applicable law, class action litigation,

23  and the facts of this case, with the assistance of a well-regarded mediator and former state court

24  judge. Warner Decl. ¶ 11. Settlement occurred after lengthy motion practice on Defendants' motion

25  to compel arbitration, successive efforts to dismiss the case at the pleading stage, a motion for

26  collective action and notice under the FLSA, and substantial document production and other formal

27  and informal discovery efforts. Warner Decl. ¶¶ 9–10.

28  //

**C.** **The Class Representative's Requested Service Awards and Class Counsel's Requested Fees and Costs Are Addressed by a Separate Motion**

Class counsel has requested $750,000 in fees and expenses. Named Plaintiffs Salvadora Correa and Maria de la Luz Bautista-Perez have petitioned for service awards of $5,000, while Named Plaintiff Luz Perez Bautista has petitioned the Court for a service award of up to $7,000. Those requests are addressed in plaintiff's separate motion. Dkt. 141.

**D.** **The Notice Plan Approved at Preliminary Approval Is the Best Practicable**

In its Order Granting Preliminary Approval of the Settlement, the Court concluded that the proposed notice plan was the best practicable under the circumstances. Dkt. 138 at 13–14. The settlement administrator has executed that plan by, among other things:

- translating the notice into Chinese and Spanish;
- performing a search for updated addresses in the National Change of Address database and updated 50 addresses;
- distributing the notice by mail and email to the Class Members;
- performing a skip trace on the 19 notice packages returned, and resending notice to 21 Class Members;
- creating a website where class member can find information about the settlement.

Cofinco Decl. ¶¶ 4, 6–8, 10. Five notices were undeliverable. Cofinco Decl. ¶ 11.

Given the compliance with the plan approved by the Court, the Court should conclude that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B).

**V.**    **CONCLUSION**

In light of the forgoing, Plaintiff respectfully requests that the Court grant the motion for final approval of the class action settlement.

DATED: May 4, 2022                    LEGAL AID AT WORK

                                       LEONARD CARDER, LLP

                                       By: _/s/ George A. Warner_
                                            GEORGE A. WARNER

                                       *Attorneys for Plaintiffs and the Putative Class*