UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ BAUTISTA-PEREZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JUUL LABS, INC., et al.,<br><br>Defendants. | Case No. 20-cv-01613-HSG<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 141, 144 |

Before the Court are Plaintiffs' motions for final approval of class action settlement and for attorneys' fees, costs reimbursement, and incentive awards. Dkt. Nos. 141, 144. The Court held a final fairness hearing on June 2, 2022. For the reasons set forth below, the Court **GRANTS** the motion for final approval and **GRANTS IN PART AND DENIES IN PART** the motion for attorneys' fees, costs reimbursement, and incentive awards.

## I. BACKGROUND

### A. Factual Allegations

Defendant Juul Labs, Inc. ("Juul") is a foreign stock corporation that makes electronic cigarettes. *See* Dkt. No. 100 ("Second Amended Complaint" or "SAC") ¶ 16. In the run-up to San Francisco's November 5, 2019 municipal election, Juul oversaw the Yes on C Campaign to pass Proposition C (the "Campaign"), which would have overturned a San Francisco ordinance suspending the sale of electronic cigarettes. *Id.* ¶ 3. Juul hired Defendant Long Ying International, Inc. ("Long Ying"), a campaign operator based in San Francisco, and Defendant David Ho, the CEO for Long Ying, to help manage the Campaign's operations. *Id.* ¶ 5.

Long Ying and its owner David Ho hired the named plaintiffs and roughly 365 other workers (collectively, "Plaintiffs") to provide canvassing, phone banking, and related administrative services for the Campaign. *Id.* ¶¶ 3, 116. These campaign workers were hired as independent contractors and were required to sign a form independent contractor agreement with Long Ying. *Id.* ¶¶ 8, 89.

Plaintiffs allege that Defendant Juul and Coalition were also legal employers of the campaign workers because, among other reasons, a Juul employee had the ability to control the campaign workers' wage, hours, and working conditions, and the campaign workers were supervised in part by Coalition employees. *Id.* ¶¶ 125-132. Plaintiffs also allege that Defendants failed to comply with several state and federal laws by violating requirements to provide compliant pay statements and to pay workers for all hours worked and immediately upon discharge. *Id.* ¶¶ 153-201.

### B.  Procedural Background

In March 2020, Named Plaintiffs brought this lawsuit, asserting claims under the California Labor Code and the federal Fair Labor Standards Act ("FLSA"). Dkt. No. 1. The Court denied Defendants' motions to compel arbitration in August 2020. Dkt. No. 66. Plaintiffs then filed their First Amended Complaint ("FAC"), which added claims for penalties under the Private Attorneys General Act ("PAGA"). Dkt. No. 78. Defendant Juul moved to dismiss the FAC, and Defendant Coalition joined that motion. Dkt. Nos. 82-83. In December 2020, the Court granted Juul's Motion to Dismiss but gave Plaintiffs leave to amend their complaint. Dkt. No. 98.

Plaintiffs filed their Second Amended Complaint in January 2021. Dkt. No. 100. Plaintiffs then moved to conditionally certify the class, while Juul and Coalition moved to dismiss the SAC. Dkt. Nos. 79, 104, 105. The Court denied the motions to dismiss and granted conditional class certification. Dkt. No. 117. In June 2021, the Court stayed the case to allow the parties to pursue mediation. Dkt. No. 128. The parties attended a mediation session and ultimately accepted a mediator's proposal to settle the case in August 2021. Mot. at 6. The parties finalized a settlement agreement in December 2021, which the Court preliminarily approved on February 2, 2022. *See* Dkt. No. 138 (or "Preliminary Approval Order").

### C.  Settlement Agreement

Following discovery and with the assistance of a private mediator, the parties entered into a settlement agreement. *See* Dkt. No. 131-1, Declaration of George Warner ISO Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action and Collective Action Settlement and Conditional Class Certification; Exhibit 1 ("Settlement Agreement" or "SA"). The terms of the Settlement Agreement are summarized below:

<u>Class Definition</u>: The Settlement Class is defined as all individuals who were hired directly by Long Ying to perform phone banking, canvassing and/or administrative tasks for the Campaign and performed such work at any time during the Class Period. SA § IV.B. The parties originally represented that there are approximately 369 individuals who fall within the class definition. *See* Preliminary Approval Order at 3. After preliminary approval, however, counsel for Plaintiffs and Defendants met and conferred and amended the class list. *See* Dkt. No. 144-1, Declaration of George Warner ISO Plaintiffs' Unopposed Motion for Final Approval of Class Action and Collective Action Settlement ("Warner Decl.") ¶ 15. They identified eight workers that were erroneously included in the original class list and agreed that 18 workers were erroneously omitted. *Id.* The parties therefore agreed that there are 379 class members. *Id.*

<u>Monetary Terms</u>: Defendants have agreed to pay a gross Settlement Fund of $1,750,000. SA § VI.A. $400,000 of the gross Settlement Fund will be allocated to resolve claims raised under PAGA, of which $300,000 will be disbursed to the State of California and $100,000 will be disbursed to the class members. *Id.* § VI.E. $1,500 of the gross Settlement Fund will be allocated to resolve the collective action members' FLSA claims. *Id.* § VI.F. At least $563,000 of the gross Settlement Fund will be allocated to class members to resolve claims under the Labor Code and San Francisco law. *Id.* §§ VI.B–VI.D; Warner Decl. ¶ 17. The Settlement Agreement permits payment of attorneys' fees of up to $750,000 for Plaintiffs' attorneys, fees of $18,500 to the settlement administrator, and $17,000 in class representative service awards. SA §§ VI.B–VI.D; Warner Decl. ¶ 17.

<u>Class Notice</u>: Upon preliminary approval, the Settlement Agreement directs the Settlement Administrator to send a notice to members of the class, using first-class mail and, when available,

e-mail. SA § VII.C, Ex. A.  Members of the class who also have claims under the FLSA received a slightly modified notice that allowed them to join the collective action portion of this case and participate in the FLSA portion of the settlement.  *Id.* § VII.C, Ex. B.  In addition, the Settlement Administrator was directed to establish a website for Class Members' inquiries.  *Id.* § VII.H.

Opt-Out Procedure: Any putative class member who does not wish to participate in the class action portion of the settlement could opt out by signing and postmarking a written request for exclusion to the Settlement Administrator within 45 days from the mailing of the class notice.  SA § VII.F.

Opt-In Procedure for FLSA Claims: The campaign workers who also have a claim under the FLSA received a separate version of the class action notice that provided information about the FLSA portion of the settlement.  SA § VII.E, Ex. B.  This version invited campaign workers to opt into the settlement of the FLSA overtime claim by filling out the form attached to the notice and sending it to Plaintiffs' counsel by email or mail, or by filling out the consent to join form online.  *Id.*

Distribution Plan and Possible Cy Pres Allocation: The Settlement Agreement requires Class members to receive their individual settlement payments within 10 days of the final approval of the Settlement Agreement, after which class members have 90 days to deposit their checks.  SA § VIII.C.  Class members do not need to file a claim to receive payment.  *Id.*  After 90 days, the Settlement Administrator will provide notice of the total amount of funds left undeposited and will provide notice by email to class members who did not cash the initial check so that those class members can inform the Settlement Administrator of any change of address.  *Id.* § VIII.E.  The Settlement Administrator will also use updated forwarding addresses to obtain the most recent address available.  *Id.*  The Settlement Administrator will then provide those class members who did not deposit their initial checks the option to get paid via check or electronic payment, such as Venmo or Paypal.  SA § VIII.E.  If, after this second distribution, at least $20,000 remains, the Settlement Administrator will issue an additional distribution to the Class Members who deposited their initial checks.  SA § VIII.F.  If less than $20,000 remains, Open Door Legal will receive the remainder as a *cy pres* beneficiary.  *Id.*  Open Door Legal is a

nonprofit legal services provider that serves low-wage residents of San Francisco in employment matters and other legal matters. Warner Decl. ¶ 16(g).

Release: The class will release all claims against Defendants that were alleged or could have been alleged in this case based on the same facts and circumstances. SA § IX.B. Each opt-in Plaintiff participating in the collective action will further release the Defendants from all causes of action which were alleged or could be alleged under the FLSA. *Id.* § IX.C.

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on February 2, 2022, this order incorporates by reference its prior analysis under Rules 23(a) and (b). *See* Dkt. No. 136 at 5-9.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). Such settlement agreements

"must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest" to "ensure that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Roes, 1-2 v. SFBSC Mgmt.*, LLC, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (citations omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that the Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the Notice and Notice Plan previously approved by the Court was

implemented and complies with Rule 23(c)(2)(B). *See* Preliminary Approval Order at 13-14. In accordance with the Settlement Agreement, CPT Group, a neutral third-party settlement administrator, sent notice via U.S. First-Class Mail and email based on a class list provided by counsel. *See* Dkt. No. 144-2, Declaration of Emilio Cofinco Regarding Class Notification and Claims Administration ("Cofinco Decl.") ¶¶ 5-8. Before sending notice, CPT performed a search for updated addresses in the National Change of Address database and updated 50 addresses. *Id.* at ¶ 6. CPT reports that notices were then mailed and emailed to the Class and Collective Members. *Id.* ¶¶ 7-8. A total of 379 notices were sent out. *Id.* ¶ 7. Nineteen notices were returned as undeliverable, so CPT performed a "Skip Trace" to identify more recent addresses and then re-mailed 21 notice packets. *Id.* ¶ 11. In the end, only five notices were undeliverable. *Id.*

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class and Collective Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

As the Court recognized in the Preliminary Approval Order, there are both legal and practical risks presented by this case. Preliminary Approval Order at 12-13. As Plaintiffs explained, three of the four defendants in this case may lack the financial resources to pay a substantial judgment. *Id.* And there is a real risk that the fourth, Juul Labs, would not be found liable either because it is not a joint employer, because it is not the Coalition's alter ego, or, for

1  penalties under Labor Code section 226.8, because it did not "willfully" decide to misclassify
2  Plaintiffs. *Id.* In light of these potential barriers to recovery, this factor weighs in favor of
3  approval.

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Because the parties provisionally certified the class for the purposes of settlement, Plaintiffs avoided the risks inherent in certifying and then maintaining class status throughout the litigation. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (class certification orders are "inherently tentative"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]here is no guarantee the certification would survive through trial[.]"). In a wage and hour case, successful maintenance of class certification is not a given, and thus this factor weighs slightly in favor of approval.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *8 (N.D. Cal. Nov. 21, 2018).

The Settlement Agreement provides for a total payment by Defendants of $1,750,000, with the Coalition providing $1,700,000 and Long Ying and David Ho providing $500,000. *See* Warner Decl. ¶ 17. Class Counsel contends that this settlement offer constitutes 74.9% of the most likely recoverable damages, assuming Plaintiffs were to prevail on all claims against the Defendants. *See* Warner Decl. ¶ 18. Plaintiffs estimate that the average individual Settlement Share is $1,750 and the highest Settlement Share is $4,528. *See id.* ¶¶ 17-19. In light of the risks and costs posed by continued litigation explained above, the Court finds that this settlement amount falls well within the range of reasonableness. *See, e.g.*, *Reynolds v. Direct Flow Medical, Inc.*, No. 17-cv-00204-KAW, 2019 WL 4168959 *3 (N.D. Cal. Sept. 3, 2019) (granting final approval in an employment class action for a settlement amount representing 13% of plaintiffs'

estimated full-verdict value); *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (granting final approval in an employment class action for a settlement amount representing 24% of plaintiffs' estimated full-verdict value and collecting cases).

Additionally, the parties' proposed cy pres recipient, Open Door Legal, is "tethered to the nature of the lawsuit and the interests of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). Open Door Legal is a nonprofit legal services provider that serves low-wage residents of San Francisco in employment matters and other legal matters. Warner Decl. ¶ 17(g). The Court finds that such work addresses the objectives of the underlying action and is connected to the members of the class. In short, the required "driving nexus between the plaintiff statutes and the cy pres beneficiaries" exists here. *See Nachshin*, 663 F.3d at 1038. This factor weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties reached settlement after over two years of litigation and hard-fought negotiations which consisted of careful analysis of complex factual and legal issues and an extensive amount of time and effort. They received, examined, and analyzed facts and material sufficient to allow them to reach a fair settlement agreement. *See* Warner Decl. ¶ 10. This factor accordingly weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel. The Court has previously evaluated Class Counsel's qualifications and experience and concluded that Class Counsel is qualified to represent the Class Members' interests in this action. *See* Dkt. No. 131 at 7; *see also* Warner Decl. ¶¶ 6, 20. And Class Counsel have stated that they "believe the Settlement is fair, reasonable, and adequate" and is in the best interest of the Class Members. *See* Warner Decl. ¶ 20.

The Court recognizes, however, that courts have diverged on the weight to assign

counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest but favors approval.

### 6. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class Members were advised of the requirements to object to or opt out of the settlement. *See* Cofinco Decl., Ex. A. As of the final fairness hearing, the Settlement Administrator had received no requests for exclusion or objections. *See id.* ¶¶ 12-13.[1] The Court finds that the absence of objections and opt-outs in comparison to the size of the class indicates support among the Class Members and weighs in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

### 7. Evidence of Conflicts and Signs of Collusion

Before approving settlements, courts look for both explicit evidence of collusion and subtle signs of self-interest. *Cmty Res. for Indep. Living, et al. v. Mobility Works of Cal., LLC, et al.*, 553

---

[1] During the final fairness hearing, Class Counsel stated there was a single opt-out form filed by a person who was not a member of the class. However, Class Counsel clarified in a supplemental statement that, in fact, "there was a single deficient opt-in form filed by a person who was not a member of the class or possible member of the collective," and that "[t]here have been no requests for exclusion or objections received, deficient or otherwise." *See* Dkt. No. 147 (emphasis in original). Based on this representation, the Court is satisfied that the Settlement Administrator received no requests for exclusion or objections.

F. Supp. 3d 881, 885 n. 3 (N.D. Cal. 2020).  Because no facts that would affect this inquiry have changed since the Court preliminarily approved the class on February 2, 2022, this Order incorporates by reference its prior analysis.  *See* Preliminary Approval Order at 5-9.

\*   \*   \*

After considering and weighing the factors above, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the Class Members received adequate notice.  Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

**B.    Attorneys' Fees, Costs and Expenses, and Class Representative Service Payment**

Class Counsel also asks the Court to approve awards of $735,431.51 in attorneys' fees, $14,568.49 in litigation costs, and $17,000 in total service awards.  *See* Fees Mot. at 9-10.  The Court grants this request in part and denies it in part.

**i.    Attorneys' Fees**

**a.    Legal Standard**

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund method when calculating reasonable attorneys' fees.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth*, 654 F.3d at 941(*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).  "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted).  Generally, the relevant community is the forum in which the district court sits.  *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  And typically, affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

11

1    determinations in other cases are "satisfactory evidence" of the prevailing market rate. *United*
2    *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition to
3    affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits
4    from other area attorneys or examples of rates awarded to counsel in previous cases. *Schuchardt*
5    *v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

6    Under the percentage-of-the-fund method, twenty-five percent of a common fund is the
7    benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654
8    F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark'
9    for a reasonable fee award, providing adequate explanation in the record of any 'special
10   circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d
11   1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate,
12   the award must be supported by findings that take into account all of the circumstances of the case.
13   *Vizcaino*, 290 F.3d at 1048.

14   Although the choice between lodestar and percentage calculation depends on the
15   circumstances, either method may have its place in determining what would be reasonable
16   compensation for creating a common fund. *Six Mexican Workers*, 904 F.2d at 1311. To guard
17   against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any
18   calculations under one method against those under another method. *Vizcaino*, 290 F.3d at 1050–
19   51.

20   **b. Analysis**

21   Class Counsel seeks an award of attorneys' fees in the amount of $735,431.51. *See* Fees
22   Mot. at 10. This request represents 42% of the settlement fund, which is significantly higher than
23   the 25% benchmark for a reasonable fee award under the percentage-of-recovery method. *See*
24   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (recognizing 25% fee as the
25   accepted "benchmark" in common fund cases).

26   There are several reasons why Class Counsel deserve an award higher than the benchmark.
27   First, and most significantly, they obtained significant results for the class. As explained above,
28   the settlement offer Class Counsel negotiated constitutes 74.9% of the most likely recoverable

damages, assuming Plaintiffs were to prevail on all claims against the Defendants. *See* Warner Decl. ¶ 18. And Plaintiffs estimate that the average individual Settlement Share is $1,750 and the highest Settlement Share is $4,528. *See id.* ¶¶ 17-19. This is a significant recovery for the class, and Class Counsel should be rewarded accordingly.

Second, while Class Counsel seeks a large proportion of the settlement fund, its request is actually less than its lodestar figure. In calculating its lodestar, Class Counsel reports they collectively expended 1,658.9 hours, excluding the additional hours they will spend finalizing settlement procedures. *See* Dkt. No. 141-2, Declaration of Aaron Kaufmann in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Class Representative Service Awards ¶¶ 22-23 ("Kaufmann Decl."). This is a reasonable number of hours given the length of this litigation. And with respect to hourly rates, Class Counsel's hourly rates range from $220 to $270 for paralegals, and rates of $485 to $895 for attorneys. *See id.* These rates are in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation.[2] Thus, according to Class Counsel's calculations, Legal Aid at Work's total lodestar is $351,692.00, and Leonard Carder's total lodestar is $551,198.50. *See id.* The requested fee award is less than this amount, totaling approximately 81.5% of counsel's combined lodestar amounts and resulting in a negative multiplier of slightly less than .83. *See* Fees Mot. at 2, 10. This negative lodestar multiplier supports a fee award above the percentage-of-recovery method benchmark.

Still, 42% of the settlement fund is no small ask. Assuming the maximum possible costs, incentive awards, and attorneys' fees are awarded, the net settlement amount for the class members is estimated at $563,000. Warner Decl. ¶ 18. Even including the additional $100,000 set to be distributed to class members for their PAGA claims, Class Counsel's request for $735,431.51 seeks to take more of the settlement cash than would be distributed to the class

---

[2] *See, e.g., Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 U.S. Dist. LEXIS 213045, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class").

members. While not per se unreasonable, this request warrants scrutiny. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1051 (9th Cir. 2019) (scrutinizing a settlement where more of the available settlement cash ultimately went to attorneys' fees than would be distributed to class members); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) ("[C]oncerns about the fairness of settlement agreements warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement.") (citations omitted).

Having reviewed Class Counsel's filings, the Court finds that an increase from the benchmark rate is warranted but will not give them 42% of the gross settlement fund. In recognition of the significant results Class Counsel achieved and the financial burden and risks they assumed, the Court **GRANTS** attorneys' fees of 30% of the total settlement amount, or $525,000.

### ii. Costs and Expenses

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class Counsel is accordingly entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.*

Class Counsel requests reimbursement of $14,568.49 in litigation costs. *See* Fees Mot. at 9. The Court finds this request reasonable for two reasons. First, the costs Class Counsel incurred—which include mediation fees, filing fees, process of service fees, electronic research, postage and travel— reflect the type of expenses routinely charged to paying clients. *See* Kaufmann Decl. ¶ 24.[3] And second, the amount requested is also within range of approval. *See, e.g.*, *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) (reimbursing $823,904.04 for costs including filing fees, copying, postage, document storage, depositions,

---

[3] *See, e.g.*, *Torres v. Pick-A-Part Auto Wrecking*, No. 116-CV-01915, 2018 WL 3570238, at *9 (E.D. Cal. July 23, 2018) (finding that ordinary out-of-pocket expenses include "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees"); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (same).

travel, experts, transcripts, computer research, the cost of the mediator, and common-fund contributions). The Court accordingly **GRANTS** the motion for costs in the amount of $14,568.49.

### iii. Incentive Award

Class Counsel asks for incentive awards of $5,000 each for Maria De La Luz Bautista-Perez and Salvadora Correa, and a $7,000 service award for Luz Perez Bautista. *See* Fees Mot. at 2. The Court finds this request reasonable and grants it.

Named plaintiffs are eligible for "reasonable" incentive payments. *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958. They are designed to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. *Rodriguez*, 563 F.3d at 958-59. Nevertheless, the Ninth Circuit has cautioned that district courts must be "vigilant" in scrutinizing all incentive awards to "determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where the proposed service fees greatly exceed the payments to absent class members. *Id.* The district court must evaluate an incentive award using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Id.* at 977.

The Court finds that these factors support Class Counsel's request. First, the Named Plaintiffs all spent significant time and effort pursing the litigation and have taken actions to protect the interests of the class. For example, Salvadora Correa, Maria De La Luz Bautista-Perez, and Luz Perez Bautista estimate that they spent 35, 44, and 72 hours working on this case, respectively. *See* Fees Mot. at 14-16. Their work included phone conversations with her attorneys, conducting independent research, reviewing documents, and preparing for deposition and mediation. *Id.* Second, as described above, the class has significantly benefitted from those actions, as reflected by the payment of nearly 75% of the most likely recoverable damages. And finally, the proposed service fees of $5,000 and $7,000 do not "greatly exceed" the payments to

absent class members, who are expected to recover an estimated average of $1,750 and an estimated maximum of $4,528. *See Radcliffe*, 715 F.3d at 1165; Warner Decl. ¶¶ 17-19.

Class Counsel's request for service awards is accordingly **GRANTED**. The Court **GRANTS** service awards in the amount of $5,000 each for Plaintiffs Maria De La Luz Bautista-Perez and Salvadora Correa and $7,000 for Plaintiff Luz Perez Bautista.

### III. CONCLUSION

Plaintiffs' Motion for Final Approval of Class Action and PAGA Settlement is **GRANTED**, and Plaintiffs' Motion for Attorney Fees, Costs Reimbursement, and Service Payments is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court approves the settlement amount of $1.75 million, including payments of $400,000 in PAGA penalties; attorneys' fees in the amount of $525,000; litigation costs in the amount of $14,568.49; and service awards for the three Named Plaintiffs in the amount of $5,000 each for Plaintiffs Maria De La Luz Bautista-Perez and Salvadora Correa and $7,000 for Plaintiff Luz Perez Bautista, for a total of $17,000.

The parties and Settlement Administrator are directed to implement this Final Order and the Settlement Agreement in accordance with the terms of the Settlement Agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this Order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 6/22/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge